TRACY L. WILKISON
Acting United States Attorney
BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office
GREGORY S. SCALLY (Cal. Bar No. 268073)
Assistant United States Attorney
VIBHAV MITTAL (Cal. Bar No. 257874)
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office
    Ronald Reagan Federal Bldg & U.S. Courthouse
    411 West 4th Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3592/3534
    Facsimile: (714) 338-3561/3708
    E-mail:    gregory.scally@usdoj.gov
             vibhav.mittal@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 20-02-DOC |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT HOANG XUAN LE AND DEFENDANT SHEILA MARIE RITZE'S MOTIONS TO UNJOIN AND SEVER COUNTS |
| v. | |
| HOANG XUAN LE, and SHEILA MARIE RITZE, | Hearing Date: May 28, 2021 Hearing Time: 9:00 a.m. |
| Defendants. | Location:    Courtroom of the Hon. David O. Carter |

       Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Gregory S. Scally and Vibhav Mittal, hereby files its Opposition to Defendant Hoang Xuan LE's Motion to Sever Counts One Through Three from Counts Four Through Twelve of the Second Superseding Indictment and Defendant Sheila Marie RITZE's Motion to Sever Counts One Through Three and

Thirteen from Counts Four, Five, and Nine of the Second Superseding Indictment.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 7, 2021                    Respectfully submitted,

                                      TRACY L. WILKISON
                                      Acting United States Attorney

                                      BENJAMIN R. BARRON
                                      Assistant United States Attorney
                                      Chief, Santa Ana Branch Office

                                      _____/s/_____
                                      GREGORY S. SCALLY
                                      Assistant United States Attorney
                                      VIBHAV MITTAL
                                      Assistant United States Attorney
                                      Deputy Chief, Santa Ana Branch
                                      Office

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION...................................................1

II.  SECOND SUPERSEDING INDICTMENT'S ALLEGATIONS....................2

     A.   Murder-Related Counts (Counts One through Three)..........2

     B.   Drug Trafficking-Related Counts (Counts Four through
          Twelve)..................................................3

     C.   False Statement Charge (Count Thirteen)..................4

III. ARGUMENT.......................................................5

     A.   Federal Rules and Legal Standards at Issue...............5

          1.   Rule 8(a)...........................................5

          2.   Rule 14.............................................6

     B.   The Counts are Properly Joined Under Rule 8(a)...........7

          1.   The Drug Trafficking-Related Charges In This Case
               Are of the Same or Similar Character As the
               Murder-Related Charges and the False Statement
               Charge Under the Jawara Factors.....................7

          2.   For defendant RITZE, the Counts Are Also Properly
               Joined Under the Common Scheme and Same Act or
               Transaction Prongs of Rule 8(a)....................17

     C.   A Severance Due to Prejudice is Not Warranted Here
          When Weighing the "Dominant Concern" with Judicial
          Economy.................................................19

IV.  CONCLUSION....................................................23

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**CASES**

United States v. Akana,
    210 Fed. Appx. 681 (9th Cir. 2006)...........................13

United States v. Armstrong,
    621 F.2d 951 (9th Cir. 1980)..................................5

United States v. Barney,
    568 F.2d 134 (9th Cir. 1978).................................18

United States v. Brashier,
    548 F.2d 1315 (9th Cir. 1976)...............................5, 7

United States v. Drummondo-Farias,
    622 F. App'x 616 (9th Cir. 2015)............................13

United States v. Duran,
    562 Fed. Appx. 174 (3d Cir. 2014)............................9

United States v. Fiorillo,
    186 F.3d 1136 (9th Cir. 1999)...............................19

United States v. Foster,
    652 F.3d 776 (7th Cir. 2011).................................9

United States v. Friedman,
    445 F.2d 1076 (9th Cir. 1971)................................5

United States v. Hawkins,
    776 F.3d 200 (4th Cir. 2015)................................15

United States v. Hill,
    No. 13-CR-00765-SI-1,
    2015 WL 1055891 (N.D. Cal. Mar. 10, 2015)...................15

United States v. Irvine,
    756 F.2d 708 (9th Cir. 1985)................................21

United States v. Kenny,
    645 F.2d 1323 (9th Cir. 1981)...............................21

United States v. Kinslow,
    860 F.2d 963 (9th Cir. 1988).................................6

United States v. Lewis,
    787 F.2d 1318 (9th Cir. 1986)................................7

United States v. Lopez,
    477 F.3d 1110 (9th Cir. 2007)................................7

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Mathis,
        216 F.3d 18 (D.C. Cir. 2000).................................10

United States v. Pena,
        978 F.Supp. 2d 254 (S.D.N.Y. 2013)...........................9

United States v. Pipola,
        83 F.3d 556 (2d Cir. 1996)....................................9

United States v. Portac,
        869 F.2d 1288 (9th Cir. 1989)................................17

United States v. Rodrigues,
        237 F. App'x 178 (9th Cir. 2007)..............................8

United States v. Rosa,
        11 F.3d 315 (2d Cir. 1993)...................................10

United States v. Rousseau,
        257 F.3d 925 (9th Cir. 2001).....................13, 14, 15, 19

United States v. Sarkisian,
        197 F.3d 966 (9th Cir. 1999).................................18

United States v. Simmons,
        679 F.2d 1042 (3d Cir. 1982)..................................9

United States v. Terry,
        911 F.2d 272 (9th Cir. 1990).............................16, 18

United States v. Tillisy,
        697 F. App'x 910 (9th Cir. 2017).............................13

United States v. Tse,
        375 F.3d 148 (1st Cir. 2004).................................10

United States v. Whitworth,
        856 F.2d 1268 (9th Cir. 1988)............................18, 22

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3        Defendant HOANG XUAN LE ("defendant LE") and defendant SHEILA

4   MARIE RITZE ("defendant RITZE") are jointly charged in a 13-count

5   Second Superseding Indictment with charges related to an October 15,

6   2019 murder in the Pacific Ocean and drug trafficking.  (CR 134 at 2-

7   21.)  In addition to the murder-related and drug trafficking-related

8   charges, defendant RITZE is also charged with making false statements

9   during the FBI and Coast Guard's investigation of the murder and the

10  drug trafficking crimes.  (CR 134 at 22-23.)  The Court granted the

11  defendants' previous severance motions, and so the defendants will

12  not be tried together.  (CR 42; CR 44; CR 66.)  Defendant LE is set

13  for trial on August 16, 2021, and defendant RITZE is set for trial on

14  October 19, 2021.  (CR 131.)

15       Now, instead of two trials in this matter, the defendants are

16  seeking four trials.  Defendant LE has moved to unjoin and sever the

17  drug trafficking-related charges from the murder-related charges.

18  (CR 147.)  Similarly, defendant RITZE moved to unjoin and sever the

19  drug trafficking-related charges from the murder-related charges and

20  the false statement charge.  (CR 158.)  Because the drug trafficking-

21  related charges are properly joined with the other charges pursuant

22  to Rule 8(a) and each defendant has failed to show prejudicial

23  severance pursuant to Rule 14, both motions should be denied.  This

24  is especially true here where any prejudice from the joinder of the

25  offenses can be minimized with appropriate jury instructions, the

26  jury will be able to determine the evidence relevant for each charge,

27  and the drug trafficking evidence will be heard by the jury in all

28  four trials even if the motions were granted.

## II.   SECOND SUPERSEDING INDICTMENT'S ALLEGATIONS[1]

### A.   Murder-Related Counts (Counts One through Three)

In Count One, the defendants are charged with murdering victim T.D. on October 15, 2019, by shooting him and throwing him into the Pacific Ocean, in violation of 18 U.S.C. § 1111.  (CR 134 at 2.)

In Count Two, the defendants are charged with conspiracy to commit first degree murder and second degree murder, in violation of 18 U.S.C. § 1117, in Orange County, California and elsewhere.  (CR 134 at 3-7.)  The introductory allegations describe evidence from October 14, 2019, to December 10, 2019, related to the murder conspiracy.  (CR 134 at 3-5.)  These allegations involved: statements defendant LE made to the CI and co-conspirator #2 about the murder; the debt the victim owed defendant LE; the murder itself; a trip to Dana Point Harbor on October 19, 2019, where defendant LE and co-conspirator #2 gave a false alibi to the victim's brother after the murder; a trip to Dana Point Harbor on October 19, 2019, where defendant RITZE checked to see if there were cameras near where her boat left in the early morning hours of October 15, 2019; defendant LE's November 20, 2019 interview with Coast Guard agents; and evidence that the defendants were tracking the movement of victim T.D.'s widow following the murder in November and December 2019.  (Id.)

In Count Two, the objects of the conspiracy and the means by which the objects of the conspiracy were to be achieved are alleged.

---

[1] In its opposition to defendant LE's motion to strike surplusage (being filed separately), the government proffers evidence not apparent from the charging document.  For the purposes of the Court's Rule 14 analysis, that factual proffer is incorporated here by reference.

1    (CR 134 at 5-6.)  Finally, overt acts that were done in furtherance

2    of the murder conspiracy between October 14, 2019, and October 15,

3    2019 are alleged.  (Id. at 6-7.)

4         In Count Three, the defendants are charged with Possess, Use,

5    Carry, and Discharge a Firearm in Furtherance of and During and in

6    Relation to a Crime of Violence (the First Degree Murder Charge in

7    Count One), in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (iii), on

8    October 15, 2019, in Orange County, California.  (CR 134 at 8.)

9    **B.  Drug Trafficking-Related Counts (Counts Four through Twelve)**

10        In Count Four, the defendants are charged with conspiracy to

11   distribute methamphetamine, cocaine, and heroin, in violation of 21

12   U.S.C. § 846, from an unknown date until December 19, 2019, in Orange

13   County, California.  (CR 134 at 9-13.)  In Count Four, the objects of

14   the conspiracy and the means by which the objects of the conspiracy

15   were to be achieved are alleged.  (Id. at 9-10.)  Finally, overt acts

16   that were done in furtherance of the drug trafficking conspiracy

17   between October 2019, and December 19, 2019 are alleged.  (Id. at 10-

18   13.)  These overt acts involve individuals referenced in Count Two

19   (the murder conspiracy charge), including the CI and co-conspirator

20   #2.  During some of the overt acts involving the CI, defendant LE

21   discussed the murder of the victim and the Coast Guard's

22   investigation.  (Compare Count Two Introductory Allegations ¶¶ 10,

23   12, 14 with Count Four Overt Act Nos. 3, 8, 18.)  The overt acts also

24   reference co-conspirator #1, a person that both defendants worked

25   with in relation to drug trafficking.[2]

26

27   _____

28        [2] Defendant RITZE provided statements of co-conspirator #1 in an
     under seal filing.

                                        3

In Counts Five through Twelve, defendant LE is also charged with various drug trafficking violations and possession of a firearm in furtherance of and during and in relation to one of the drug trafficking charges (CR 134 at 14-21); of those counts, defendant RITZE is named in Counts Five and Nine (CR 134 at 14, 18).  The charges in Counts Five through Twelve include the overt acts alleged as part of the drug trafficking conspiracy.  For instance, the December 10, 2019 methamphetamine distribution charged in Count Ten is also alleged as Overt Act No. 18 of the drug trafficking conspiracy (Count Four) and where defendant LE explained to the CI why the Coast Guard came to his house on November 20, 2019 (Count Two, Introductory Allegation No. 14).  (CR 134 at 4-5, 12, 19.)  The conduct alleged in Counts Five through Twelve occurred between October 30, 2019, and December 19, 2019, in Orange County, California.  (CR 134 at 14-21.)

**C.   False Statement Charge (Count Thirteen)**

In Count Thirteen, defendant RITZE is charged with making false statements to the FBI and Coast Guard on December 19, 2019, in Orange County, California ("false statement charge").  (CR 134 at 22-23.) The false statements related to the agencies' investigations of the murder and drug trafficking conduct.  (<u>Id.</u>)  In particular, defendant RITZE is charged with making the following false statements to FBI and Coast Guard agents:

a.   Defendant RITZE falsely stated that she had never met victim T.D. before the October 15, 2019 boat trip where victim T.D. was murdered ("the boat trip").

b.   Defendant RITZE falsely stated that the boat trip began at approximately 5:00 p.m.

4

1    c.    Defendant RITZE falsely stated that the tracker she

2 purchased (following the murder of victim T.D.) and provided to

3 defendant LE was going to be used to track defendant RITZE's

4 movements for her property management work and/or the movements of

5 contractors that she worked with in her property management work.

6    d.    Defendant RITZE falsely stated that, while she was aware of

7 drug dealing by defendant LE, she was not involved in any drug

8 dealing with defendant LE, she had never seen any drug dealing by

9 defendant LE, and defendant LE did not engage in drug dealing in

10 front of her.

11 **III.  ARGUMENT**

12    **A.    Federal Rules and Legal Standards at Issue**

13       **1.    Rule 8(a)**

14    The Ninth Circuit has noted that "a substantial public interest

15 supports joint trials." United States v. Friedman, 445 F.2d 1076,

16 1082 (9th Cir. 1971) (citations omitted).  "Rule 8 seeks to obtain

17 trial economy and efficiency." United States v. Brashier, 548 F.2d

18 1315, 1323-24 (9th Cir. 1976)).  "[J]oinder is the rule rather than

19 the exception." United States v. Armstrong, 621 F.2d 951, 954 (9th

20 Cir. 1980).  Accordingly, "Rule 8 is to be broadly construed in favor

21 of initial joinder." Friedman, 445 F.2d at 1082 (collecting cases

22 supporting this proposition).

23    Rule 8(a) provides three grounds for joining offenses in an

24 indictment:

25       The indictment or information may charge a defendant in
         separate counts with 2 or more offenses if the offenses
26       charged—whether felonies or misdemeanors or both—are of the
         same or similar character, or are based on the same act or
27       transaction, or are connected with or constitute parts of a
         common scheme or plan.

28

1   Fed. R. Crim. P. 8(a) (emphasis added).

2           *a.   Same or similar character*

3       In determining whether offenses charged are of "the same or

4   similar character" under Rule 8(a), the Court must consider "factors

5   such as the elements of the statutory offenses, the temporal

6   proximity of the acts, the likelihood and extent of evidentiary

7   overlap, the physical location of the acts, the modus operandi of the

8   crimes, and the identity of the victims." United States v. Jawara,

9   474 F.3d 565, 578 (9th Cir. 2007). "The weight given to a particular

10  factor will depend on the specific context of the case and the

11  allegations in the indictment. But the bottom line is that the

12  similar character of the joined offenses should be ascertainable—

13  either readily apparent or reasonably inferred—from the face of the

14  indictment." Id.

15          *b.   Common scheme or plan/same act or transaction*

16      "[C]ourts generally permit joinder under [the common scheme or

17  plan] test where the counts grow out of related transactions."

18  Jawara, 474 F.3d at 574 (quotation omitted). Joinder is appropriate

19  where commission of one offense depended upon or led to the

20  commission of the other, or where proof of one act constituted or

21  depended upon proof of the other. Id. Likewise, under the "same act

22  or transaction" prong, "transaction" is interpreted flexibly, and

23  includes "a series of related occurrences." United States v.

24  Kinslow, 860 F.2d 963, 966 (9th Cir. 1988), disapproved of on other

25  grounds by United States v. Brackeen, 969 F.2d 827 (9th Cir. 1992).

26          2.   Rule 14

27      Rule 14(a) recognizes that severance may be appropriate where

28  there is prejudice inherent in the joinder:

6

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a) (emphasis added).  Defendant has a "heavy burden" for a severance based on Rule 14, which tests "whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever."  Brashier, 548 F.2d at 1323 (emphasis added); see also United States v. Lopez, 477 F.3d 1110, 1116 (9th Cir. 2007); United States v. Lewis, 787 F.2d 1318, 1321 (9th Cir. 1986) ("manifestly prejudicial" means "of such magnitude that the defendant's right to a fair trial was abridged").

**B.    The Counts are Properly Joined Under Rule 8(a)**

  1.    The Drug Trafficking-Related Charges In This Case Are of the Same or Similar Character As the Murder-Related Charges and the False Statement Charge Under the Jawara Factors

The charges are properly joined under Rule 8(a) because they are of "the same or similar character," based on a weighing of the factors described in Jawara, 474 F.3d at 578-79.  "The weight given to a particular factor will depend on the specific context of the case and the allegations in the indictment."  Id.  With the exception of the identity of their victims, the remaining five factors in the Jawara test generally support finding that the murder-related counts, the drug trafficking-related counts, and the false statement charge are of the same or similar character.  Most significantly, the likelihood and extent of evidentiary overlap strongly favors a finding that the offenses are of the same or similar character.

7

*a.   The Likelihood and Extent of Evidentiary Overlap*

First and foremost, the likelihood and extent of evidentiary overlap strongly favors finding that the murder-related offenses and the false statement charge are of the same or similar character as the drug trafficking-related offenses, because, to prove the murder-related counts, the drug trafficking-related counts, and the false statement charge, the government will rely on many overlapping witnesses and digital evidence seized from the same locations.  A CI and a co-conspirator from the drug trafficking conspiracy will testify about admissions and events relevant to the murder-related charges.  United States v. Rodrigues, 237 F. App'x 178, 184 (9th Cir. 2007) (affirming joinder where witnesses who gave testimony on a kickback count offered testimony relevant to some of the other counts).  Specifically, the CI and the person identified as "Co-conspirator #2" in the charging document will testify about admissions defendant LE made related to the murder as well as drug trafficking.  (Compare CR 134 at 3-5 with CR 134 at 9-12.)  Moreover, many of these admissions to the CI took place during drug transactions.  (CR 134 at 4-5, 10-12.)  Co-conspirator #2 acted as an accessory after the fact to the murder and trafficked drugs with defendant LE.  (CR 134 at 3, 9-12.)  That person will need to testify regarding their prior convictions both for being an accessory after the fact to the murder and drug trafficking with defendant LE as impeachment.  That impeachment material will need to be presented in all the trials.

The relationship of the CI and co-conspirator #2 to defendant LE (including engagement in criminal activity) will be relevant to establishing their credibility and is necessary background

8

information.[3]  See United States v. Foster, 652 F.3d 776, 785-86 (7th Cir. 2011) (admitting testimony of cooperating co-defendant about prior crimes jointly committed by cooperator and defendant because it showed "the two knew one another well not merely in a social setting but in an ongoing criminal relationship"); United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case"); United States v. Simmons, 679 F.2d 1042, 1050 (3d Cir. 1982) (testimony of information from unindicted co-conspirator regarding prior uncharged illegal dealings with defendant was admissible to "provide necessary background information" to the jurors in their understanding of the defendant's forgery scheme and to show ongoing relationship between co-conspirator and defendant); United States v. Pena, 978 F.Supp. 2d 254, 260-62 (S.D.N.Y. 2013) (admitting a prior arrest on the ground that it "establish[ed] that [defendant] knew the other two men well and that the three had a criminal relationship and relationship of trust"); United States v. Duran, 562 Fed. Appx. 174, 179 (3d Cir. 2014) (unpublished) (evidence of uncharged home invasions admissible in part because it "demonstrated the close relationship between the three defendants").  Their credibility will be an issue at trial, particularly when they testify regarding unrecorded statements of defendant LE.  Their relationships will demonstrate to the jury why defendant LE would make admissions to them about a murder he

---

[3] The parties have not had discussion regarding jury instructions; however, the government intends to propose limiting instructions so evidence of any uncharged criminal conduct admitted is used for a proper purpose.

committed.  Accordingly, the drug trafficking done with defendant LE will be relevant when the CI and co-conspirator #2 will testify as to the murder, including admissions that defendant LE made to them.

It is expected at trial that defendant RITZE may contend, among other things, that she was not aware of defendant LE's plan to murder the victim, she feared defendant LE following the murder and did not inform law enforcement about the murder for that reason, and at most she acted as an accessory after the fact.  As with the CI and co-conspirator #2, the drug trafficking activities of defendant RITZE with defendant LE following the murder (which involved co-conspirator #1) are relevant because it shows their relationship and criminal association, and both were engaged in conduct related to the murder in the same time period.  The defendants' relationship following the murder, including dealing drugs and tracking the location of the victim's widow, will rebut some of defendant RITZE's anticipated defenses.  This continued relationship following the murder explain "the mutual trust that existed between coconspirators" and their criminal association.  United States v. Rosa, 11 F.3d 315, 334 (2d Cir. 1993); see also United States v. Tse, 375 F.3d 148, 155 (1st Cir. 2004) ("In a conspiracy case, the district court may admit evidence of other bad acts if they tend to suggest a criminal association between the alleged conspirators."); United States v. Mathis, 216 F.3d 18, 26 (D.C. Cir. 2000) (holding that "[i]n a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime

developed.") (quotation marks and citation omitted).  The government
currently intends to argue that the relationship of trust and
criminal association would be inconsistent with defendant LE planning
a murder without defendant RITZE's knowledge.  The government also
currently expects to argue that the relationship of trust and
criminal association (as demonstrated by the communications between
defendant LE and defendant RITZE) would also be inconsistent with
someone who feared their co-conspirator and did not report the murder
to law enforcement for that reason.  Additionally, this relationship
and criminal association explains why defendant RITZE lied to federal
agents in December 2019; she was covering for herself and defendant
LE.  As a result, this drug trafficking evidence will be admitted in
both murder trials, demonstrating the strong likelihood of
overlapping evidence between all the charges.

Another place of evidentiary overlap is the digital data that
will be introduced to prove all the charges.  The Second Superseding
Indictment makes clear that digital evidence recovered from phones
will be admitted at trial; it alleges various communications seized
from the devices related to the murder and drug trafficking.  (CR 134
at 4, 9, 11.)  For example, on November 19, 2019, defendant RITZE
received an email on her phone notifying her that the GPS tracking
device had a low battery and was located near the address of victim
T.D.'s widow in Orange County, California (CR 134 at 4).  Defendant
RITZE also coordinated drug trafficking with defendant LE using her
phone (CR 134 at 9, 12).  Accordingly, proving the murder-related
charges, the drug trafficking-related charges, and the false
statement charge will require testimony about the seizure of such
phones and the reviews done to identify the relevant items.

Defendant RITZE agrees that the false statement charge, Count Thirteen, should be joined with the murder-related counts, Counts One Through Three. (CR 158.) At the same time, defendant RITZE seeks to unjoin the false statement charge from the drug trafficking-related charges (Counts Four, Five, and Nine). (Id.) This position ignores the fact that defendant RITZE is charged in the false statement charge with making false statements to the FBI and Coast Guard about both the murder and the drug trafficking investigations. (CR 134 at 22-23.) Specifically, in addition to making false statements about the murder, defendant RITZE falsely stated that, while she was aware of drug dealing by defendant LE, she was not involved in any drug dealing with defendant LE, she had never seen any drug dealing by defendant LE, and defendant LE did not engage in drug dealing in front of her. (CR 134 at 23.) Thus, the false statement charge will require proof of defendant RITZE's drug trafficking with defendant LE and co-conspirator #1. This evidentiary overlap supports finding that the false statement charge is of the same or similar character as the drug trafficking-related offenses.[4]

> b.   *Temporal Proximity of the Acts*

Second, the acts alleged for the murder-related counts, the drug trafficking-related counts, and the false statement charge have temporal proximity, because the murder conduct alleged took place between October and December 2019 (CR 134 at 2-8), the drug trafficking conduct alleged took place between October 2019 and

---

[4] As discussed in more detail below, this overlapping proof necessitates joinder of defendant RITZE's drug trafficking-related crimes with the murder-related charges and the false statement charge under the common scheme or plan and same act or transaction prongs of Rule 8(a) as well.

December 2019 (CR 134 at 9-21), and false statements were given in December 2019 (CR 134 at 22-23).  United States v. Rousseau, 257 F.3d 925, 932 (9th Cir. 2001) (joinder proper where offenses were separated by over six months); United States v. Drummondo-Farias, 622 F. App'x 616, 617 (9th Cir. 2015) (fourteen months); United States v. Akana, 210 Fed. Appx. 681, 682 (9th Cir. 2006) (fifteen months).

### c.   Physical Location of the Acts

Third, the acts for all the charges took place in close proximity.  All the material events took place within Orange County, California.  The murder conspiracy began in Orange County, California, where both defendants live, and the murder was committed after the defendants took the victim on defendant RITZE's boat from the Dana Point harbor in Orange County.  Many of the relevant events took place at the same location.  For example, the CI discussed the murder with defendant LE during drug sales at defendant LE's home on November 10, 2019, November 20, 2019, and December 10, 2019.  (CR 134 at 4-5, 10-12.)

### d.   Modus Operandi of the Crimes

Fourth, the modus operandi of the murder-related and drug trafficking-related crimes was to conduct them covertly to avoid law enforcement detection and jointly with others to ensure the success of the criminal ventures.  United States v. Tillisy, 697 F. App'x 910, 912-13 (9th Cir. 2017) (citing Marchiol v. United States, No. CR-13-1391-PHX-SRB, 2017 WL 913599, at *7 (D. Ariz. Feb. 13, 2017) (finding a modus operandi where defendant "was motivated by a desire to conduct transactions covertly to avoid detection by government officials," explaining "[t]hat one set of transactions involved drug dealers and real estate and the other set involved bankers, [did] not

alter the clear picture painted in the indictment of a mode of conducting business involving illicit and covert transactions")). Defendant LE possessed a ghost gun to further his drug trafficking, a firearm designed to avoid law enforcement detection.  In addition, many of the key events took place in people's homes and out at sea to avoid law enforcement detection.  Moreover, the communications were done over the phone and often in coded language.  (CR 134 at 4, 9, 11.)  The false statements defendant RITZE made in December 2019 were only to further that purpose: avoid having law enforcement detect her and defendant LE's criminal actions.  This similar modus operandi supports finding that the murder-related offenses, the drug trafficking-related offenses, and the false statement charge are of the same or similar character.

<em>e.  Elements of the Offenses</em>

Finally, the elements of the offenses generally favor a finding that the offenses are of the same or similar character.  The elements of the murder conspiracy (Count Two) and drug conspiracy (Count Four) are similar.  Both conspiracies require proof that there was an agreement and that the defendants knowingly joined the agreement; the only difference is the objects of the conspiracies.  Likewise, both the § 924(c) counts (Counts Three and Twelve) have substantially similar elements.  Both counts allege possession of a firearm in furtherance of another crime.  <u>Rousseau</u>, 257 F.3d at 932 (holding that two felon in possession charges seven months apart were properly joined).  The § 924(c) charge related to the murder (Count Three) does contain additional allegations—including the use, brandishing, and discharge of the firearm.  The government agrees that the elements of the murder charge (Count One), the drug distribution

14

1  counts (Counts Five to Eleven), and the false statement charge (Count

2  Thirteen) are different.

3      Defendant LE argues that the § 924(c) charges (Count Three and

4  Count Twelve) are not of the same or similar character because the

5  crimes involved different guns and the underlying felonies were

6  different.  (CR 147 at 5-6.)  His authority for this position is

7  easily distinguishable and not on point.  By definition, the modus

8  operandi is the same: using a firearm to further another dangerous

9  crime.  First, defendant relies on the Fourth Circuit's decision in

10 United States v. Hawkins, 776 F.3d 200, 209 (4th Cir. 2015).  There,

11 the Fourth Circuit found that joining a carjacking charge and

12 § 924(c) charge (Counts 1 and 2) with an unrelated felon in

13 possession charge committed three weeks later (Count 3) was improper.

14 Hawkins, 776 F.3d at 208.  Here, the § 924(c) charges are the same

15 offense—not an entirely different statute.  Moreover, the court there

16 acknowledged that joining the same charges together like multiple

17 felon in possession charges or multiple bank robbery counts was

18 proper.  Id. (citing Rousseau, 257 F.3d at 932; United States v.

19 Acker, 52 F.3d 509, 514 (4th Cir. 1995) ("Trial courts routinely

20 allow joinder of different bank robbery counts against a single

21 defendant in the same indictment.")).  That logic supports joining

22 multiple § 924(c) charges under Rule 8(a).  Second, defendant relies

23 on a district court decision in United States v. Hill, No. 13-CR-

24 00765-SI-1, 2015 WL 1055891, at *3 (N.D. Cal. Mar. 10, 2015) to argue

25 that the § 924(c) charges are not of the same or similar character.

26 In that case, the court found the charges were not properly joined;

27 however, the elements of the charges were different because one count

28 was of being a felon in possession of a firearm and the other count

15

was for a § 924(c) charge on a different date.  The large elemental difference present in Hill does not exist here.  Both charges are for violations of § 924(c).  Ultimately, defendant's argument ignores Ninth Circuit authority like Rousseau that upheld joining two felon in possession charges where the firearms were possessed six months apart.  257 F.3d 925, 932.  Such a holding is consistent with finding that the § 924(c) charges here are of the same or similar character.

### f.   The Defendants' Other Arguments

Defendant LE contends that the introductory allegations in the murder conspiracy charge are surplusage, manipulation, unfair, and violate defendant LE's right to due process. (CR 147 at 6-7.)  In its opposition to defendant LE's motion to strike surplusage, the government is addressing why these allegations are not surplusage. The government disagrees that these allegations are manipulative, unfair, or violate defendant LE's right to due process.  Rather, when seeking to join offenses on the basis that they are "of the same or similar character," the Ninth Circuit has cautioned the government against using a "barebones" indictment because the Court should not have to "engage in inferential gymnastics or resort to implausible levels of abstraction to divine similarity." Jawara, 474 F.3d at 578; see also United States v. Terry, 911 F.2d 272, 276 (9th Cir. 1990) ("No effort is made in the indictment even to suggest that the offenses are of the same or similar character or that they are part of the same transaction or parts of a common scheme.")  Accordingly, the detailed indictment comports with the Ninth Circuit's instructions in Jawara and Terry.

Defendant RITZE's argument that goes beyond the allegations of the Second Superseding Indictment, including the statements of co-

conspirator #1, should not be considered in the Rule 8 joinder

analysis.  (CR 158 at 4-8.)  For the Rule 8 analysis, the Court is

limited to the allegations in the indictment, what is readily

apparent from the indictment, and the inferences that can be

reasonably drawn from those allegations.  Jawara, 474 F.3d at 573,

578.

                2.   **For defendant RITZE, the Counts Are Also Properly**
                     **Joined Under the Common Scheme and Same Act or**
                     **Transaction Prongs of Rule 8(a)**

For defendant RITZE, joinder of the drug trafficking-related

charges with the murder-related charges and the false statement

charge is also proper under the common scheme and same act or

transaction prongs of Rule 8(a).[5]  In one interview on December 19,

2019, defendant RITZE made false statements about both the murder and

her drug trafficking with defendant LE.  (CR 134 at 22-23.)  To prove

Count Thirteen, the government will need to prove defendant RITZE's

involvement in the murder charged in Counts One through Three and

defendant RITZE's drug trafficking charged in Counts Four, Five, and

Nine.  Joinder of a false statement charge is proper under the same

act or transaction prong "when the same facts must be adduced to

prove each of the joined offenses."  United States v. Portac, 869

F.2d 1288, 1294 (9th Cir. 1989) (defendant's bid-rigging conspiracy

charge properly joined under Rule 8(b) with co-defendant's charge of

perjury before grand jury investigating bid-rigging where both

charges "require[d] the establishment of the conspiracy and

[defendant's] relation to it"); United States v. Barney, 568 F.2d

---

[5] For defendant LE, joinder of the drug trafficking-related
charges with the murder-related charges is proper under the same or
similar character prong of Rule 8(a) for the reasons stated earlier.

17

134, 135 (9th Cir. 1978) (per curiam) (joinder of false testimony count proper when "alleged false testimony related directly to the illegal transaction with which [defendant] was charged"); cf. United States v. Sarkisian, 197 F.3d 966, 975-76 (9th Cir. 1999) (joinder improper where no substantial overlap in evidence between extortion charge and remaining counts alleging trafficking in stolen cars and auto parts).

Similarly, this Court has held that offenses occurring at different times may properly be jointly charged as part of a common plan or scheme where one offense arises from the need to conceal or prevent the detection of the other. For example, in United States v. Whitworth, 856 F.2d 1268 (9th Cir. 1988), counts of espionage and tax evasion were properly joined because the "tax evasion flow[ed] directly from" the espionage conduct and "result[ed] in large part from the necessity of concealing the illegal proceeds of that activity." Id. at 1277. The false statements alleged in Count Thirteen flowed directly from the murder-related conduct and the drug trafficking-related conduct and were designed to keep the defendants' involvement in those crimes from being uncovered.

Defendant RITZE's primary authority for misjoinder is Terry, 911 F.2d at 276. (CR 158 at 9.) That case is readily distinguishable. There, the allegations did not contain any commonality between the first two counts and third count. In that case, Count One and Two described an event occurring on June 9, 1988 in San Joaquin County, while Count Three described an event occurring on June 22, 1988 in another city and county. Id. The drug crimes in the first two counts were "wholly different" from the possession of a firearm charge in the third count. Id. In addition, the evidence necessary

to prove the third count did not overlap with the evidence required to prove the first two counts.  Id.  Here, the evidence required to prove the drug trafficking-related charges will be necessary to prove the murder-related charges and the false statement charge. Additionally, the conduct generally occurred in Orange County, California.  In sum, Terry is inapposite.

### C.   A Severance Due to Prejudice is Not Warranted Here When Weighing the "Dominant Concern" with Judicial Economy

The defendants have failed to show the manifest prejudice necessary to outweigh dominant concern about judicial economy.  That is particularly true where the severances requested would require four trials: two jury trials for defendant LE and two jury trials for defendant RITZE.

Any prejudice from joinder can be mitigated in several different ways.  The Court will instruct the jury to treat the charges separately, mitigating any concern that there will be spillover effect.  Jawara, 474 F.3d at 580; Rousseau, 257 F.3d at 932 (no actual prejudice where "court specifically instructed the jury that it was obliged to consider the counts separately"); United States v. Fiorillo, 186 F.3d 1136, 1145 (9th Cir. 1999) (same).

While the jurisdictional element for the murder charges adds some complexity to the legal analysis of the case, the factual issues at trial will be relatively simple.  Jawara, 474 F.3d at 581 (holding that there was no prejudice from joinder where the evidence was "relatively simple.").  Depending on how the Court rules on the jurisdictional element, the murder charges will likely, largely turn on whether the murder was committed with premeditation or something lesser, whether defendant LE acted in self-defense, and whether

19

defendant RITZE was aware of the murder plan prior to going on her boat with defendant LE and the victim.  The government is unaware of what the defenses will be on the drug trafficking-related charges and the false statement charge.  But the evidence of those charges is quite simple.  For the drug trafficking-related charges, it will involve showing each defendant knowingly joined the conspiracy and proving up each drug distribution.  For the false statement charge, the evidence will consist of introducing the relevant portions of the December 19, 2019, interview and showing how defendant RITZE knowingly and willfully made each charged false statement.  Regardless of what defense is raised as to the drug charges and the false statement charge, the jury should be able to easily distinguish the evidence supporting the murder-related charges and the false statement charge from the evidence supporting the drug trafficking-related charges.

In addition, the strength of the charges is similar.  This is not a case where a weak charge is joined with a strong one.  <u>Jawara</u>, 474 F.3d at 580-81.  To prove the murder-related charges, the government expects the evidence to include the following: a recording where defendant RITZE discussed killing people in the ocean; the defendants' statements made in Las Vegas, Nevada in early October 2019 related to the killing of victim T.D.; defendant LE's admissions to others that he committed the murder; evidence that the defendants had a motive to murder the victim because the victim owed defendant LE money and defendant LE confirmed that the victim's life insurance policy was active less than 24 hours before the murder; and evidence that the defendants tracked the victim's widow (a beneficiary of the victim's life insurance policy) following the commission of the

murder.  To prove the drug trafficking-related charges, the government expects the evidence to include the following: recordings of defendant LE selling drugs to a CI; text messages showing defendant LE and defendant RITZE discussing the drug trafficking; and testimony from at least three witnesses that engaged in drug trafficking with one or both defendants (the CI and co-conspirators #1 and #2).  To prove the false statement charge, the government expects to introduce the relevant portions of the December 19, 2019, interview and use the evidence supporting the murder-related counts and the drug trafficking-related counts to show that defendant RITZE knowingly and willfully made each charged false statement.  That balance in evidence favors denying the severance as well.

Of course, any dissimilarity in the charges should strengthen the jury's ability to segregate the evidence and diminishes prejudice.  Jawara, 474 F.3d at 580-81.

Even if a severance was granted, the defendants' history of drug trafficking will need to be presented to the jury—which also favors denying the severance.  See, e.g., United States v. Irvine, 756 F.2d 708, 712 (9th Cir. 1985) (no prejudice where bulk of evidence would have been admissible even if there had been separate trials); United States v. Kenny, 645 F.2d 1323, 1345 (9th Cir. 1981) (same).  First and foremost, as stated earlier, the CI will testify about the statements defendant LE made to the CI regarding the murder.  These statements were often made in the context of drug sales.  The nature, setting, and purpose of those meetings will be relevant to the jury when deciding the credibility of the CI's testimony and the admissions that the CI will introduce.  As stated earlier, the government anticipates that co-conspirator #2 will testify about

being an accessory after the fact to the murder and the nature of his relationship with defendant LE, including the drug trafficking charged in Count Four.  This evidence will be admitted as impeachment of the witness and for his credibility to explain why defendant LE would make admissions to the person and get the person involved with covering up the murder.  Similarly, the drug trafficking following the murder will rebut defendant RITZE's anticipated defenses.  And, for defendant RITZE, the drug trafficking evidence is necessary to prove the false statement charge.

Defendant RITZE argues that the jury would be more likely to convict of the murder-related counts when hearing she is a drug dealer.  (CR 158 at 9.)  At the same time, defendant RITZE contends that the drug trafficking is minor and should not be before the same jury considering the murder charges.  (CR 158 at 8-9.)  These positions are inconsistent in the prejudice analysis.  Moreover, defendant RITZE fails to address the fact that Count Thirteen contains an allegation related to her knowledge of the drug trafficking, which will require proof of her drug trafficking.  Accordingly, when proving the false statement charge, the government will need to prove the drug trafficking even if the requested severance by defendant RITZE was granted.

Defendant LE will testify at trial and claim he acted in self-defense on the boat.  (CR 147 at 7-8.)  Defendant LE seeks severance, claiming that by testifying about self-defense, then he will also waive his privilege against self-incrimination on the drug trafficking charges.  "To justify severance on this ground, a defendant must demonstrate that he has important testimony to give concerning some counts and a strong need to refrain from testifying

1  on others." Whitworth, 856 F.2d at 1277 (affirming denial of

2  severance where defendant wished to testify on espionage counts but

3  assert his privilege against self-incrimination with respect to the

4  tax evasion charges (citing United States v. Nolan, 700 F.2d 479, 483

5  (9th Cir. 1983)). The government is assuming (without conceding)

6  that defendant LE has or will show the Court in camera information

7  about his self-defense testimony to satisfy the first part of the

8  analysis (i.e., defendant LE has "important testimony" to give

9  concerning the murder-related counts). But, what is his strong need

10 to refrain from testifying on the drug trafficking-related counts?

11 Defendant LE makes no such proffer. Without anything to support a

12 finding that defendant LE had a "strong need" to refrain from

13 testifying on the drug trafficking-related counts, severance on those

14 grounds is not warranted.

15      Having four trials is not warranted here. This is particularly

16 true where many of the witnesses will then be called multiple times

17 to testify and the evidence of drug trafficking that the defendant

18 seeks to avoid will be admitted at each trial. Also, if the

19 defendants were tried four times, there would be evidence admitted

20 during both trials from the same sources. The searches of phones are

21 material to both sets of charges. This foundational evidence would

22 be admitted at all trials.

23      The dominant concern in judicial economy should prevail here

24 where the defendants' showing of prejudice is weak.

25 **IV.  CONCLUSION**

26      For the foregoing reasons, the government respectfully requests

27 that this Court deny the defendants' motions.

28