8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

1

1   **UNITED STATES DISTRICT COURT**

2   **CENTRAL DISTRICT OF CALIFORNIA**

3   **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4   - - - - - - -

5   UNITED STATES OF AMERICA,           )
                                        )        **CERTIFIED**
6          Plaintiff,                   )
                                        )
7      vs.                              ) No. 8:20-cr-00002-DOC
                                        )        Item Number 2
8   HOANG XUAN LE, *also known as*      )
    *Wayne, also known as Wangsta*; and )
9   SHEILA MARIE RITZE,                 )
                                        )
10         Defendants.                  )
    _____ )

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15          Hearing on Motion to Dismiss

16          Santa Ana, California

17          Wednesday, March 3, 2021

18

19

20

21  Debbie Gale, CSR 9472, RPR, CCRR
    Federal Official Court Reporter
22  United States District Court
    411 West 4th Street, Room 1-053
23  Santa Ana, California 92701
    (714) 558-8141

24

25

1    **APPEARANCES OF COUNSEL:**

2    FOR THE UNITED STATES OF AMERICA:

3         DEPARTMENT OF JUSTICE
          OFFICE OF THE UNITED STATES ATTORNEY
4         BY:  Gregory Shepherd Scally
               Assistant United States Attorney
5         411 West 4th Street
          8th Floor
6         Santa Ana, California 92701
          714-338-3592
7         gregory.scally@usdoj.gov

8         DEPARTMENT OF JUSTICE
          OFFICE OF THE UNITED STATES ATTORNEY
9         BY:  Vibhav Mittal
               Assistant United States Attorney
10        411 West 4th Street
          8th Floor
11        Santa Ana, California 92701
          714-338-3534
12        vibhav.mittal@usdoj.gov

13   FOR DEFENDANT 1) HOANG XUAN LE:

14        Craig Wilke (CJA appointed)
          LAW OFFICE OF CRAIG WILKE
15        305 North Harbor Boulevard, Suite 216
          Fullerton, California 92832
16        714-870-8900
          craig@craigwilkelaw.com

17   FOR DEFENDANT 2) SHEILA MARIE RITZE:

18
          David W. Wiechert (CJA appointed)
19        WIECHERT MUNK & GOLDSTEIN PC
          27136 Paseo Espada, Suite B1123
20        San Juan Capistrano, CA 92675
          949-361-2822
21        dwiechert@aol.com

22

23

24

25

1               **I N D E X**

2  **PROCEEDINGS**                                  **PAGE**

3  HEARING ON MOTION TO DISMISS COUNTS ONE THROUGH THREE

4  Appearances                                       4

5  Defense Argument (by Mr. Wilke)                   5

6  Defense Argument (by Mr. Wiechert)               23

7  Government's Argument (by Mr. Scally)            37

8  Defense Response (by Mr. Wilke)                  44

9  Defense Response (by Mr. Wiechert)              47

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

4

```
          1          SANTA ANA, CALIFORNIA, WEDNESDAY, MARCH 3, 2021

          2                          Item Number 2

          3                          (1:26 p.m.)

01:26     4          THE COURT:  All right.  Good afternoon.  I hope

          5    all of you are well.  We'll go on the record in the matter

          6    of Hoang Xuan Le and Sheila Marie Ritze.  It's

          7    Case Number 20-00002.

01:27     8          And, Counsel, for the record, would you be kind

          9    enough to introduce yourself.  And begin with Greg Scally, I

          10   believe, for the United States.

01:27     11                         APPEARANCES

01:27     12         MR. SCALLY:  Thank you, Your Honor.  Good

          13   afternoon.  Greg Scally and Vib Mittal for the

          14   United States.

01:27     15         THE COURT:  All right.  Thank you very much.

01:27     16         And Mr. Wilke?  There you are.

01:27     17         MR. WILKE:  Good afternoon.  Good afternoon,

          18   Your Honor.

01:27     19         THE COURT:  It's because the screens are changed

          20   around.  So normally you'd be over here, Mr. Wilke, and we'd

          21   have you on this side of the screen.  I'm joking with you a

          22   little bit.  But, Mr. Wilke, it's nice to see you.

01:27     23         And, Mr. Wiechert, if you'd make your appearance.

01:27     24         MR. WIECHERT:  Yes, Your Honor.  David Wiechert on

          25   behalf of Sheila Ritze, who is present by video and
```

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 5 of 51   Page ID
#:1016
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

5

| | |
|---|---|
| | 1 |
| 01:27 | 2 |
| | 3 |
| 01:27 | 4 |
| 01:27 | 5 |
| | 6 |
| 01:27 | 7 |
| 01:27 | 8 |
| 01:27 | 9 |
| | 10 |
| | 11 |
| 01:28 | 12 |
| | 13 |
| 01:28 | 14 |
| 01:28 | 15 |
| | 16 |
| | 17 |
| | 18 |
| 01:28 | 19 |
| 01:28 | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |

1    consenting to video, Your Honor.

2         THE COURT:  And, Sheila Ritze, I'm waving at you.

3    Can you see me and hear me?

4         DEFENDANT RITZE:  (No audible response.)

5         THE COURT:  Now, I can't hear you.  You've got

6    your microphone muted.

7         DEFENDANT RITZE:  Yes, Your Honor, I can.

8         THE COURT:  Okay.  Terrific.  Thank you very much.

9         And, Mr. Le, can you see and hear me?  I'm waving

10    at you.  Un-mute your microphone so I know that you can

11    speak.

12         DEFENDANT LE:  Yes, sir, I can hear you.  Yes,

13    Your Honor.

14         THE COURT:  Okay.  Thank you very much.

15         Then, Counsel, I've got some initial thoughts, but

16    I'd rather listen to your arguments briefly and then I'd

17    like to share my notes with you if I still have those same

18    thoughts.

19                          **DEFENSE ARGUMENT**

20         MR. WILKE:  Issue before the Court is an issue of

21    statutory interpretation and -- and, essentially, it asks

22    the Court to decide what Congress meant in 1948 when it

23    defined the special maritime territorial jurisdiction of the

24    United States to include, quote, "the high seas," as well

25    as, quote, "other waters within the admiralty and maritime

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

6

| | | |
|---|---|---|
| | 1 | jurisdiction'a the United States, and out of jurisdiction of |
| | 2 | any particular stay [sic]." |
| 01:28 | 3 | That's the first question of statutory |
| | 4 | interpretation.  The second question of statutory |
| | 5 | interpretation is the 1994 Congressional declaration that |
| | 6 | the government relies on.  And the -- the question presented |
| | 7 | there is, you know, what did Congress mean in 1994 when it |
| | 8 | declared that all territorial sea, defined by -- |
| 01:29 | 9 | THE COURT:  Just a moment. |
| 01:29 | 10 | Is that the 901 provision? |
| 01:29 | 11 | MR. WILKE:  The 901(a) argument the government |
| | 12 | makes. |
| 01:29 | 13 | THE COURT:  Okay. |
| 01:29 | 14 | MR. WILKE:  Yeah, that's exactly it. |
| 01:29 | 15 | Both of those questions are legal questions. |
| | 16 | One's a statutory interpretation.  Um, and I'll start with |
| | 17 | the -- what -- what I consider the main argument of the |
| | 18 | government.  Um, and they -- they essentially bring first |
| | 19 | two arguments.  One that, uh, waters up to -- all waters up |
| | 20 | to the shore constitute the high seas.  That's one argument. |
| 01:29 | 21 | Then they bring the second argument that the 1994 |
| | 22 | declaration by Congress expanded the definition of special |
| | 23 | maritime and territorial jurisdiction. |
| 01:29 | 24 | THE COURT:  Under 7(a)? |
| 01:29 | 25 | MR. WILKE:  Under 7(a) and under 7(1), yes, to |

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
|         | 1  | include all waters going to the shore.                       |
| 01:29   | 2  | THE COURT:  Okay.                                             |
| 01:29   | 3  | MR. WILKE:  The outset -- I wanna point out that             |
|         | 4  | those -- those two arguments are incompatible with each      |
|         | 5  | other; right?  Because if, in fact, that's what Congress     |
|         | 6  | meant to do in 1994, Congress understood that if the         |
|         | 7  | government were right about that argument -- the argument    |
|         | 8  | about the high seas would be contrary to any Congress, uh,   |
|         | 9  | Congressional understanding.  So they -- they -- it's not -- |
|         | 10 | those arguments the government makes are alternative         |
|         | 11 | arguments and they're essentially inherently contradictory   |
|         | 12 | of each other.                                               |
| 01:30   | 13 | I wanna start, though, with the 1948 issue and               |
|         | 14 | that -- and the 7(1) definition of special maritime and      |
|         | 15 | territorial jurs- -- um, it -- it has two -- two sub --      |
|         | 16 | subdivisions, if you will, or subcomponents.                 |
| 01:30   | 17 | First, "high seas," if wat -- uh, any crime or a             |
|         | 18 | crime of this nature committed on the high seas is within    |
|         | 19 | federal jurisdiction.                                        |
| 01:30   | 20 | Um, begging the question of what did Congress mean           |
|         | 21 | by "high seas."  That term is -- has a lengthy history.  And |
|         | 22 | we -- we laid out much of that history in our papers.  In    |
|         | 23 | particularly the reply brief, I attempted to get the court   |
|         | 24 | some sense of where those -- that terminology comes from.    |
| 01:31   | 25 | But at a minimum, the Court just looks at the                |

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 8 of 51   Page ID
#:1019
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

8

|       |    |                                                                     |
|-------|----|---------------------------------------------------------------------|
|       | 1  | plain language.  The term "high seas" means -- "high" means         |
|       | 2  | like a highway.  It's open.  It's available by which anybody        |
|       | 3  | could travel.  The historical understanding of that term was        |
|       | 4  | that it was those ocean waters over which no nation                 |
|       | 5  | exercised sovereignty.                                              |
| 01:31 | 6  | The government's entire argument on "the high seas                  |
|       | 7  | goes all the way to the shore" relies on language in early          |
|       | 8  | 18th Century cases -- early to mid 18th Century cases, in           |
|       | 9  | which this issue was not before the Court, in which the             |
|       | 10 | issue before the Court --                                           |
| 01:31 | 11 | *(Court reporter requests clarification for the*                    |
|       | 12 | *record.)*                                                          |
| 01:31 | 13 | MR. WILKE:  Yeah.                                                    |
| 01:31 | 14 | The issue -- the cases on which the government                      |
|       | 15 | relies are these, uh, early-to-mid 19th Century (audio              |
|       | 16 | interference) in which this issue about how far federal             |
|       | 17 | jurisdiction comes to the shore was not at issue.  There            |
|       | 18 | were cases like *Wiltberger*, which was a case of murder            |
|       | 19 | committed on a freighter in the Tigris River in China, uh,          |
|       | 20 | where the (audio interference) was simply distinguishing            |
|       | 21 | high seas from inland waters.                                       |
| 01:32 | 22 | That's a common issue in many'a these early cases,                  |
|       | 23 | which really has nothing to do with the issue presented             |
|       | 24 | here.  The issue presented here is, uh, where do high seas          |
|       | 25 | begin in the ocean waters.                                          |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

9

| | | |
|---|---|---|
| 01:32 | 1 | By the late 18th Century, Congress was -- uh, the |
| | 2 | Supreme Court was clear, and Congress's legislating with a |
| | 3 | clear understanding that high seas means non-sovereign |
| | 4 | waters, nonterritorial.  And I use the term sovereign. |
| 01:33 | 5 | *(Internet interruption)* |
| 01:33 | 6 | *(Court reporter requests clarification for the* |
| | 7 | *record.)* |
| 01:33 | 8 | MR. WILKE:  I -- going back, I used the term -- |
| | 9 | uh, I lost my train of thought there.  But -- but if I can |
| | 10 | go back just a moment, the -- um, the point I was making was |
| | 11 | that by 1948, when Congress enacted 7(1), um, the definition |
| | 12 | of "high seas" was settled.  It did not include sovereign |
| | 13 | waters; that is, waters over any nation exercise the right |
| | 14 | to exclude other nations. |
| 01:33 | 15 | These territorial waters, um, are, by definition, |
| | 16 | sovereign waters.  So "territorial sea" and, uh, "sovereign |
| | 17 | waters" are essentially interchangeable terms. |
| 01:34 | 18 | Um, the -- and I had cited -- I cited in our |
| | 19 | papers -- and I -- I won't, you know, bore the Court with my |
| | 20 | multiple citations, but there's, um, just a string of |
| | 21 | Supreme Court cases beginning in 1890 uh, through the mid |
| | 22 | 20s in the *Cunard* case.  And then since 1948, when 7(1) was |
| | 23 | enacted, you know, other cases, including *U.S. v. Louisiana*, |
| | 24 | and uh, the, uh, uh -- the -- there's another case -- name |
| | 25 | escapes me right now, but it's cited in our papers -- where |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

10

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | the Supreme Court, as recently as 2013 -- the Supreme     |
|       | 2  | Court's consistently recognized this idea, this definition |
|       | 3  | of "high seas" being non-sovereign waters.               |
| 01:34 | 4  | The Court -- for the Court to just ignore that           |
|       | 5  | authority -- the government's argument is, well, that --  |
|       | 6  | that's -- that's fine, but that's in a different context. |
|       | 7  | That's not the context of interpreting 7(1).             |
| 01:35 | 8  | Problem is, at least two Circuits, including the          |
|       | 9  | Ninth, say it is.  The Corey case out of the Ninth Circuit |
|       | 10 | is interpreting 7(1).  Granted, it's as -- uh, it's in    |
|       | 11 | support of an argument that the Court makes with regard to |
|       | 12 | 7(3).  7(1) wasn't the issue then.  But it's clearly [sic] |
|       | 13 | that they interpret 7(1), uh, uh -- the "high seas" as used |
|       | 14 | in 7(1) to mean non-sovereign waters.                    |
| 01:35 | 15 | There's a Fourth Circuit case also cited in my           |
|       | 16 | papers that -- that clearly recognizes this Supreme Court |
|       | 17 | definition of "high seas" as applicable in the 7(1) context. |
| 01:35 | 18 | The other problem the government has is it can           |
|       | 19 | offer the Court no reason why criminal jurisdiction under |
|       | 20 | 7(1) should be a more punitive or different definition than |
|       | 21 | other areas of the law.  And that whole argument runs     |
|       | 22 | counter to what we know to be the rule of lenity that     |
|       | 23 | applies in criminal cases that, uh -- uh, that, uh, uh -- |
|       | 24 | where the statute's ambiguous or unclear, the Court has to |
|       | 25 | adopt the more lenient interpretation there.             |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 11 of 51    Page ID
#:1022
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

11

01:36    1          And the government -- just, uh, besides those two

2    points, the government can just offer no reason why this --

3    the term "high seas" should somehow be defined differently,

4    uh, for purposes of federal criminal statute.  It's been

5    defined in international law, in every other area of the law

6    where Supreme Court has confronted the issue, and by several

7    Circuits throughout the county, including the Ninth, in the

8    criminal context, and in -- specifically, as it relates to

9    7(1).  The government just has no response to that argument,

10    Your Honor.

01:36    11          Um, the second issue -- the second issue of

12    statutory interpretation is this issue about, uh, the 19 --

13    the 901(a) argument, which is the AEDPA, 9 -- uh,

14    Antiterrorism Effective Death Penalty Act [verbatim] of

15    1994, Section 901(a) buried in the last chapter of

16    miscellaneous provisions, clearly not the focal point of

17    AEDPA.

01:37    18          *(Court reporter requests clarification for the*

19          *record.)*

01:37    20          THE COURT:  A-E-D-P-A, Deb.  And they'll be

21    capital.

01:37    22          MR. WILKE:  Um, that, um -- that, in that section,

23    Congress declares that the special maritime and territorial,

24    uh -- the territorial sea of the United States is defined by

25    the '88 Presidential proclamation for purposes of criminal

01:37

01:38

01:38

01:38

01:38

1   jurisdiction as part of the U.S., subject to its

2   sovereignty, and it's within the --

3        *(Court reporter requests clarification for the*

4        *record.)*

5             MR. WILKE:  That's fine.

6             For purposes of federal criminal jurisdiction,

7   it's part of the United States, subject to its sovereignty,

8   and it's within the special maritime and territorial

9   jurisdiction of the United States for purposes of Title 18,

10  United States Code.

11            The government would read this declaration as

12  essentially amending 7(1).  They wanna read this declaration

13  completely divorced from 7(1).  It -- Congress didn't repeal

14  7(1).  It didn't amend 7(1).  It didn't change the language

15  at all.  And within 7(1) remains the exclusion of state

16  waters.

17            So this whole argument on 901(a) is based on this

18  government's alternative definition, inconsistent and

19  incompatible with its high seas argument.  Okay?  Um, and

20  it's based on, *Now, okay, if it's not the high seas, it's*

21  *other waters within the admiralty and maritime jurisdiction*

22  *of the United States.*  And we know -- and this part of

23  there [sic] that said "outside the jurisdiction of any

24  particular state" -- that part doesn't really apply anymore,

25  because in 1994 Congress expanded the territorial sea to

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

13

| | | |
|---|---|---|
| 01:39 | 1 | include the waters within three miles of shore. |
| | 2 | Your Honor, that -- that reading ignores the plain |
| | 3 | language of 7(1) that remains. It -- it writes that out of |
| | 4 | it. Um, the Court can't ignore it. I -- I would agree that |
| | 5 | the statutory scheme, when you read 901(a) and 7(1), is not |
| | 6 | a model of clarity. |
| 01:39 | 7 | Doesn't mean the Court can just wipe out or strike |
| | 8 | part of 7(1) that Congress has chosen to left -- they left |
| | 9 | it in there in 1994, and they've continued to leave it in |
| | 10 | there since then, even though the statute's been amended at |
| | 11 | least once -- I think maybe twice -- since 1994. |
| 01:40 | 12 | Um, it is the -- that argument -- the government's |
| | 13 | argument is simply incompatible with what remains to be the |
| | 14 | plain language of 7(1). And that is, when the government is |
| | 15 | relying on this second provision of 7(1), "other waters," |
| | 16 | um, that only will confer federal jurisdiction when the |
| | 17 | state doesn't exercise jurisdiction over those waters. That |
| | 18 | language could not be any clearer in 7(1). |
| 01:40 | 19 | It seems to me, Your Honor, that -- and the |
| | 20 | argument we put forward in our papers was that the only |
| | 21 | really reasonable reading of 901(a) -- it accounts for both |
| | 22 | its language, the historical context -- the plain language |
| | 23 | of 7(1) that remains is that what Congress was doing there |
| | 24 | is simply declaring that that expanded "territorial sea" -- |
| | 25 | that area from three to twelve miles out -- they're making |

Certified for the U.S. District Court CM/ECF
Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 14 of 51   Page ID #:1025
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

14

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | it clear that that's now within the --                       |
| 01:40 | 2  | *(Court reporter requests clarification for the*             |
|       | 3  | *record.)*                                                    |
| 01:41 | 4  | MR. WILKE:  -- that that area is within the                  |
|       | 5  | special maritime and territorial jurisdiction of the         |
|       | 6  | United States.  And they needed to do that because before    |
|       | 7  | then, that area was considered (audio interference) --       |
| 01:41 | 8  | *(Court reporter requests clarification for the*             |
|       | 9  | *record.)*                                                    |
| 01:41 | 10 | MR. WILKE:  Before the 1988 Presidential                     |
|       | 11 | Proclamation, um, expanding the territorial sea -- the high  |
|       | 12 | seas began at three miles.  After the 1988 Presidential      |
|       | 13 | Proclamation, the high seas began at twelve miles.           |
| 01:41 | 14 | You -- the whole purpose of the declaration is to            |
|       | 15 | make clear that there was no jurisdictional gap.  The states |
|       | 16 | have never exercised jurisdiction in the                     |
|       | 17 | three-to-twelve-mile range.  And, uh, that area was no       |
|       | 18 | longer considered to be the high seas.                       |
| 01:42 | 19 | So I think the fair reading of 901(a), when                  |
|       | 20 | Congress declares that to be within the special maritime and |
|       | 21 | territorial jurisdiction of the United States but does not   |
|       | 22 | otherwise amend any of the language or repeal any of the     |
|       | 23 | language in Section 7(1), is that Congress meant to make     |
|       | 24 | clear that the 3-to-12-mile range would be waters within     |
|       | 25 | federal jurisdiction.  I think that's the fair reading of    |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 15 of 51    Page ID
#:1026
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

15

|        |    |                                                                        |
|--------|----|------------------------------------------------------------------------|
|        | 1  | that -- that amendment, at least consistent with the                   |
|        | 2  | statutory scheme.                                                      |
| 01:42  | 3  | And I think that, uh, an argument that -- that the                     |
|        | 4  | government would have this Court follow simply just ignores            |
|        | 5  | what remains the plain language of 7(1).                               |
| 01:42  | 6  | Um, the only other points I would like to make,                        |
|        | 7  | uh, at this time is that we have, um -- we have made a                  |
|        | 8  | constitutional avoidance argument, Your Honor; and that is,            |
|        | 9  | it is our view that if the Court were to construe the                  |
|        | 10 | statutes as the government would have the Court do, um, it             |
|        | 11 | would raise serious doubt about their constitutionality.               |
| 01:43  | 12 | Um, specifically, to the extent that the Court                         |
|        | 13 | adopted the government's "territorial sea" argument, the               |
|        | 14 | Court would essentially be saying that its authority -- that           |
|        | 15 | federal authority over waters not on the high seas is                  |
|        | 16 | derived from Article III.  That's the only basis for federal           |
|        | 17 | authority there.  And in the past, the Supreme Court has not           |
|        | 18 | been willing to allow that federal authority to infringe on            |
|        | 19 | state police power.  It's the *Massachusetts* -- *Manchester v.*       |
|        | 20 | *Massachusetts* case, *The Abbey Dodge* case that we cite.             |
| 01:43  | 21 | If the Court were to adopt the government's                            |
|        | 22 | "territorial sea" argument that the territorial -- that the            |
|        | 23 | special maritime and territorial jurisdiction expands the              |
|        | 24 | territorial sea all the way to the shore, uh, and,                     |
|        | 25 | therefore, extends to state waters, essentially, um, we                |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 16 of 51    Page ID #:1027
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

16

1    think that raises a serious, serious constitutional question

2    in terms of whether federal Article III authority allows for

3    that.

01:44    4        We also think that, uh, the government's "high

5    seas" argument makes -- raises a serious constitutional

6    question about whether the statute would be void for

7    vagueness.  The plain term "high seas" and the

8    interpretation now for 140 years by the Supreme Court --

9    130 years by the Supreme Court -- defining it as

10    non-sovereign waters, uh, a -- a reasonable person, uh, uh,

11    would not be on notice that a crime committed in state

12    waters would be subject to federal jurisdiction.  It would

13    raise a serious vagueness issue there as well.

01:45    14        Um, there's another constitutional issue that

15    arises here, uh, by the government's "high seas" argument

16    that would create a, uh -- a problem with state

17    convictions -- not particularly this case -- but there's

18    some authority from the 19th Century.  And it's the *Smith v.*

19    *Turner* case, the *Fox v. Ohio* case that's -- that essentially

20    stands for the proposition that Congress's federal authority

21    over the high seas is exclusive and that states cannot

22    exercise criminal jurisdiction or jurisdiction on crimes

23    committed on the high seas.

01:45    24        The government is trying to -- it's -- one of

25    their arguments is the high seas extends all the way into

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

17

|          |    |                                                                        |
|----------|----|------------------------------------------------------------------------|
|          | 1  | the shore.  And California, since its founding, has been               |
|          | 2  | exercising criminal jurisdiction three miles off its shore.            |
| 01:45    | 3  | If the Court were to adopt the government's "high                       |
|          | 4  | seas" argument, there then raises this issue about the                 |
|          | 5  | constitutionality of any state conviction that has happened            |
|          | 6  | in, uh, within 3 miles of the shore because, arguably, those           |
|          | 7  | are no longer -- those -- under the government's, uh --                |
|          | 8  | under the Supreme Court authority from the mid 19th century,           |
|          | 9  | those would be, uh, not -- outside of a state's fer --                 |
|          | 10 | jurisdiction because federal jurisdiction's exclusively over           |
|          | 11 | the high sea.                                                          |
| 01:46    | 12 | All of those I think are significant, significant                       |
|          | 13 | constitutional issues that, uh, the Court runs into should            |
|          | 14 | it adopt the government's interpretation of the statute.               |
| 01:46    | 15 | Um, we, at this point, have not brief -- fully                          |
|          | 16 | briefed those issues.  We have raised them as part of a                |
|          | 17 | constitutional avoidance issue.  Um, if the Court were,                |
|          | 18 | after today's hearing or prior to trial, uh, gonna rule in            |
|          | 19 | the government's favor with regard to the interpretation of           |
|          | 20 | the law, we would ask for leave to bring supplemental                  |
|          | 21 | briefing to raise the constitutional issue directly.  I               |
|          | 22 | point that out now because I think it does -- is a factor             |
|          | 23 | weighing in why we would like a pre- -- pretrial ruling on            |
|          | 24 | this issue.                                                            |
| 01:47    | 25 | With that I, uh -- if the Court has any questions,                      |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 18 of 51    Page ID #:1029
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

18

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | I'll be happy'a answer them.  But with that, I turn it back  |
|       | 2  | over to --                                                   |
| 01:47 | 3  | THE COURT:  How do you deal with *Miller v.*                 |
|       | 4  | *United States?*                                             |
| 01:47 | 5  | MR. WILKE:  *Miller* --                                       |
| 01:47 | 6  | THE COURT:  Disregarding it -- your briefing, you            |
|       | 7  | just really put that off to the side as I --                 |
| 01:47 | 8  | MR. WILKE:  Yeah, we -- we --                                 |
| 01:47 | 9  | *(Simultaneous speaking.)*                                    |
| 01:47 | 10 | THE COURT:  -- but that's a Ninth Circuit case.              |
| 01:47 | 11 | MR. WILKE:  And it's -- it's a Ninth Circuit case            |
|       | 12 | from 1937, Your Honor.  And we addressed it, uh, more        |
|       | 13 | thoroughly in the reply brief at pages, um --                |
| 01:47 | 14 | THE COURT:  I've read it, Counsel.  You don't need           |
|       | 15 | to refer to it.                                              |
| 01:47 | 16 | MR. WILKE:  Okay.                                            |
| 01:47 | 17 | THE COURT:  I'm looking for your argument now.               |
| 01:47 | 18 | MR. WILKE:  Yes.                                             |
| 01:47 | 19 | So couple -- couple points I'd raise there about            |
|       | 20 | *Miller*.  One, it's a different statute.  It's not          |
|       | 21 | interpreting 7(1).  It's interpreting a federal piracy       |
|       | 22 | statute.  And under the federal piracy statute, the          |
|       | 23 | jurisdictional hope there is "high seas" or "other waters    |
|       | 24 | within the admiralty and maritime jurisdiction."  That       |
|       | 25 | statute does not have the exclusion of state waters.  Okay?  |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 19 of 51    Page ID #:1030
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

19

01:48    1        So that statute, um, specifically does not, uh --

2    doesn't raise the issue that's raised here; and that is, for

3    certain types of crimes -- like the one charged here --

4    Congress has specifically said, *We're only going to exercise*

5    *jurisdiction when the state doesn't.*

01:48    6        In the, um -- in the *Miller* case the Court went

7    off -- in fact, its holding was based on the alternative

8    provision.  There is language in there discussing "high

9    seas" and citing to *Murray* Fifth Circuit decision, which we

10    suggest should not be followed.  But, uh, the holding of the

11    case actually goes off on the statutory interpretation issue

12    of a different statute and relies on the subsection of other

13    waters within the admiralty and maritime jurisdiction.  It

14    does not include the exclusion that we have here.

01:49    15        This becomes, um, clear when -- when the Court

16    then goes on after holding that, under that other provision,

17    jurisdiction here is clearly proper, even if it was -- is

18    within California's jurisdiction 'cause the statute doesn't

19    exclude that.  So as a matter of statutory interpretation it

20    was not a problem.  But it also then goes on to address the

21    Article III issue and finds that, um -- finds that, uh,

22    jurisdiction -- it finds jurisdiction under Article III.

01:49    23        What that tells us is the Court specifically did

24    not rule on "high seas" ground because there's no -- there's

25    no constitutional issue if it's high seas.  "High seas" is

|  |  |  |
|---|---|---|
|  | 1 | an Article -- how to regulate in -- in -- police power on |
|  | 2 | the high seas is Article I authority explicit. |
| 01:50 | 3 | Here the Court held that the authority for the -- |
|  | 4 | the statute in this instance, the criminal prosecution in |
|  | 5 | this instance, was Article III authority, which is based on |
|  | 6 | judicial authority over admiral -- over cases arising within |
|  | 7 | the admiralty and maritime jurisdiction. |
| 01:50 | 8 | THE COURT: All right. Thank you. |
| 01:50 | 9 | Now, with AEDPA -- you point out, from my memory, |
|  | 10 | in my footnote how expansive AEDPA was. |
| 01:50 | 11 | MR. WILKE: Yeah. |
| 01:50 | 12 | THE COURT: And in reading your papers, it |
|  | 13 | appeared to the court that you -- you took umbrage, which is |
|  | 14 | understandable with the depth and breadth of AEDPA. But |
|  | 15 | it -- a very strong argument is that Congress has |
|  | 16 | increasingly, and apparently from the government's |
|  | 17 | standpoint, intended concurrent jurisdiction; that, with the |
|  | 18 | sophistication, specially of the narcotics trafficking, that |
|  | 19 | this isn't exclusive any longer with a "3-mile" for the |
|  | 20 | state and a "3-to-12-mile" for the federal government; that |
|  | 21 | Congress is starting to recognize, apparently from the |
|  | 22 | government's argument, that this is concurrent. |
| 01:51 | 23 | So my question is -- and I'm not too concerned |
|  | 24 | about the Coast Guard interpretation. I think we can set |
|  | 25 | that off to the side until I hear the government. |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 21 of 51    Page ID #:1032
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

21

01:51    1        How do you deal with a case called *Megic*

2   (phonetic)?

01:51    3        In the late 1990s there were a series of cases:

4   *Casaido* (phonetic), *Judah* (phonetic), and *Megic*. These are

5   not cases involving murder. They're narcotics cases. And

6   in those cases -- although they're not relevant to our fact

7   situation -- it did involve, in the *Megic* case Panga boats

8   within close proximity to the shore.

01:51    9        And there the trial -- or the Circuit basically

10   overturned and lectured the trial court that this was a jury

11   determination; that this was a court determination.

01:52   12        Also, if you look back, I think you'll find a case

13   from Judge Harry Pregerson overturning Tom Whelan down in

14   San Diego, cautioning the Court that -- with the same

15   admonition: That these are jury determinations.

01:52   16        And so, while you take for granted that this is to

17   be decided by the Court, I -- I'm not too certain about

18   that. I don't think that these necessarily are to be

19   decided by the Court, especially without having a factual

20   record. And I'm a little concerned that it's anticipatory

21   on both of your parts. So let me give a forewarning to the

22   government, for a moment, as well.

01:52   23        I don't know why this isn't a Rule 29 motion. I

24   have no facts before me in terms of where this alleged

25   homicide took place. And it would appear to me that, from

```
 1    the government's perspective, they've argued in two ways as
 2    well:  Judge, you really shouldn't decide this right now,
 3    but please give us an indication of what I would like to do
 4    along with the jury instruction.
 5         The reason for that is I think the government
 6    well-understands that, if they proceed forward, that, um,
 7    they have an adverse ruling from the Court at a Rule 29,
 8    that this is res judicata and this is going to be the end of
 9    their case.
10         So it's a high-risk ballgame.  So I'm kind of
11    curious.  When I turn to the government, on one hand your
12    argument is, Judge, this is premature, Rule 29, you don't
13    have the facts -- in front of me -- which I tentatively
14    agree with you.
15         But then there's kind of -- is what I call a
16    "zinger"; and that is, Judge, please decide what the
17    appropriate jury instruction is and indicate to the defense
18    what you're going to do.
19         My guess is you're caught in a box because, if I
20    rule against you, that's going to end your case at the
21    Rule 29 for lack of jurisdictional grounds.
22         The second thing is, there's a whole series of
23    cases that I remind each of you, uh -- in the narcotics
24    field.  And the courts have been chastened by the
25    district -- or by the Circuit Courts in not submitting these
```

01:53  (line 5)
01:53  (line 10)
01:53  (line 15)
01:53  (line 19)
01:54  (line 22)

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | questions to the jury.                                     |
| 01:54 | 2  | So, Mr. Wilke, I'll come back to you in just a            |
|       | 3  | moment.                                                    |
| 01:54 | 4  | Mr. Wiechert, your thoughts.                              |
| 01:54 | 5  | MR. WIECHERT:  Thank you, Your Honor.                     |
| 01:54 | 6  | I'll try not to be repetitive.                           |
| 01:54 | 7  | THE COURT:  Oh, take your time.                          |
| 01:54 | 8  | MR. WIECHERT:  All right.  Well, I'll still try          |
|       | 9  | not to be repetitive for everyone's sake.                |
| 01:54 | 10 | **DEFENSE ARGUMENT**                                       |
| 01:54 | 11 | MR. WIECHERT:  We start with the language "high          |
|       | 12 | seas."  And in any manner of statutory interpretation, you |
|       | 13 | begin with those words.  That noun, "seas," has an -- has a |
|       | 14 | meaning even more ancient than the 1800 Supreme Court cases |
|       | 15 | that we were reading or the English precedent that those  |
|       | 16 | cases were based on.                                      |
| 01:54 | 17 | The original seven seas included the North and           |
|       | 18 | South Atlantic, the North and South Pacific; and the      |
|       | 19 | Atlantic includes the Caribbean and the Gulf of Mexico, and |
|       | 20 | the Arctic Ocean.  Basically the seas, as understood at the |
|       | 21 | time that the Constitution was drafted, included all the  |
|       | 22 | contiguous waters that go around the coast of United States. |
| 01:55 | 23 | THE COURT:  If I was an "originalist," that would        |
|       | 24 | be very interesting.  But just assume Congress recognized, |
|       | 25 | when we got speed boats instead of sailboats --          |

01:55   1          MR. WIECHERT:  As well --

01:55   2          THE COURT:  -- that they weren't too worried any

3   longer about the state having sole and exclusive

4   jurisdiction up to 3 miles; that they recognized lots of

5   narcotics were coming in; and that they tried to change that

6   under AEDPA and 901.  And they started to recognize

7   different jurisdiction is important -- especially, the

8   narcotics dealer -- because you got high-speed boats,

9   et cetera, and they weren't going to leave that to some

10  podunk state in a rowboat to apprehend these narcotics

11  traffickers --

01:55   12         MR. WIECHERT:  And -- and --

01:55   13         *(Simultaneous speaking.)*

01:55   14         THE COURT:  -- Congress has been pushing for quite

15  a while, regardless of the original intent of the sailing

16  ships long ago in jurisprudence, to get this congruent

17  jurisdiction in both the state and feds pushing in.  And the

18  dis-marcation of 3 miles isn't very relevant.

01:56   19         MR. WIECHERT:  Right.

01:56   20         THE COURT:  I may be wrong so I toss that back to

21  you, Mr. Wiechert.

01:56   22         MR. WIECHERT:  So -- and I will address the

23  Court's speedboat, fast boat concerns in a couple of

24  minutes -- having watched basically every episode of

25  *Miami Vice*, starting in 1984.

01:56    1            So we start with "seas" and then we have an

2    adjective.  And the adjective is "high."  And the question

3    is, *Did Congress put that language in there as -- as*

4    *something substantive?*  Because as a matter of statutory

5    construction, you typically don't ignore words that are part

6    of the statute.

01:56    7            Not all portions of the seas qualify as the "high

8    seas"; otherwise, the term, in and of itself, is redundant.

9    You don't need to put in the term "high"; you just say the

10    seas.

01:57    11            THE COURT:  How do you --

01:57    12            MR. WIECHERT:  And --

01:57    13            THE COURT:  -- with the *Miller* case?

01:57    14            MR. WIECHERT:  I'm sorry?

01:57    15            THE COURT:  How do you deal with the *Miller* case?

01:57    16            MR. WIECHERT:  The *Miller* case, as Mr. Wilke

17    points out, is -- is one that's just -- is distinguishable

18    because it predated this statute that we're dealing with,

19    7(1), and doesn't include the language that we think is --

20    is determinative here, and the clause that's going to be

21    determinative.

01:57    22            If -- we're not dealing with the "high seas."

23    We're dealing with territorial waters that, even if they're

24    within the maritime or admiralty jurisdiction of the

25    United States, they're also within the undisputed

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | jurisdiction of the State of California.                     |
| 01:57 | 2  | THE COURT:  But --                                           |
| 01:57 | 3  | MR. WIECHERT:  And that was not --                           |
| 01:57 | 4  | *(Simultaneous speaking.)*                                   |
| 01:57 | 5  | THE COURT:  -- so there the Court is very                    |
|       | 6  | explicit.  And it gets back to the thought that this Court's |
|       | 7  | had; and that is the idea that there isn't merit in the      |
|       | 8  | argument because that old thought that the State of          |
|       | 9  | California has exclusive jurisdiction of crimes committed    |
|       | 10 | within its limits and that, in the federal criminal          |
|       | 11 | statutes, this phrase "high seas" seems to be construed by   |
|       | 12 | Congress to include only the unenclosed waters of the ocean  |
|       | 13 | extending outside the boundary of the state.  And that's     |
|       | 14 | been rejected.                                               |
| 01:58 | 15 | So it seems to me that California's authority over           |
|       | 16 | crimes, um, isn't defined in the way that you're arguing to  |
|       | 17 | the Court.  But I could certainly be wrong on that.          |
| 01:58 | 18 | MR. WILKE:  Could I say something?                           |
| 01:58 | 19 | THE COURT:  No.  I'm listening to Mr. Wiechert               |
|       | 20 | now.  Thank you.  I don't mean to be rude, but I don't       |
|       | 21 | appreciate one counsel jumping in to rescue the other.  This |
|       | 22 | is Mr. Wiechert's argument.  And I've indicated to you,      |
|       | 23 | Mr. Wilke, you'll have plenty of time.  I promise you.       |
| 01:58 | 24 | I'll be courteous to --                                      |
| 01:58 | 25 | MR. WIECHERT:  No problem, Your Honor.                       |

Certified for the U.S. District Court CM/ECF
Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 27 of 51    Page ID #:1038
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

27

01:58    1          *(Simultaneous speaking.)*

01:58    2              THE COURT:  No.  You're not going to intercede in

         3    this now.

01:58    4              Mr. Wilke -- or --

01:58    5              MR. WIECHERT:  So anyway, we shouldn't be

         6    interpreting the statute without taking the words out of the

         7    statute.  In this case, the word "high" out of the statute.

01:59    8              We've just undergone two recent Presidential

         9    impeachments that have focused on a phrase that now, pretty

        10    much most of the population knows, which is "high crimes and

        11    misdemeanors."  And the constitutional scholars that have

        12    tried to interpret that phrase have done it in various ways,

        13    but none of them say we need to disregard the word "high."

01:59   14              Some of them say we should use "high" in terms of

        15    the nature of the official involved; others say "high" means

        16    seriousness of the offense.  But in either case, and however

        17    the interpretation is, nobody says because the word "high"

        18    is included in "high crimes and misdemeanors" that we should

        19    totally disregard it.

01:59   20              THE COURT:  And, Mr. Wiechert, why am I to decide

        21    this now?  Why, in your opinion -- I have no factual record

        22    concerning where this alleged homicide took place.

02:00   23              This does appear to me to be a Rule -- I'm going

        24    to listen to the arguments today.  But, tentatively, coming

        25    in, I almost thought about short-circuiting this.  And I

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 28 of 51    Page ID
#:1039
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

28

1    don't wanna do that; it's a good preview for me.  But I

2    think this is a Rule 29.

02:00    3              MR. WIECHERT:  So the Courts have -- and -- and

4    the Court has cited situations where the Ninth Circuit has

5    said, *District Court Judge, you shoulda let this go to the*

6    *jury.  This is the situation where the jury has to make*

7    *those facts.  We don't have a motion to dismiss.  Let the*

8    *government put on its case.*

02:00    9              And I -- I -- I understand where the Court is

10    coming from.  And what I don't understand, kind of, is where

11    the government is coming from.  Because --

02:00    12             THE COURT:  Well, here's their concern.  They

13    won't say it.  But, you know, if I rule against them,

14    jeopardy's attached.  They --

02:00    15             MR. WIECHERT:  Right.

02:00    16             THE COURT:  -- get to a Rule 29, and that's why

17    with -- why -- that's why -- the government's excellent

18    counsel.  And what they said was, *Judge, we don't think you*

19    *should decide this now, but please give us an indication* --

20    which I'm not going to do because, if I do decide it's a

21    Rule 29, we haven't had a fair discussion over what that

22    instruction should look like, and I don't have a good

23    factual basis to make that decision.

02:01    24             So with no chiding of the government:  It's two

25    ends against the middle; and that is, *Judge, don't decide it*

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 29 of 51    Page ID
#:1040
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

29

1   *now, but please give us an indication, because if we proceed*

2   *down this road and you rule against us on Rule 29, and you*

3   *find at that time that we don't have jurisdiction,*

4   *jeopardy's attached.*  You're done.

02:01   5   Now the government makes a great argument also and

6   that is, *Look, Judge, this would be ridiculous.  First of*

7   *all, how do we know its 2.9 miles or 3.1?  And if you took*

8   *the defense position, without a factual basis, you know, how*

9   *would we ever -- if we ever got close to the 3-mile*

10   *marker -- ever get a determination?*

02:01   11   And that's why the *Miller* case isn't dispositive,

12   but it does seem that Congress is trying to wiggle out of

13   this old sailing ship box of "3 miles," and then later on

14   "3 miles to 12 miles" with the narcotics trade and the fast

15   boats, *et cetera*, Panga boats.

02:02   16   They -- they got involved, I think, in -- in an

17   area where they started to recognize that the feds had to

18   come in with their sophisticated equipment because a lot of

19   these cases, including Florida in the early years, just

20   didn't have the "state" ability to keep up with the

21   sophistication of the narcotics trade.  So Congress, for a

22   long time, from the government's perspective -- whether it's

23   AEDPA or 901 -- has been attempting to say, *You know what?*

24   *This is a joint jurisdictional problem, even within this*

25   *3 mile limit.  And we're not gonna worry too much about*

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 30 of 51   Page ID #:1041
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

30

1    *this -- that, because of the speed of these boats traveling*

2    *in and out at high rates.* And the states just didn't have

3    the capability...

02:02   4         Now, Congress may have the right to do that. I

5    haven't decided those issues yet, but I'm --

02:02   6         MR. WIECHERT: Yeah.

02:02   7         THE COURT: I know, I talked to the government.

8    I'm not -- it's not gonna be two ends against the middle.

9    It's going to be, I either have the ability to make the

10   decision now -- but I'm not gonna go through jury

11   instructions and give them an indication now. There's no

12   record for that. You haven't had a fighting chance to talk

13   about these instructions.

02:03   14        Now, I'm sorry, Mr. Wiechert. Please.

02:03   15        MR. WIECHERT: That's all right, Your Honor.

02:03   16        And so I -- I'm -- I'm gonna segue my *Miami Vice*

17   days and kinda cover the whole notion of expanding the scope

18   of -- of the enforcement efforts that the government can

19   take.

02:03   20        The government doesn't use -- doesn't need

21   admiralty or maritime jurisdiction to interdict drugs coming

22   into the United States. They do not base their -- their

23   (A), um -- their Title 21 statutes on -- on that type of

24   jurisdiction.

02:03   25             Title 21 statutes are based on the commerce

Certified for the U.S. District Court CM/ECF
Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | clause.  And if someone is bringing in dope into the         |
|       | 2  | United States, it doesn't matter whether or not that dope is |
|       | 3  | interdicted on the beach or that dope is interdicted 3 miles  |
|       | 4  | out or that dope is inter- -- or 10 miles out.  They still   |
|       | 5  | have statutes -- narcotic statutes that are going to apply   |
|       | 6  | that are solely apart from whether or not there's a juris-   |
|       | 7  | (audio interference) basis.                                  |
| 02:04 | 8  | What they're trying to do here is basically create           |
|       | 9  | a federal crime of murder.  And there is no federal crime of |
|       | 10 | murder, unless it's connected with something.  And it can be |
|       | 11 | connected with a narcotics transaction.                      |
| 02:04 | 12 | THE COURT:  Just a moment.                                    |
| 02:04 | 13 | What happens if the hom- -- if this is a homicide            |
|       | 14 | and it occurred 3.1 miles?                                    |
| 02:04 | 15 | MR. WIECHERT:  If this is a homicide that                     |
|       | 16 | occurs --                                                     |
| 02:04 | 17 | *(Simultaneous speaking.)*                                    |
| 02:04 | 18 | THE COURT:  -- offshore, yeah.                                |
| 02:04 | 19 | MR. WIECHERT:  If this is a homicide that occurs              |
|       | 20 | 3.1 miles outside and it's within the territorial            |
|       | 21 | jurisdiction of the United States, it's -- it's              |
|       | 22 | prosecutable.  Our position --                               |
| 02:04 | 23 | *(Simultaneous speaking.)*                                    |
| 02:04 | 24 | THE COURT:  Where's my factual basis to decide               |
|       | 25 | that right now?  Because this seems anticipatory.            |

02:04    1                MR. WIECHERT:  So that --

02:04    2                THE COURT:  There's no stip --

02:04    3                MR. WIECHERT:  That -- that --

02:04    4                THE COURT:  Okay.  We'll --

02:04    5         *(Simultaneous speaking.)*

02:04    6         *(Court reporter requests clarification for the*

         7         *record.)*

02:04    8                THE COURT:  Okay.

02:04    9                MR. WIECHERT:  That is an excellent question.  And

        10    I'm not trying to, you know, to -- to -- to curry favor with

        11    you, but that's an excellent question.

02:05   12                So I try'a put myself in Mr. Scally and

        13    Mr. Mittal's shoes.  Because I would be very fearful of the

        14    scenario the Court has posed, which is the Court decides

        15    that it's up to 3 miles, and they get before the jury and

        16    they can't show that the crime occurred with -- outside that

        17    three mile -- that three-mile area, and then there's a

        18    Rule 29 motion and double jeopardy sets in, and case's over

        19    for good, forever.

02:05   20                And so if I'm them, I say, *I will stipulate for*

        21    *purposes of this hearing that we cannot show where that*

        22    *murder occurred.*  Because based on the discovery, they can't

        23    show where that murder occurred.

02:05   24                They know where the -- the "victim" -- and I use

        25    that term now, but later on we'll have a motion as to

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 33 of 51    Page ID
#:1044
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

33

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | whether or not it's the proper term.  They know the victim                    |
|       | 2  | got on a boat in Dana Point Harbor at a certain time on the                   |
|       | 3  | morning October 15th, left the harbor; and then, when the                    |
|       | 4  | boat came back, he wasn't on the boat.  And a number of                      |
|       | 5  | hours later the body is found in the ocean off the coast of                  |
|       | 6  | California.                                                                   |
| 02:06 | 7  | THE COURT:  Now, just a moment, Mr. Wiechert.                                 |
| 02:06 | 8  | And that's part of Mr. Scally's argument.  When he                           |
|       | 9  | comes -- when you look at his papers, he's saying that's an                   |
|       | 10 | impossible situation, just from a practical viewpoint, for                   |
|       | 11 | the government; and it -- that is, because if the homicide                    |
|       | 12 | occurs, let's say, with -- 2.9 miles out *(audio*                            |
|       | 13 | *interference)* successful prosecution by the state or the                   |
|       | 14 | federal government under that fact situation.                                 |
| 02:07 | 15 | MR. WIECHERT:  Uh, so there are situations --                                 |
| 02:07 | 16 | THE COURT:  And so, therefore, that jurisdictional                           |
|       | 17 | issue, where we don't have a clear record or even a                          |
|       | 18 | stipulation, leads to impossibility.  And I can't imagine                     |
|       | 19 | that Congress ever intended -- and I think they're trying to                  |
|       | 20 | get out of a box, quite frankly, with AEDPA and 901 -- and I                  |
|       | 21 | think that the more modern jurisprudence seems to lend                        |
|       | 22 | itself to the feds recognizing that there has to be some                      |
|       | 23 | concurrency in that 3-mile area that historically, you                        |
|       | 24 | argue, belongs to the states.                                                |
| 02:07 | 25 | You're arguing either/or:  It has to be three                                |

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 34 of 51   Page ID #:1045
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

34

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | miles, state; three miles out, feds.                         |
| 02:07  | 2  |         I don't know that.  And I'm probably not gonna        |
|        | 3  | decide that.  But you're right:  The government's taking a    |
|        | 4  | chance.  If I decide against them on a Rule 29, jeopardy's    |
|        | 5  | attached.  They're done.                                     |
| 02:08  | 6  |         MR. WIECHERT:  And -- and the argument that           |
|        | 7  | because it's uncertain under these circumstances which        |
|        | 8  | jurisdiction you're in, that -- that dilemma was created by   |
|        | 9  | Congress.  Congress put in the lang- --                      |
| 02:08  | 10 |     *(Simultaneous speaking.)*                                |
| 02:08  | 11 |         THE COURT:  -- determination.  Judge Pregerson        |
|        | 12 | warns us about that in *Mejic* (phonetic), for goodness sakes,|
|        | 13 | uh -- who was the Court?  Judge Lynch handed down a ruling    |
|        | 14 | from the Northern District.  But the senior judge was Skopil  |
|        | 15 | at the time, who wrote the opinion, reversed and remanded.    |
|        | 16 | And it was clear in so much of our jurisprudence that this    |
|        | 17 | was supposed to be a jury determination.  I'm supposed to     |
|        | 18 | instruct appropriately if we get there.                       |
| 02:08  | 19 |         MR. WIECHERT:  It -- your Honor, if you asked the     |
|        | 20 | government, *Can you prove where this murder took place?*     |
|        | 21 | Their honest answer's gonna be, *No, we can't.*  And -- and   |
|        | 22 | that is why they raised the argument that *(audio*            |
|        | 23 | *interference)* what jurisdiction is involved that -- that    |
|        | 24 | perhaps a murder takes place and the perpetrators are not     |
|        | 25 | being -- able to be --                                        |

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 35 of 51   Page ID #:1046
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

35

02:09   1          THE COURT:  So -- so --

02:09   2          *(Simultaneous speaking.)*

02:09   3          THE COURT:  So does that mean, if this murder

        4    occurs four miles out at sea, and the government's not quite

        5    certain of that, it shouldn't bring the prosecution?

        6    Because, you're right, nobody's ever gonna quite know

        7    whether it -- maybe it's 2.8 or 3.2 miles.

02:09   8          MR. WIECHERT:  And in this circumstances, you

        9    don't?  And if --

02:09  10          THE COURT:  Well, then --

02:09  11          *(Simultaneous speaking.)*

02:09  12          THE COURT:  -- only the state with that argument

       13    could bring this prosecution.  The government would have to

       14    walk away.  And if they're wrong, then the person who's

       15    committed the homicide, in a sense, because of this

       16    jurisdictional issue, is never prosecuted because the

       17    state -- if this was in front of a state judge right now,

       18    you can imagine the consternation because that state judge

       19    might be looking at your argument of 3 miles and saying, *Oh,*

       20    *gee, if it's 3.2, do you mean I don't have jurisdiction?*

02:09  21          MR. WIECHERT:  So I don't believe that the

       22    government can test [sic] -- or it is even contestable that

       23    an element of this offense is where this crime took place.

       24    And that needs to be proven beyond a reasonable doubt.

02:10  25          THE COURT:  And why --

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

36

| | | |
|---|---|---|
| 02:10 | 1 | MR. WIECHERT:  It's -- it's -- |
| 02:10 | 2 | *(Simultaneous speaking.)* |
| 02:10 | 3 | *(Court reporter requests clarification for the* |
| | 4 | *record.)* |
| 02:10 | 5 | THE COURT:  Why isn't that a jury determination, |
| | 6 | as Judge Pregerson said, as Judge Skopil said.  The courts |
| | 7 | are constantly -- in fact, we get reversed by not submitting |
| | 8 | it to a jury. |
| 02:10 | 9 | MR. WIECHERT:  Yes.  And -- and -- and so, again, |
| | 10 | going back to where the government is, I would think that |
| | 11 | when the Court -- if the Court adopts the position that the |
| | 12 | defense is right here, and that the "high seas" commence at |
| | 13 | least three miles, if not twelve miles, out, um, and that if |
| | 14 | the crime occurred within the first three miles off the |
| | 15 | shore, the government has -- has no jurisdiction to |
| | 16 | prosecute that crime; that, if that's the Court's decision, |
| | 17 | that the government would want to take that up and have a |
| | 18 | higher court rule on whether or not that is the right |
| | 19 | decision before the case went to the jury on that |
| | 20 | instruction and never gets to the Ninth Circuit. |
| 02:11 | 21 | THE COURT:  I -- |
| 02:11 | 22 | MR. WIECHERT:  -- because the -- |
| 02:11 | 23 | THE COURT:  -- I am anticipating that this is |
| | 24 | premature on both the government's part and your part. |
| 02:11 | 25 | All right.  I'm going to turn to the government. |

|       | 1  | Mr. Wiechert, I promise you I'll be back to you. |
| 02:11 | 2  | MR. WIECHERT:  Thank you. |
| 02:11 | 3  | THE COURT:  Mr. Scally. |
| 02:11 | 4  | MR. SCALLY:  Yes, Your Honor.  Thank you. |
| 02:11 | 5  | **GOVERNMENT'S ARGUMENT** |
| 02:11 | 6  | MR. SCALLY:  On that specific issue, the |
|       | 7  | government's position is that the rubric under which to |
|       | 8  | analysis -- an- -- analyze this issue at this point isn't |
|       | 9  | Rule 12(b), but that we're at the first part of the |
|       | 10 | bifurcated inquiry that the Ninth Circuit lays out in the |
|       | 11 | *Smith* case cited on page 5 of the government's, um, |
|       | 12 | opposition. |
| 02:11 | 13 | So in these cases where federal jurisdiction is an |
|       | 14 | element of the crime, the Ninth Circuit has said the |
|       | 15 | appropriate, uh -- the jurisdictional element requires a |
|       | 16 | bifurcated inquiry. |
| 02:12 | 17 | The first part of that inquiry is whether the |
|       | 18 | United States -- |
| 02:12 | 19 | THE COURT:  I don't have any evidence of that. |
|       | 20 | That's what I keep pointing to, Mr. Scally.  I have no idea |
|       | 21 | from this record, no testimony.  And so I'm very concerned |
|       | 22 | that I would be making a ruling at this point, quite |
|       | 23 | frankly. |
| 02:12 | 24 | MR. SCALLY:  Well, let me -- so the two -- it's |
|       | 25 | the second part of that bifurcated inquiry that you don't |

| | | |
|---|---|---|
| | 1 | have any evidence of, Your Honor.  And that -- because |
| | 2 | that's an issue for the trier of fact.  So the -- the first |
| | 3 | part of the bifurcated inquiry is whether the United States |
| | 4 | exercises jurisdiction over the area where the murder is |
| | 5 | alleged to've occurred.  And here, you can tell from our |
| | 6 | proposed jury instruction, we're alleging that it occurred |
| | 7 | within -- within 12 miles of shore.  And so -- |
| 02:13 | 8 | THE COURT:  How do you know that? |
| 02:13 | 9 | MR. SCALLY:  We have -- |
| 02:13 | 10 | THE COURT:  In other words, the same issue that we |
| | 11 | have over the "3-to-12-mile" or the "0-to-3-mile" -- we have |
| | 12 | 12 miles.  Now, as a practical matter, it may not make a |
| | 13 | difference at -- over 12 miles. |
| 02:13 | 14 | But how do you know? |
| 02:13 | 15 | MR. SCALLY:  We have -- we have phone location |
| | 16 | data, Your Honor, that -- that puts, uh -- puts the phones |
| | 17 | used by the individuals involved in this case, uh, at |
| | 18 | approximately 3 miles from shore. |
| 02:13 | 19 | THE COURT:  Okay.  Now, hold on. |
| 02:13 | 20 | This is the first time I've heard that.  In other |
| | 21 | words, nowhere in any of the papers was that clear to the |
| | 22 | Court until you just made that statement. |
| 02:13 | 23 | So the problem becomes:  It could be 2.8, |
| | 24 | hypothetically, 3.2 -- you've got a general range out |
| | 25 | there -- |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

39

| | | |
|---|---|---|
| 02:14 | 1 | MR. SCALLY:  Right. |
| 02:14 | 2 | THE COURT:  -- jury determination. |
| 02:14 | 3 | MR. SCALLY:  Right.  Your Honor, the -- the |
| | 4 | portion of where -- whether the offense took place within a |
| | 5 | location that the Court has determined, uh, the |
| | 6 | United State -- States exercises jurisdiction, that is the |
| | 7 | second part of the bifurcated inquiry; that is the jury |
| | 8 | determination. |
| 02:14 | 9 | Whether it occurred -- but -- but, um, basically |
| | 10 | what the Court says in *Smith*, is whether the United States |
| | 11 | exercises jurisdiction over the area where the murder is |
| | 12 | alleged to've occurred -- this is quoting the case: |
| 02:14 | 13 | "-- can and should be decided by the |
| | 14 | trial court as a preliminary question of |
| | 15 | law." |
| 02:14 | 16 | THE COURT:  Now turn to page 3.  (Reading:) |
| 02:14 | 17 | "Should be denied because it cannot be |
| | 18 | decided without a trial on the merits." |
| 02:14 | 19 | It's (12)(b).  You start off with that heading on |
| | 20 | page 3.  And I'm going to read to you: |
| 02:14 | 21 | "However, such a motion is premature. |
| | 22 | Rule 29 would be the proper vehicle, |
| | 23 | *et cetera*." |
| 02:15 | 24 | MR. SCALLY:  Well -- |
| 02:15 | 25 | *(Simultaneous speaking.)* |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 40 of 51    Page ID #:1051
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

40

02:15    1          THE COURT:  What you really want me -- is -- is to

2    give you a tip and not put you in the position of getting

3    caught in jeopardy, if I rule against you.  I think this is

4    proper Rule 29.  I think this is premature.

02:15    5          MR. SCALLY:  Your Honor, we could've been clearer

6    in our papers.  I grant that.

02:15    7          THE COURT:  You were very clear.  You're

8    excellent.  You were absolutely clear.  I just read to you.

9    That's how clear you were.

02:15    10          MR. SCALLY:  Well --

02:15    11          THE COURT:  Read again how clear you were?

02:15    12           "However, such a motion is premature.

13           Rule 12(b) is for a motion that can be

14           decided without trial on the merits.

15           Rule 29 would be the proper vehicle for

16           defendants' motion because the jury will

17           have to hear evidence about where the

18           murder took place and determine the

19           location.  The (12)(b) motion should be

20           denied because it not -- can be --

21           cannot be decided," *et cetera*.

02:15    22          And then you go on with, *Judge, give us a tip*

23    *because -- please decide it.  And not only that, tell the*

24    *defense what the jury instruction's going to be at this*

25    *time.*

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

41

02:15    1        Now, I'm not chiding you for that.  But I'm saying

      2   we haven't even discussed the jury instruction with the

      3   defense.

02:16    4        MR. SCALLY:  Your -- Your Honor, I think that -- I

      5   think that that bifurcated inquiry is something that can be

      6   done and is consistent with the position the government

      7   took -- that we took in -- in the papers, which is, um,

      8   that, at this point, a -- a, uh -- a ruling by this Court as

      9   a preliminary question of law on the issue of whether the

     10   United States exercises jurisdiction over that 12-mile band,

     11   that -- that is -- is a ruling that this Court can make.

02:16   12        THE COURT:  I can.  I don't have to, Counsel.

     13   It's discretionary.  I want that very clear.  And I'm about

     14   to use my discretion.  Can you guess what that might be?

02:16   15        MR. SCALLY:  You're not going to issue that

     16   ruling, Your Honor.

02:16   17        THE COURT:  Amazingly how smart you are.

02:16   18        I'm going to let each of you anticipate that at a

     19   Rule 29.  And you can let jeopardy attach, and the jury can

     20   decide this.  And I'll get further jurisprudence.

02:17   21        Now I want to be polite to Mr. Wilke in a moment,

     22   and I want you to finish your argument and be polite; but

     23   tentatively, I think that this is anticipatory.  I don't

     24   have enough facts in front of me and I think I'm just going

     25   to let each of you put yourself in that position of, uh --

| | |
|---|---|
| | 1 |
| 02:17 | 2 |
| | 3 |
| | 4 |
| | 5 |
| 02:17 | 6 |
| 02:17 | 7 |
| 02:17 | 8 |
| | 9 |
| | 10 |
| | 11 |
| | 12 |
| 02:17 | 13 |
| 02:17 | 14 |
| | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| | 20 |
| 02:18 | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |

1    of deciding 'cause you, at least, have the evidence.

2         And up until your statement, Mr. Scally, I had no

3    idea where this occurred.  I didn't know if it was

4    eight miles.  I didn't know you even had a vector on this,

5    frankly, so --

6         MR. SCALLY:  Well --

7         *(Simultaneous speaking.)*

8         THE COURT:  -- so you're satisfied.  Then I want

9    to be courteous to Mr. Wilke so he's got a record.  And then

10   you can both anticipate that the Court's not gonna make a

11   ruling.  I'm probably gonna deny the 12(b) without getting

12   to the merits and leaving this for Rule 29.

13        Counsel, Mr. Scally.

14        MR. SCALLY:  Well, Your Honor, I guess the

15   reason -- the reason, uh, we didn't provide the factual

16   information in the papers, um, was because we were -- I

17   wasn't clear that the Court would even need that information

18   to make that legal ruling, the legal determination as to

19   whether the special maritime and territorial jurisdiction of

20   the United States includes that 12-mile band off the coast.

21        Um, I think that is appropriately reserved to the

22   trier of fact, um, and so -- so, you know.  And -- and it

23   may have been that we should've responded to the motion to

24   dismiss with an affirmative motion of our own requesting

25   that legal ruling.  Um, because I think that's what we would

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 43 of 51   Page ID #:1054
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

43

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | typically do had -- had this motion not come in from, uh, |
|       | 2  | Mr. Wilke and Mr. Wiechert.  In anticipation of trial, we |
|       | 3  | would -- we would be bringing that affirmative motion     |
|       | 4  | requesting that legal ruling ahead of trial.              |
| 02:18 | 5  | THE COURT:  And I would still have discretion,            |
|       | 6  | wouldn't I, Mr. Scally?                                    |
| 02:18 | 7  | MR. SCALLY:  Oh, absolutely, Your Honor.  I mean,         |
|       | 8  | certainly it's a timing -- timing issue and that sorta    |
|       | 9  | thing.  Absolutely.                                        |
| 02:19 | 10 | THE COURT:  And a cautious court would want a much        |
|       | 11 | better record.                                            |
| 02:19 | 12 | MR. SCALLY:  I'm sorry, Your Honor?                       |
| 02:19 | 13 | THE COURT:  A cautious Court would want a much            |
|       | 14 | better record.  And I also would heed the number of times |
|       | 15 | that my colleagues have been overturned by not submitting |
|       | 16 | this to a jury.                                            |
| 02:19 | 17 | MR. SCALLY:  Well, Your Honor, respectfully,             |
|       | 18 | the -- the portion --                                     |
| 02:19 | 19 | THE COURT:  "Respectfully" doesn't mean respect at       |
|       | 20 | all, so don't use that term.                              |
| 02:19 | 21 | MR. SCALLY:  Understood, Your Honor.                     |
| 02:19 | 22 | THE COURT:  Okay.                                         |
| 02:19 | 23 | MR. SCALLY:  The, um -- the portion that needs to        |
|       | 24 | be, um, submitted to the jury is that second part of the  |
|       | 25 | bifurcated inquiry.  It's the -- whether, uh -- whether the|

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

44

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | murder took place within that location that the Court has        |
|       | 2  | already determined is subject -- is part of the special          |
|       | 3  | maritime and territorial jurisdiction of the United States.      |
| 02:19 | 4  | So, um, I don't think the Court needs, um -- and I               |
|       | 5  | could be mistaken, but I don't think the Court does -- does       |
|       | 6  | need a particular, uh -- a significant factual record to         |
|       | 7  | make the legal determination considering, uh -- determining      |
|       | 8  | whether the United States exercises jurisdiction over a          |
|       | 9  | particular area.  And that would be -- and I understand the      |
|       | 10 | Court's not gonna make that ruling -- but that would be the,     |
|       | 11 | um, the portion -- that first part'a the bifurcated inquiry      |
|       | 12 | that we would be -- we would be -- uh, I -- I'm submitting,      |
|       | 13 | um...                                                             |
| 02:20 | 14 | THE COURT:  Thank you very much, Mr. Scally.                     |
| 02:20 | 15 | Mr. Wilke, this will be brief now.                               |
| 02:20 | 16 | MR. WILKE:  I wanted to respond to a few of the                 |
|       | 17 | Courts --                                                         |
| 02:20 | 18 | THE COURT:  This will be brief.                                  |
| 02:20 | 19 | **DEFENSE RESPONSE**                                              |
| 02:20 | 20 | MR. WILKE:  The Court's notation of the narcotics               |
|       | 21 | cases (inaudible) --                                              |
| 02:20 | 22 | *(Court reporter requests clarification for the*                 |
|       | 23 | *record.)*                                                        |
| 02:20 | 24 | MR. WILKE:  Thank you. I'll speak up.                            |
| 02:20 | 25 | The Court's reliance or suggestion that the                     |

1    narcotics case on the Panga boat cases, which held that this
2    was a jury determination, uh, I would note that, again, the
3    7(1) issue is not before the Court.  There, 7(1) -- um,
4    Congress doesn't rely on 7(1) jurisdiction for, uh,
5    narcotics cases, so I think those are very different.

02:21    6        On the issue of, um, whether this is a pretrial
7    issue or an issue for trial, Your Honor, the purpose -- as
8    the Court is aware, the purpose of an Indictment is to
9    afford the defendant fair notice of what he must defend
10    against.  The problem we have here at this stage is we don't
11    know whether the government has to prove that it happened
12    within three miles from shore.

02:21    13        We, of course, think we're right about the law --
14    and they should -- but without a pretrial ruling on this
15    issue, we're basically denied our right to notice on that
16    issue.  So, uh, that that is -- to me, that is the issue
17    here and why it is ripe for a pretrial ruling.

02:21    18        The Court need -- need not -- we're not asking the
19    Court to decide whether the government can prove it happened
20    within three miles from shore, only that the government --
21    we're asking the Court to rule that the government must
22    prove that it happened outside of three miles from shore.

02:22    23        And under the current language of the First
24    Superseding Indictment, it doesn't compel that.  The
25    language is too broad in that it would encompass oceans

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 46 of 51    Page ID
#:1057
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

46

1    waters within 3 miles from shore.  And the breadth of the

2    language in the Indictment is -- is what renders the

3    Indictment deficient and why the Court has a basis to

4    dismiss the Indictment at this stage.

02:22    5        The -- finally, the one last point I would make,

6    Your Honor:  There's been the suggestion that the defense

7    interpretation of the statute would put the government in

8    this impossible situation because there would be

9    drying [sic] lines:  A line a three miles.  And maybe if it

10   happened at 2.9 or 3.1., the government might not ever be

11   able to prove this.  But it -- that -- that argument applies

12   no matter how the Court interprets the statute.

02:23    13       Under the government's own interpretation, they

14   are saying that -- that the federal jurisdiction begins at

15   the low tide mark.  The low tide mark, it varies along the

16   coast.  You're gonna have this very nebulous boundary,

17   whether it's there or whether it's at three miles offshore.

02:23    18       The government faces the same types of juris- --

19   of evidentiary issues in any jurisdictional issue.  If

20   somebody goes in, commits a crime right at the border of

21   California and Arizona, you have the same situation.

02:23    22       We had this situation just recently before the

23   Supreme Court, where the Supreme Court invalidated a whole

24   series of state convictions out of Oklahoma after

25   determining that those were actually committed on, um,

```
          1    federal Indian land.
02:23     2          So the government always has to prove
          3    jurisdiction, Your Honor.  The fact that they may have
          4    difficulty proving it within certain situations isn't --
          5    isn't a basis to say they don't have to prove it.
02:24     6          The government has -- is very creative in the ways
          7    it can collect evidence.  It has a lotta power to collect
          8    evidence.  Uh -- and, uh, so I don't think it is really fair
          9    or proper for the Court to use the fact that the -- that
         10    this might be a difficult issue for the government to prove
         11    in weighing its legal analysis.
02:24    12          I'd submit, Your Honor.
02:24    13          THE COURT:  All right.  Thank you.
02:24    14          Mr. Wiechert.
02:24    15          MR. WIECHERT:  Very briefly, Your Honor.
02:24    16                    DEFENSE RESPONSE
02:24    17          MR. WIECHERT:  I understand the 12 -- 12.1 cases,
         18    like, District Courts get reversed.  I believe this is a
         19    situation where the government would concede that it cannot
         20    prove beyond a reasonable doubt that, um, they -- murder did
         21    not take place outside three miles.  Given that, we can go
         22    and take the next step, which is, if the government can't
         23    prove that and if the Court's view of the Statute 7.1 [sic]
         24    is the same as ours, um, there is no federal case.  The
         25    Court makes that ruling, it dismisses the Indictment, and it
```

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

48

| | | |
|---|---|---|
| | 1 | goes up before the Ninth Circuit, before jeopardy attaches, |
| | 2 | and the Ninth Circuit says whether we're right or wrong. |
| 02:25 | 3 | But I don't think there's a dispute here over the |
| | 4 | facts. And the facts are that the government cannot prove |
| | 5 | beyond a reasonable doubt that this murder took place |
| | 6 | outside three miles. |
| 02:25 | 7 | THE COURT: Mr. Scally, are you prepared to |
| | 8 | stipulate that the murder did not take place outside three |
| | 9 | miles? |
| 02:25 | 10 | MR. SCALLY: No, Your Honor. The facts that we |
| | 11 | have don't allow me to make that stipulation at this time. |
| 02:25 | 12 | THE COURT: My guess is you're gonna have some |
| | 13 | proximate range, from what I'm hearing from you, but I -- I |
| | 14 | don't even have a good record of that. And it's gonna |
| | 15 | probably be a jury determination, if we get that far. |
| 02:25 | 16 | Well, Mr. Scally, anything you'd like to add? |
| 02:25 | 17 | MR. SCALLY: Nothing further, Your Honor. |
| 02:25 | 18 | Thank you. |
| 02:25 | 19 | THE COURT: Well, first of all, I'm going to deny |
| | 20 | the Rule 12(b) but not on the merits at this time. This is |
| | 21 | going to be reserved for a Rule 29, which is the appropriate |
| | 22 | time for the Court to hear this, along with any appropriate |
| | 23 | jurisdictions. Also, the Court will then have a much better |
| | 24 | factual record and will be able to determine, after hearing |
| | 25 | evidence, whether, in fact, this is a -- "close to |

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | three-mile," outside, inside -- the Court hasn't even heard         |
|       | 2  | that evidence and wasn't even aware of this until today.            |
| 02:26 | 3  | I look forward to making that decision, though,                     |
|       | 4  | and will happy to render this on the merits at the Rule 29          |
|       | 5  | and make the same decision you're calling upon me to make           |
|       | 6  | today, which I decline to do. It's anticipatory and                 |
|       | 7  | premature.                                                          |
| 02:26 | 8  | So the government now places yourself in jeopardy                   |
|       | 9  | once you begin and, if the ruling goes against you, that            |
|       | 10 | will be dispositive, and the defense is left not quite              |
|       | 11 | knowing. But, once again, I reiterate: This is                      |
|       | 12 | anticipatory, premature -- appreciated for the forewarning          |
|       | 13 | to the Court -- but this will be decided in Rule 29.                |
| 02:27 | 14 | Anything further, Counsel?                                          |
| 02:27 | 15 | MR. WILKE: One point I would like to make is, I                     |
|       | 16 | just wanna make sure I reserve for the record my                    |
|       | 17 | constitutional objection to the government's position. I            |
|       | 18 | don't think it's right to bring it now because the Court            |
|       | 19 | hasn't ruled. But should the Court adopt the interpretation         |
|       | 20 | of the statute -- argued for [sic] the government -- at the         |
|       | 21 | Rule 29 level, at the jury instruction level, and -- and the        |
|       | 22 | defendants were convicted, we would preserve that issue by          |
|       | 23 | way of a post-trial motion.                                         |
| 02:27 | 24 | I just wanna -- I wanna make that record because I                  |
|       | 25 | don't think --                                                      |

| | | |
|---|---|---|
| 02:27 | 1 | THE COURT:  Of course. |
| 02:27 | 2 | *(Simultaneous speaking.)* |
| 02:27 | 3 | THE COURT:  -- it would be waived.  And, frankly, |
| | 4 | if I rule against you, Mr. Wilke, and if this goes to the |
| | 5 | jury, it would be a jury determination for them to make. |
| 02:27 | 6 | All right.  Thank you very much, Counsel. |
| 02:27 | 7 | MR. SCALLY:  Thank you, Your Honor. |
| 02:27 | 8 | MR. WILKE:  Thank you, Your Honor. |
| 02:27 | 9 | MR. WIECHERT:  Thank you, Your Honor. |
| 02:27 | 10 | *(Proceedings adjourned at 2:27 p.m.)* |
| 02:28 | 11 | -oOo- |
| 02:28 | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

51

```
02:28    1                          -oOo-

02:28    2

02:28    3                        CERTIFICATE

02:28    4

02:28    5        I hereby certify that pursuant to Section 753,

         6   Title 28, United States Code, the foregoing is a true and

         7   correct transcript of the stenographically reported audible

         8   proceedings held remotely via videoconference and/or

         9   telephone in the above-entitled matter and that the

        10   transcript page format is in conformance with the

        11   regulations of the Judicial Conference of the United States.

02:28   12

02:28   13   Date:  June 30, 2021

02:28   14

02:28   15
02:28                          /s/ Debbie Gale
02:28   16                   _____
02:28                        DEBBIE GALE, U.S. COURT REPORTER
02:28   17                   CSR NO. 9472, RPR, CCRR

02:28   18

        19

        20

        21

        22

        23

        24

        25
```