1  CRAIG WILKE (150728)
2  craig@craigwilkelaw.com
3  305 N. Harbor Blvd., Suite 216
   Fullerton, California 92832-1901
4  Telephone (714) 870-8900
   Facsimile  (714) 879-2278
5
6  Attorney for Defendant
   HOANG XUAN LE

7           UNITED STATES DISTRICT COURT
8           CENTRAL DISTRICT OF CALIFORNIA
9                 SOUTHERN DIVISION

10 | UNITED STATES OF AMERICA, | Case No. 8:20-CR-0002-DOC |
11 | | |
12 | Plaintiff, | **NOTICE OF MOTION; MOTION IN LIMINE TO EXCLUDE HEARSAY STATEMENTS OF SHEILA RITZE; MEMORANDUM OF POINTS AND AUTHORITIES** |
13 | v. | |
14 | HOANG XUAN LE, | |
15 | | |
16 | Defendant. | Hearing Date:  August 30, 2021<br>Hearing Time:  1:30 p.m. |
17

18 TO ASSISTANT UNITED STATES ATTORNEYS GREG SCALLY AND VIBHAV
19 MITTAL:
20      PLEASE TAKE NOTICE that on Monday, August 30, 2021, at 1:30 p.m., or as
21 soon thereafter as the matter may be heard in the Courtroom of the Honorable David O.
22 Carter, United States District Judge, defendant Hoang Xuan Le, by and through his
23 attorney of record Craig Wilke, will and hereby does move in limine to exclude hearsay
24 statements of Sheila Ritze that the government seeks to offer through the testimony of
25 Ritze's coworkers (identified by their initials EP, JT, IA and PL) and the testimony of
26 the step-mother of Ritze's former husband (identified by her initials SR). The
27 government contends that the statements are admissible under the hearsay exception for
28 statements of a declarant's then-existing statement of mind. Fed. R. Evid. 803(a).

This motion is brought on the grounds that (1) the statements are not statements of Ritze's then-existing state of mind, (2) evidence of Ritze's then-existing state of mind is irrelevant to the charges against Le, and (3) any probative value that evidence of Ritze's state of mind may have is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury, Fed. R. Evid. 403. The parties have met and conferred about this motion.

This motion is based on the attached memorandum of points and authorities, the files and records in the case, and any additional evidence and argument that may be presented at or before the hearing on this motion.

Respectfully submitted,

Dated: August 2, 202

/s/
CRAIG WILKE
Attorney for Defendant

# MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION

Defendant Hoang Xuan Le is charged with first-degree murder in the special maritime and territorial jurisdiction of the United States, conspiracy to commit murder, and using a gun during and in relation to the murder. The Second Superseding Indictment alleges that Le conspired with Sheila Ritze to murder Tri Dao in order to collect a debt from Dao's girlfriend who was the beneficiary of his life insurance policy. More specifically, it alleges that, on October 14-15, 2019, Le lured Dao on to Ritze's boat to go lobster fishing, Le and Ritze took Dao out to the ocean, Le shot Dao and threw him overboard, and Le and Ritze left Dao in the ocean to die. Le has pleaded not guilty and the case is proceeding to trial on October 4, 2021.[1] At trial, the government seeks to introduce testimony from Ritze's coworkers (identified by the initials EP, JT, IA, and PL) and an audio-video recording of hearsay statements by Ritze prior to October 14, 2019. The government also seeks introduce testimony from the stepmother of Ritze's former husband about Ritze's hearsay statements. The government contends that the statements are admissible under the hearsay exception for statements of a declarant's then-existing state of mind. Fed. R. Evid. 803(3). For the reasons discussed below, the Court should exclude this evidence.

## STATEMENT OF FACTS

During the relevant period, Sheila Ritze was employed at a local property management company. She worked with EP, IA, JT, and PL (collectively "the coworkers"). On January 7, 2020, and February 25, 2020, federal agents interviewed the coworkers who reported that Ritze made statements at work about having a "hit list," killing people on her boat, and having friends of a different race who do such

---

[1] Ritze is also charged with murder, conspiracy to commit murder, and using a gun during and in relation to the murder, but the Court severed her and Le for trial in order to safeguard Le's Sixth Amendment right to confrontation implicated by the admission of Ritze's post-arrest statement.

3

things.² IA provided a September 27, 2019, audio-video recording of such statements.

SR is the stepmother of Ritze's former husband. Federal agents interviewed SR on January 3, 2020, and February 25, 2020. SR reported that, on or about October 4, 2019, Ritze described Le as a "hit man," spoke of "offing" somebody while going lobster-fishing late at night, stated that she and Le were going to be "offing" Dao, and made direct and implied statements that they had already killed Dao.

## ARGUMENT

### 1. Ritze's hearsay statements are not statements of her then-existing state of mind.

An out-of-court statement offered for the truth of the matter asserted is hearsay and generally inadmissible. Fed. R. Evid. 801, 802. Statements of a then-existing mental condition are excepted from the hearsay rule. Fed. R. Evid. 803(3). This exception provides in relevant part that "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . . , but not including a statement of memory or belief to prove the fact remembered or believed" is not excluded by the hearsay rule regardless of whether the declarant is unavailable as a witness. Fed. R. Evid. 803(3). The exception does not apply to statements recounting past conduct, *United States v. Harwood*, 998 F.2d 91, 98 (2d Cir 1993); or statements about the motive, intention or plan of others, *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987). As the party offering the hearsay statements, the government has the burden of proving the threshold questions of admissibility. *United States v. Chang*, 207 F.3d 1169, 1176-77 (9th Cir. 2000).

In determining whether a statement then-existing mental condition is admissible under Rule 803(a), the Court must consider whether the stated mental condition is contemporaneous with the making of the statement. *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980), *overruled on other grounds by United States v. De*

---

² EP also reported that Ritze once recounted making a threat to a restaurant manager to blow up the restaurant.

4

*Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc). Taken literally, Ritze's statements about having a "hit list" and killing people on her boat recount past conduct. For instance, EP reported that Ritze spoke about her "hit list" or "kill list" and taking people on her boat and "getting rid of them." EP reported that Ritze said "I have my list, people that go on my boat and never come back." Similarly, IA reported that Ritze said she had a "hit list" of people she wanted to kill; JT reported that Ritze stated "I have a list;" and PL reported that Ritze once told somebody over the telephone about a list of people to kill. Similarly, SR reported that Ritze spoke of "offing" somebody while going late night lobster fishing and made direct and implicit statements that she and Le had killed Dao. Because these statements recount past conduct, these are not statements of Ritze's then-existing state of mind. *See United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993) ("the statement must face forward, rather than backward").

Ritze also made statements about her friends who also have a "hit list" and kill people on her boat, as well as a statement to SR about Le being a "hitman." In the recorded statement, Ritze said that that her friends "just go kill people in a heartbeat," that her friends are on "standby," and that anybody who "fucks with [her] . . . better be careful because . . . they will never know who it is or who's coming" because the person will be "a total [sic] different race." Similarly, EP reported that Ritze said she had friends who have a "kill list" and when they take people out on the boat "some of them don't come back." IA reported that Ritze said she had friends of a different race who were willing to kill for her. JT reported that Ritze said she had friends that could kill people. Moreover, SR reported that Ritze said that Le was a "hitman." Statements about the motive, intention, or plan of others, as these are, are not statements of the declarant's then-existing state of mind. *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987).

While Ritze expressed her lack of fear about killing people, her lack of worry about going to jail and her need to have her boat cleaned, these statements when placed in context, are not statements of her then-existing state of mind. In the recorded

5

1 statement, Ritze said that she is not afraid of killing people because her friends will do
2 the killing. Similarly, EP reported that Ritze said she was not worried about going to
3 jail for killing somebody because she had "brothers" on "speed dial" who would take
4 care of her and never say that she was involved. EP also reported that, on October 15,
5 2019, Ritze said that her boat was filthy, had a little bit of dried blood on it, and needed
6 to be cleaned.

In *United States v. Cohen*, 631 F.2d 1223 (5th Cir. 1980), the Fifth Circuit held that the statement "I'm scared because [the co-conspirator] threatened me" is not a statement of the declarant's then-existing state of mind because it was a statement about why he held the particular state of mind or what he might have believed would have induced the state of mind. *Id.* at 1225. The Ninth Circuit relied on this reasoning to hold that a statement that the declarant was scared because he was threatened by agents was not a statement of the declarant's then-existing state of mind. *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987) (*citing Cohen*, 631 F.2d at 1225). Similarly, Ritze's statements expressing her lack of fear about killing because her friends will do it, her lack of worry about going to jail because her friends will not disclose her involvement, and her need to clean the boat are all expressions of why Sheila held the particular state of mind or what she believed would have induced her state of mind.

2. **Ritze's then-existing state of mind is irrelevant to the charges against Le.**

Even if the Court were to construe Ritze's hearsay statements as statements of her then existing state of mind, the Court must still consider whether Ritze's then-existing state of mind expressed in her hearsay statement is relevant. *Ponticelli*, 622 F.2d at 991. Ritze's statements about having a "hit list," killing people on her boat, and having friends who do such things are not statements of her intent or plan to kill Dao. Without such specificity, evidence of Sheila's out-of-court statements tend to prove her character for violence and are arguably inadmissible at her own trial. Fed. R. Evid. 404(a)(1). Certainly, such evidence is not admissible in Le's trial. *See* Advisory Comm. Notes,

1  Fed. R. Evid. 803, 1974 Enactment (Rule 803(3) does not permit declarant's statement
2  of then-existing state of mind to prove future conduct of another person).

3        This case is distinguished from *United States v. Astorga-Torres*, 682 F.2d 1331
4  (9th Cir. 1982), where the declarant's statement of intention to bring a guard to a
5  meeting was relevant to the declarant's participation in the drug transaction that
6  occurred at the meeting. *Id.* at 1335-36. This case is also distinguished from *United
7  States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), where the declarant's statement of
8  intention to meet with the defendant was relevant to whether the declarant had, in fact,
9  met with the defendant. *Id.* at 376-77.

10 **3.    The probative value of Ritze's statements to her then-existing state of**
11       **mind is substantially outweighed by the danger of unfair prejudice,**
12       **confusing the issues, and misleading the jury.**

13       Even if Ritze's hearsay statements were statements of her then-existing state of
14 mind and even if Ritze's then-existing state of mind were somehow relevant to the
15 prosecution of Le, evidence of Ritze's hearsay statements should be excluded because
16 their probative value to her then-existing state of mind is substantially outweighed by
17 the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R.
18 Evid. 403. While Ritze's state of mind has some relevance to whether she knowingly
19 participated in a conspiracy to murder Dao, the material issue in dispute at trial will be
20 whether Le murdered Dao on Ritze's boat or whether Le acted in self-defense when he
21 caused Dao's death. Ritze's state of mind when she made the hearsay statements have
22 no relevance to this issue.

23       To the extent that Ritze's then-existing state of mind has some tendency to prove
24 that she later intended to kill Dao, the probative value of the statement is minimal.
25 Before admitting hearsay statements of then-existing state of mind, the Court must
26 consider chance for reflection so as to ensure that the statement truly reflects the
27 declarants state of mind at the time of the statement. *Ponticelli*, 622 F.2d at 991. These
28 hearsay statements at issue were clearly not the product of reflection, and it is clear

from the context in which she made the statements that Ritze was using hyperbole rather than actually expressing her intention or plan to kill Dao or anybody else. While SR reported that Ritze said that she and Le were going to be "offing" Dao, SR also reported that Ritze said both directly and indirectly that she and Le had already killed Dao -- a demonstrably false statement. EP reported that Ritze said she had a "list [of] people that go on my boat and never come back" and that homeowners association ("HOA") people and JT were on her list. IA explained that Ritze would blurt out that she had a list of people she wanted to kill when she became upset during meetings or telephone calls. EP also reported that Ritze told a coworker to "eat up, you'll go down easier." And, Ritze told a coworker, as captured on the recording, "[y]ou should [eat your food] because when you go down, you want to go down full." The obvious hyperbolic nature of these statements by Ritze give them little if any probative value to Ritze's actual then-existing state of mind.

     The danger of unfair prejudice, confusing the issues and misleading the jury substantially outweighs any probative value that Ritze's hearsay statements have to her then-existing state of mind. There is a genuine danger that the jury will improperly consider Ritze's hearsay statements as evidence of her character for violence and attribute her bad character to Le based on their association. Fed. R. Evid. 404(a)(1). There is also a genuine danger, if allowed to consider Ritze's hearsay statements as evidence of her then-existing state of mind, the jury will improperly infer that Le shared Ritze's state of mind. There is a genuine danger, if allowed to infer from Ritze's then-existing state of mind that she later acted in conformity therewith, the jury will improperly infer that Le also acted in conformity therewith. These dangers are particularly acute because the jury will not be asked to decide Ritze's state of mind much less her participation in the charged crimes. This is the very type of unfair prejudice, confusion of the issues and misleading the jury for which Rule 403 guards against.

/

## CONCLUSION

For the foregoing reasons, the Court should exclude evidence of Ritze's hearsay statements offered to prove her then-existing state of mind including testimony from her coworkers EP, JT, IA and PL, an audio-video recording of Ritze's hearsay statements to her coworkers, and testimony from SR who is the stepmother of Ritze's former husband.

Respectfully submitted,

Dated: August 2, 2021

/s/
CRAIG WILKE
Attorney for Defendant