TRACY L. WILKISON
Acting United States Attorney
BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office
GREGORY S. SCALLY (Cal. Bar No. 268073)
Assistant United States Attorney
VIBHAV MITTAL (Cal. Bar No. 257874)
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office
     Ronald Reagan Federal Bldg & U.S. Courthouse
     411 West 4th Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3592/3534
     Facsimile: (714) 338-3561/3708
     E-mail:   gregory.scally@usdoj.gov
               vibhav.mittal@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SA CR 20-02(B)-DOC |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT HOANG XUAN LE'S MOTION IN LIMINE TO EXCLUDE HEARSAY STATEMENTS OF SHEILA RITZE |
| v. | |
| HOANG XUAN LE, and SHEILA MARIE RITZE, | Hearing Date: August 30, 2021 Hearing Time: 1:30 p.m. Location:   Courtroom of the Hon. David O. Carter |
| Defendants. | |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Gregory S. Scally and Vibhav Mittal, hereby files its opposition to defendant Hoang Xuan Le's motion in limine to exclude hearsay statements of Sheila Ritze.

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 16, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

_____/s/_____
GREGORY S. SCALLY
Assistant United States Attorney
VIBHAV MITTAL
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION.....................................................1

II.  STATEMENT OF FACTS...............................................2

     A.   Co-defendant Ritze's Statements to Her Co-Workers
          Prior to the Murder.........................................2

     B.   Co-defendant Ritze's Statements in early October 2019
          to Her Family Member........................................5

III. ARGUMENT.........................................................6

     A.   Co-Defendant Ritze's Statements Prior to The Murder
          Are Admissible Under the Statement Against Interest
          Exception to the Hearsay Rule Pursuant to Rule
          804(b)(3)...................................................6

          1.   Rule 804(b)(3) and the Confrontation Clause..........6

          2.   Co-defendant Ritze's Statements to Her Co-workers
               and F1 Would Tend to Inculpate Her...................9

          3.   Co-defendant Ritze's Statements to Her Co-workers
               and F1 Are Clearly Trustworthy and Contain
               Particularized Guarantees of Trustworthiness,
               Satisfying Both Rule 804(b)(3) and the
               Confrontation Clause................................10

     B.   Co-Defendant Ritze's Statements Prior to The Murder
          Are Admissible Under the State of Mind Exception to
          the Hearsay Rule Pursuant to Rule 803(3)..................11

          1.   Rule 803(3).........................................11

          2.   Co-Defendant Ritze's Statements Were
               Contemporaneous, Without Chance for Reflection,
               and Relevant........................................14

     C.   Rule 403 Favors Admission................................16

     D.   Alternatively, Co-Defendant Ritze's Statements Are
          Admissible as Nonhearsay.................................17

IV.  CONCLUSION......................................................17

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

Davis v. Velez,
    797 F.3d 192 (2d Cir. 2015)....................................7

4

Lilly v. Virginia,
    527 U.S. 116 (1999)..........................................8

5

6

Mutual Life Insurance Co. v. Hillmon,
    145 U.S. 285 (1892)......................................11, 13

7

Padilla v. Terhune,
    309 F.3d 614 (9th Cir. 2002)................................10

8

9

Terrovona v. Kincheloe,
    852 F.2d 424 (9th Cir. 1988)................................11

10

United States v. Astorga-Torres,
    682 F.2d 1331 (9th Cir. 1982)...........................12, 16

11

12

United States v. Boone,
    229 F.3d 1231 (9th Cir. 2000)........................1, 8, 12

13

United States v. Calvert,
    523 F.2d 895 (8th Cir. 1975)................................11

14

15

United States v. Chan,
    184 F. Supp. 2d 337 (S.D.N.Y. 2002).........................7

16

United States v. Emmert,
    829 F.2d 805 (9th Cir. 1987)................................15

17

18

United States v. Gibson,
    690 F.2d 697 (9th Cir. 1982)................................17

19

United States v. Harwood,
    998 F.2d 91 (2d Cir. 1993)..................................14

20

21

United States v. Houlihan,
    871 F. Supp. 1495 (D. Mass. 1994)...........................13

22

United States v. Hyles,
    479 F.3d 958 (8th Cir. 2007)................................12

23

24

United States v. Layton,
    720 F.2d 548 (9th Cir. 1983).................................9

25

United States v. MacInnes,
    23 F. Supp. 3d 536 (E.D. Pa. 2014)..........................12

26

27

United States v. Monaco,
    735 F.2d 1173 (9th Cir. 1984)..............................8, 9

28

United States v. Nazemian,
    948 F.2d 522 (9th Cir. 1991)................................8, 9

United States v. Ospina,
    739 F.2d 448 (9th Cir. 1984)...............................8, 10

United States v. Pheaster,
    544 F.2d 353 (9th Cir. 1976)..............................12, 16

United States v. Ponticelli,
    622 F.2d 985 (9th Cir. 1980)..............................11, 15

United States v. Robbins,
    197 F.3d 829 (7th Cir. 1999)...................................7

United States v. Slaughter,
    891 F.2d 691 (9th Cir. 1989)...............................8, 10

United States v. Sperling,
    726 F.2d 69 (2d Cir. 1984)....................................13

United States v. Thomas,
    571 F.2d 285 (5th Cir. 1978)...................................7

Williamson v. United States,
    512 U.S. 594 (1994)...........................................8

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3       Defendant Hoang Xuan Le and co-defendant Sheila Ritze are

4   charged with, among other things, first degree murder and conspiracy

5   to murder.  (CR 134.)  Defendant Le, a long time friend and business

6   partner of the victim, Tri Dao, told people after the killing that he

7   killed Dao because Dao owed him money.  At trial, defendant Le

8   intends to assert that, while he killed Dao, he did not premeditate

9   the murder, did not conspire to murder Dao with co-defendant Ritze,

10  and only killed Dao in self-defense.  But prior to the October 15,

11  2019 murder of the victim, co-defendant Ritze made statements to her

12  co-workers at a property management company, E.P., I.A., J.T., P.L.,

13  G.M., and I.B. ("co-workers"), where Ritze had worked for ten years,

14  and a family member of co-defendant Ritze ("F1"), whom Ritze has

15  described as her "best friend," about her motive, intent, and plan to

16  kill the victim with defendant Le.  Defendant Le has moved to exclude

17  these statements.  (CR 210.)  The motion to exclude the statements as

18  hearsay should be denied because the statements are admissible at

19  defendant Le's trial pursuant to Fed. R. Evid. 804(b)(3) and 803(3).

20      The statements are against co-defendant Ritze's penal interest

21  and admissible against defendant Le pursuant to Fed. R. Evid.

22  804(b)(3).  The Ninth Circuit affirmed use of such statements by an

23  accomplice made in private to trusted acquaintances in <u>United States</u>

24  <u>v. Boone</u>, 229 F.3d 1231 (9th Cir. 2000), because they contain

25  "particularized guarantees of trustworthiness."  The statements are

26  also admissible pursuant to Fed. R. Evid. 803(3), which excludes such

27  statements of state of mind from the rule against hearsay.  Under

28  Rule 803(3), defendant Ritze's state of mind statements are

admissible at defendant Le's murder trial to prove that co-defendant Ritze acted in conformance with her stated intentions.

Alternatively, if the statements are not admitted under Rule 804(b)(3) or Rule 803(3), co-defendant Ritze's statements can be admitted as nonhearsay.

## II.  STATEMENT OF FACTS

### A.  Co-defendant Ritze's Statements to Her Co-Workers Prior to the Murder

Prior to being arrested in this matter, co-defendant Ritze worked at a local property management company, where she had worked for ten years.  E.P. said that co-defendant Ritze had begun hanging out with a Vietnamese male and his friends.  Similarly, K.P. knew that co-defendant Ritze had become friends with a man named "Wayne," had become infatuated with the Asian family, and bragged about all the Vietnamese food and culture she had been exposed to.  (The Vietnamese male is believed to be a reference to defendant Le.)

While working at the property management company, on September 20, 2019, co-defendant Ritze was talking "all day" about killing people and "taking out people."  These statements made her co-workers very uncomfortable.  Co-defendant Ritze told I.A. that "her friends" have a list of who owes them money and who they are going to kill. Co-defendant Ritze told G.M. that she has a "list."  Co-defendant Ritze went to G.M.'s office and co-defendant Ritze said her friends have a list of who owes them money and who they are going to kill. Likewise, before October 15, 2019, co-defendant Ritze told E.P. that her friends would make sure "you would never come back."  Co-defendant Ritze also told E.P. that co-defendant Ritze would take

1  "you" out on her boat, and co-defendant Ritze would make sure that
2  "you" would not be found.
3      On September 27, 2019, co-defendant Ritze was secretly recorded
4  making such statements at work.  In that recording, co-defendant
5  Ritze had the following exchange with her co-workers:
6  SR:  Fuck with me…[UI]
7  IA:  Why you killing people today?
8  SR:  Why not? I'm gonna take em on my boat, they may go on the boat
9       but they are not gonna come back.
10 IA:  You're gonna go kill people on your boat?
11 SR:  Yes.
12 PL:  Sheila, they make stories about that.
13 IA:  Sheila!
14 SR:  If you make the list it-it-it's pretty fun.
15 IA:  What list?
16 EP:  There's a list?
17 SR:  The hit list. [laughs]
18 EP:  Oh my god.
19 BL:  Did she just say that she was gonna mutilate people?
20 IA:  Kill them on the boat—
21 BL:  Oh.
22 PL:  I just want to eat my cup o' noodles please. [laughs]
23 SR:  You should because when you go down, you want to go down full.
24 EP:  Oh you want to go down full.  Oh my god.
25      [laughter]
26 SR:  My boys are crazy. Last night you should have seen them - last
27      night at the meeting, I-I walked in, I'm all…
28 IA:  What boys?

1    SR:   Hi everybody.

2    PL:   Whose boys?

3    SR:   Oh, I got friends that will just go kill people in a heartbeat

4          so they were like all on standby and I'm like [UI][OV]

5    IA:   They were on standby for you to call them and tell them to go

6          kill somebody?

7    [UI]

8    PL:   Aren't you afraid?

9    SR:   Afraid of what?

10   PL:   Like—

11   IA:   --Of killing people.

12   PL:   In general.

13   SR:   I'm not killing anybody, I have friends that will.

14   . . .

15   SR:   All I know is that if anybody fucks me, they better be careful

16         cause this is not a good situation and they will never know who-

17         who it is or who's coming because it's a total different race.

18         [laughs]  I love it.  I work with the best of em so [UI] get

19         over it.  Meh, fuck it.  If I don't have anybody to protect me,

20         who do I got?

21         These statements were linked to defendant Le as co-defendant

22   Ritze's co-workers will testify to the fact that she had begun

23   spending time with an Asian family and a man named, "Wayne."  In

24   particular, they will explain how defendant Le's cousin, Cindy Le,

25   introduced the defendants to one another.

26

27

28

                                      4

**B.   Co-defendant Ritze's Statements in early October 2019 to Her Family Member**

On Friday, October 4, 2019, defendant Le, co-defendant Ritze, the person identified as "co-conspirator #2" in the second superseding indictment, and Dao went to Las Vegas, Nevada.  During that trip, they met F1 (a family member of co-defendant Ritze's) because co-defendant Ritze and F1 had tickets to a Billy Idol concert.  F1 believed that two of them were Vietnamese because co-defendant Ritze had described them as her Vietnamese friends.  In a recording recovered from co-defendant Ritze's iPhone XR, co-defendant Ritze, while at the concert with F1, said, "Place is packed, I got bad-ass seats, my best friend got them for me, she's adorable, I love her to death, thank you [F1], you're the best."

Co-defendant Ritze, out of the presence of the victim, when asked by F1 the victim's name, responded, in substance, "Don't worry about it, we're going to be offing him."[1]  F1 understood "offing" to mean "killing."  During that trip, co-defendant Ritze described defendant Le and co-conspirator #2 as hit men.

Later that night, defendant Le stated to F1, in the presence of co-defendant Ritze, in substance, that he had access to co-defendant Ritze's boat, and that was how he offed people, by taking them out to sea under the impression they were going night lobster fishing. Defendant Le said, in substance, that he could easily kill someone out on the boat.  Defendant Le also told F1 that the victim owed defendant Le thirty to forty thousand dollars, and said he killed the victim (who had not yet, in fact, been killed by the defendants at

---

[1] F1 has also reported the statement as, "We're going to be offing him this weekend."

1  that point).  Asked how defendant Le would get the money the victim

2  owed if defendant Le killed the victim, defendant Le replied, in

3  substance, "You do not get the money, you get satisfaction."  Co-

4  defendant Ritze voiced aloud the idea of "offing" someone while going

5  late night lobster fishing.[2]  F1 believed they were discussing

6  killing a person on co-defendant Ritze's boat in the future.

7       During the Las Vegas trip, defendant Le also told co-conspirator

8  #2, on several occasions, about wanting to kill the victim.

9  Defendant Le also told co-conspirator #2 about how the victim owed

10 defendant Le thirty to forty thousand dollars, defendant Le's

11 intention to "take him out," and defendant Le's plan to get money

12 from the victim's widow.

13 **III. ARGUMENT**

14       **A.   Co-Defendant Ritze's Statements Prior to The Murder Are**
            **Admissible Under the Statement Against Interest Exception**
15           **to the Hearsay Rule Pursuant to Rule 804(b)(3)**

16            1.   Rule 804(b)(3) and the Confrontation Clause

17       Federal Rule of Evidence 804(b)(3) provides an exception to the

18 hearsay rule where:  (a) the declarant is unavailable, (b) a

19 reasonable person in the declarant's position would have made the

20 statement only if the person believed it to be true because, when

21 made, it was so contrary to the declarant's proprietary or pecuniary

22 interest or had so great a tendency to invalidate the declarant's

23 claim against someone else or to expose the declarant to civil or

24 criminal liability; and (c) the statement is supported by

25 corroborating circumstances that clearly indicate its

26

27       [2] The statements co-defendant Ritze made in defendant Le's
    presence should also be admitted as adoptive admissions, pursuant to
28 Fed. R. Evid. 801(d)(2)(B).  Defendant Le's statements during the Las
    Vegas trip are admissible under Fed. R. Evid. 801(d)(2)(A).

                                    6

1   trustworthiness, if it is offered in a criminal case as one that

2   tends to expose the declarant to criminal liability.

3       A declarant is unavailable as a witness if, among other things,

4   the declarant is exempted from testifying about the subject matter of

5   the declarant's statement because the court rules that a privilege

6   applies.  Fed. R. Evid. 804(a)(1).  Here, counsel for co-defendant

7   Ritze has informed the government that she would assert her privilege

8   against self-incrimination if called to testify at defendant Le's

9   murder trial and would only testify if provided immunity.  (CR 214 at

10  14.)  This representation by counsel for co-defendant Ritze that co-

11  defendant Ritze would assert her privilege against self incrimination

12  should be sufficient to satisfy the requirement of showing co-

13  defendant Ritze is unavailable.  Davis v. Velez, 797 F.3d 192, 201-04

14  (2d Cir. 2015) (relying on representation of counsel that defendant

15  incarcerated in another state would assert privilege where all

16  proposed questions were incriminating); United States v. Robbins, 197

17  F.3d 829, 838, n.5 (7th Cir. 1999) (ruling that codefendant whom

18  government could not constitutionally call as witness did not have to

19  assert the Fifth Amendment to be unavailable); United States v.

20  Thomas, 571 F.2d 285 (5th Cir. 1978) (concluding that formal claim

21  not required where declarant was a codefendant whose right not to

22  take the stand is clear); United States v. Chan, 184 F. Supp. 2d 337,

23  341 (S.D.N.Y. 2002) (not requiring witnesses to be brought into court

24  to assert Fifth Amendment privilege but instead accepting

25  representation by prosecutor that lawyers for coconspirators stated

26  they would assert their clearly applicable privilege).

27      To meet the second requirement, the statement must (1) "solidly

28  inculpat[e]" the declarant and (2) "be one that a reasonable person

7

in the declarant's position would not have made unless it were true." United States v. Monaco, 735 F.2d 1173, 1176 (9th Cir. 1984); United States v. Nazemian, 948 F.2d 522, 530 (9th Cir. 1991) (holding that statement indicating declarant was in a heroin transaction clearly would tend to subject him to criminal liability).

Finally, the statement must be supported by corroborating circumstances that clearly indicate the statement's trustworthiness. Factors relevant to trustworthiness include the time of the declaration and the party to which it was made, the existence of corroborating evidence, the extent to which the declaration is actually against the declarant's interest, and the availability of the declarant as a witness. United States v. Ospina, 739 F.2d 448, 452 (9th Cir. 1984); see also United States v. Slaughter, 891 F.2d 691, 698 (9th Cir. 1989).

Because the statement against penal interest is not "firmly rooted" in the hearsay exception, to comply with the Confrontation Clause, the statements must contain "particularized guarantees of trustworthiness." Boone, 229 F.3d at 1233-34 (9th Cir. 2000) (citing Lilly v. Virginia, 527 U.S. 116 (1999)). The Supreme Court has noted that the very fact that a statement is genuinely self-inculpatory—which Rule 804(b)(3) requires—is itself one of the "particularized guarantees of trustworthiness" that makes a statement admissible under the Confrontation Clause. Williamson v. United States, 512 U.S. 594, 605 (1994) (citing Lee v. Illinois, 476 U.S. 530, 543-545 (1986)).

2.   Co-defendant Ritze's Statements to Her Co-workers and F1 Would Tend to Inculpate Her

Co-defendant Ritze's statements to her co-workers and F1: (1) solidly inculpate her and (2) are statements that a reasonable person in her position would not have made unless they were true.  Monaco, 735 F.2d at 1176; Nazemian, 948 F.2d at 530.  Co-defendant Ritze was admitting her intention to kill people.  She did this repeatedly at work and in Las Vegas, saying she was going to be "offing" Dao.  It is difficult to imagine more inculpatory statements than those about one's intention to kill.  Because the statements are so inculpatory, they bear the mark of reliability.  In particular, they are not the sort of statements that the drafters of the Federal Rules of Evidence were concerned with excluding, such as when "a purportedly damaging statement [is] made with the purpose of placating the authorities or diverting their attention," like "a statement admitting guilt and implicating another, made while in custody, [which] may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest."  Monaco, 735 F.2d at 1176-77 (citing Fed. R. Evid. 804(b)(3) Advisory Committee Notes).  Neither are the statements "ostensibly incriminatory statements made in a testimonial setting which inculpate a third party," which "may be motivated by expectations of leniency or preferential treatment from the authorities, or a desire for revenge," the trustworthiness of which is "likewise suspect."  Id.  Here, instead, these statements were made spontaneously, to trusted parties, circumstances which ensure trustworthiness.  See United States v. Layton, 720 F.2d 548, 560 (9th Cir. 1983), overruled on other grounds by United States v. W.R. Grace, 526 F.3d 499 (9th Cir. 2008).  Co-defendant Ritze had

9

worked at the company for 10 years and trusted her co-workers.  She
similarly felt close to F1 at the time she made the statements to F1,
referring to F1 as her "best friend" whom she "loved to death" on the
same day as the statements.

        3.    <u>Co-defendant Ritze's Statements to Her Co-workers and F1 Are Clearly Trustworthiness and Contain Particularized Guarantees of Trustworthiness, Satisfying Both Rule 804(b)(3) and the Confrontation Clause</u>

All the factors relevant to trustworthiness in Rule 804(b)(3)
analysis favor admission.  <u>Ospina</u>, 739 F.2d at 452; <u>Slaughter</u>, 891
F.2d at 698.  Co-defendant Ritze's statements were less than a month
before the murder and to people co-defendant Ritze trusted—her co-
workers and a member of her family, F1.  Her statements will be
corroborated by a variety of evidence at trial, including cell-site
data, footage from Dana Point showing the boat trip, and defendant
Le's statements to F1 and others where defendant Le admitted to the
murder and actively attempted to cover up his involvement in the
murder with the victim's family and law enforcement.  The statements
at issue are strongly against co-defendant Ritze's interest because
they show her intent to commit murder at sea with co-defendant Le.
Finally, it is clear that co-defendant Ritze is unavailable as a
witness to the government.

For the same reasons, these statements contain the
"particularized guarantees of trustworthiness" to permit her
statements to be admitted in compliance with the Confrontation
Clause.  <u>Padilla v. Terhune</u>, 309 F.3d 614, 620 (9th Cir. 2002)
(affirming admission of statement against penal interest because the
statement was made voluntarily, in a private setting, and with no
effort to mitigate the declarant's conduct).

1        **B.   Co-Defendant Ritze's Statements Prior to The Murder Are**
2              **Admissible Under the State of Mind Exception to the Hearsay**
              **Rule Pursuant to Rule 803(3)**

3              1.   Rule 803(3)

4        Pursuant to Federal Rule of Evidence 803(3), the rule against

5   hearsay does not exclude "a statement of the declarant's then-

6   existing state of mind (such as motive, intent, or plan)."  Such a

7   statement may be introduced to prove that the declarant thereafter

8   acted in accordance with the stated intent.  See Mutual Life

9   Insurance Co. v. Hillmon, 145 U.S. 285, 295-96 (1892); see also Fed.

10  R. Evid. 803 Advisory Committee Note to Paragraph (3) (1972) ("The

11  rule of [Hillmon] allowing evidence of intention as tending to prove

12  the doing of the act intended, is, of course, left undisturbed.").

13  Only "statements of memory or belief to prove the fact remembered or

14  believed" are excluded.  In determining whether a statement is

15  admissible under Rule 803(3), district courts "must evaluate three

16  factors: contemporaneousness, chance for reflection, and relevance."

17  United States v. Ponticelli, 622 F.2d 985, 991 (9th Cir. 1980),

18  overruled on other grounds by United States v. De Bright, 730 F.2d

19  1255, 1259 (9th Cir. 1984) (en banc).

20       A "declarant's out-of-court statement of intention is admissible

21  to prove that the declarant subsequently acted in conformity with

22  that intention, if the doing of that act is a disputed material

23  fact."  United States v. Calvert, 523 F.2d 895, 910 (8th Cir. 1975).

24  The declarant of the out-of-court statement need not be the

25  defendant.  For example, the Ninth Circuit has affirmed the admission

26  of state of mind statements by victims and co-conspirators under Rule

27  803(3).  See Terrovona v. Kincheloe, 852 F.2d 424, 427 (9th Cir.

28  1988) (out-of-court statement by victim to his girlfriend that he was

leaving to meet the defendant was admissible because it was a statement of declarant's then present intention and because it placed the defendant at the murder scene)[3]; United States v. Astorga-Torres, 682 F.2d 1331, 1336 (9th Cir. 1982) (statement of co-conspirator that he intended to bring guards with him to the site of a drug transaction was properly admitted as evidence of co-conspirator's intent to actually bring such individuals, and when appropriate limiting instruction was given, inferences could be drawn by the jury as to whether guards were actually present); United States v. Pheaster, 544 F.2d 353, 374-80 (9th Cir. 1976) (in kidnapping prosecution, trial court did not err in admitting testimony of a friend of the victim that shortly before the victim disappeared the victim told his friend that he was going to meet a person with the same name as the defendant); see also United States v. Hyles, 479 F.3d 958, 970 (8th Cir. 2007) (holding that a witness's testimony, that before the murder defendant's co-conspirator told the witness he intended to kill the victim, was admissible, in prosecution for, inter alia, murder-for-hire, to establish co-conspirator's existing state of mind); United States v. MacInnes, 23 F. Supp. 3d 536, 541-44 (E.D. Pa. 2014) (permitting statement concerning declarant's plan to engage in future snake sale was relevant to show link in chain of events leading to defendant's receipt of illegally obtained snakes

---

[3] Admission of codefendant Ritze's statements under Rule 803(3) does not violate his Confrontation Clause rights, because admission of these statements on this theory meets the indicia of reliability, as it falls within a firmly rooted hearsay exception. Terrovona, 852 F.2d at 427. Admission of these statements also does not violate defendant Le's Confrontation Clause rights because the statements contain "particularized guarantees of trustworthiness." United States v. Boone, 229 F.3d 1231, 1233 (9th Cir. 2000) (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980). This basis is more fully analyzed earlier with respect to admission based on Rule 804(b)(3).

1  and to corroborate other evidence that declarant sold snakes to

2  defendant).

3        Courts outside of the Ninth Circuit have held that a declarant's

4  statement of intent may be admitted against a non-declarant only when

5  there is independent evidence connecting the declarant's statement

6  with the non-declarant's conduct. United States v. Houlihan, 871 F.

7  Supp. 1495, 1499 (D. Mass. 1994) (collecting cases from the Second

8  and Fourth Circuits); United States v. Sperling, 726 F.2d 69, 74 (2d

9  Cir. 1984) (holding "a declarant's Hillmon declarations regarding his

10 own state of mind are admissible against a nondeclarant when they are

11 linked with independent evidence that corroborates the

12 declarations"). As the district court noted in Houlihan, this is not

13 Ninth Circuit law and is inconsistent with the text of Rule 803(3).

14 Regardless, there will be ample independent evidence connecting co-

15 defendant Ritze's statements with defendant Le's conduct.  This

16 includes (1) cell-site data and footage from Dana Point showing a

17 boat trip, on Ritze's boat (the boat mentioned in Ritze's statement

18 to her co-workers), involving defendant Le, co-defendant Ritze, and

19 Dao, (2) defendant Le's statements to F1 and co-conspirator 2 about

20 his intent to kill the victim prior to the killing; (3) defendant

21 Le's other admissions to the murder after the killing; (4) defendant

22 Le's active attempts to cover up his involvement in the murder with

23 the victim's family and law enforcement.  This also includes evidence

24 that defendant Le himself also maintained a "list" of people he

25 intended to kill—a term that explicitly connects defendant Le to the

26 recorded statement of co-defendant Ritze at work.  This evidence

27 includes an August 2019 message from defendant Le to Dao, in which

28 defendant Le stated, "I hate meeting people like Chinaman stresses me

out he's another mother fucker on my list."  It also includes a
December 2019 exchange between the defendants, in which defendant Le
wrote "debt collecting" and sent a picture of someone (from whom
defendant Le was apparently collecting a debt, per his report to co-
defendant Ritze), and co-defendant Ritze responded, "Good luck with
that.  He is on the list."

> 2. <u>Co-Defendant Ritze's Statements Were Contemporaneous, Without Chance for Reflection, and Relevant</u>

> a. *Contemporaneousness*

Co-defendant Ritze's statements to her co-workers in late
September 2019 and to F1 in early October 2019 are contemporaneous
because they were made during the alleged murder conspiracy.  At
work, co-defendant Ritze told her co-workers about her plan to kill
others using her boat.  Likewise, co-defendant Ritze told F1 about
her plan to "off[]" the victim.

Defendant Le contends that the statements are past tense, and
thus not actually statements of her then-existing state of mind.  (CR
210 at 5).  This is incorrect.  Co-defendant Ritze said she currently
has a "hit list."  Other portions also definitely "face forward,
rather than backward," <u>United States v. Harwood</u>, 998 F.2d 91, 98 (2d
Cir. 1993), including statements of co-defendant Ritze such as, "I'm
gonna take 'em on my boat, they may go on the boat but they are not
gonna come back," and, when asked "You're gonna go kill people on
your boat?" Co-defendant Ritze responded, "Yes."  Co-defendant Ritze
went on to make more explicitly forward-facing statements, such as
"I'm not killing anybody, I have friends that will."  Co-defendant
Ritze's statement to F1 is also about her then-existing state of mind

1   and forward-facing, rather than backward-facing, when she said, of
2   Tri Dao, "We're going to be offing him."

3       Defendant's cited cases do not change the analysis.  In <u>Harwood</u>,
4   the statements were offered "to support an inference about conduct
5   that had occurred five months earlier," prior to the statement, which
6   therefore did not warrant application of the state of mind exception,
7   where the focus is the "contemporaneity of the statement and the
8   unlikelihood of deliberate or conscious misrepresentation."  <u>Harwood</u>,
9   998 F.2d at 98.  Here, by contrast, the statements are offered to
10  show co-defendant Ritze's state of mind regarding the killing of Dao
11  in the weeks immediately preceding Dao's killing.

12      <u>Emmert</u> is also unavailing.  In that case, the statement the
13  government sought to introduce was a co-conspirator's statement that
14  defendant had told the co-conspirator that he had been threatened,
15  and was scared because of the threats.  <u>United States v. Emmert</u>, 829
16  F.2d 805, 810 (9th Cir. 1987).  The court there ruled that the
17  hearsay statement that the defendant had been threatened was a
18  statement of memory to prove the fact remembered, and thus fell
19  within the carve-out to the exception on the face of the rule in Fed.
20  R. Evid. 803(3).  The statements by co-defendant Ritze that the
21  government wishes to offer under Rule 803(3) are the statements of
22  Ritze's intent to kill on her boat, including the recording at work,
23  and her statement to F1 that "we're going to be offing [Dao]."  None
24  of those implicate the carve-out addressed in <u>Emmert</u>.

25                  *b.   Chance for Reflection*

26      The second factor is whether there was a chance for reflection.
27  <u>Ponticelli</u>, 622 F.2d at 991.  Here, the circumstances suggest
28  trustworthiness, because there was no opportunity for reflection.

                                    15

1    Co-defendant Ritze was stating her state of mind at the time without
2    a chance of reflection.  Co-defendant Ritze was talking to people she
3    trusted—her co-workers and F1—and telling them her then-existing
4    plans:  to kill people, including Dao, at sea.

5                        *c.   Relevancy*

6         Co-defendant Ritze's actions are certainly relevant at defendant
7    Le's trial.  Co-defendant Ritze's statements to her co-workers and F1
8    show her intent to commit murders at sea.  Where defendant Le is
9    charged with conspiring to commit murder with co-defendant Ritze, and
10   intends to assert at trial that he had no agreement with co-defendant
11   Ritze to kill Dao before the boat trip, Ritze's statement that "we're
12   going to be offing [Dao]" prior to the boat trip, and her statement
13   to her co-workers of her intent to kill people out on her boat, is
14   relevant to the jury's determination of whether co-defendant Ritze
15   acted in conformance with her stated intentions.  Accordingly, the
16   jury should be permitted to hear her statements and make the proper
17   inferences.  Astorga-Torres, 682 F.2d at 1336 (citing Pheaster 544
18   F.2d at 374-80).  If her statements are admitted under Rule 803(3),
19   the government would agree to an appropriate limiting instruction so
20   the statements are used properly by the jury.  Astorga-Torres, 682
21   F.2d at 1336, n. 2.

22        **C.   Rule 403 Favors Admission**

23        Defendant Le seeks to exclude co-defendant Ritze's statements
24   based on Rule 403.  (CR 210 at 7-9.)  The probative value varies
25   depending on the rule of admission.  If admitted under Rule
26   804(b)(3), the use of co-defendant Ritze's statements is broad.  The
27   statement shows how defendant Le and her discussed murdering people
28   at sea.  The Las Vegas statements show that they had discussed

                                    16

specifically murdering the victim roughly a week after co-defendant
Ritze made the incriminating statements at work.  This strongly
supports premeditation—the issue at trial.  If admitted under Rule
803(3), co-defendant Ritze's out-of-court statements of intention are
admissible to prove that she subsequently acted in conformity with
those intentions.  Those acts—murdering the victim—are disputed
material facts.  There is no unfair prejudice in the statements; they
are simply incriminating evidence.

>    **D.   Alternatively, Co-Defendant Ritze's Statements Are
>         Admissible as Nonhearsay**

"Hearsay" means a statement that: (1) the declarant does not
make while testifying at the current trial or hearing; and (2) a
party offers in evidence to prove the truth of the matter asserted in
the statement.  Fed. R. Evid. 801(c).  Co-defendant Ritze's
statements can also be introduced as nonhearsay and not for the truth
of the matter asserted.  Much like statements to victims in a fraud
conspiracy are not hearsay because they show the existence of a
conspiracy, co-defendant Ritze's statements can be admitted to show
the existence of a murder conspiracy and that defendant Le had
discussed killing people, including Dao, with co-defendant Ritze.
See, e.g., United States v. Gibson, 690 F.2d 697, 700 (9th Cir. 1982)
(permitting statements made by non-defendant salespeople to victims
to show the existence of a fraud scheme).

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests
that this Court deny defendant Le's motion in limine to exclude
hearsay statements of co-defendant Ritze.