**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES**<br><br>　　Plaintiff,<br><br>vs.<br><br>**HOANG LE**<br>**SHEILA RITZE,**<br>　　Defendants. | Case No. 8:20-cr-00002-DOC<br><br><br><br>**RULING ON EX PARTE APPLICATION TO PROTECT GOVERNMENT'S APPELLATE RIGHT [203]** |

Before the Court is the Government's Ex Parte Application for Ruling to Protect Government's Appellate Right ("Application" or "App.") (Dkt. 203). Having reviewed the moving papers submitted by the Government and heard the parties' arguments, the Court GRANTS the Government's motion and finds that the federal court has jurisdiction over this matter.

## I. BACKGROUND

On December 18, 2019, a Complaint ("Compl.") was filed against Defendant Le in the U.S. District Court for the Central District of California for violation of 18 U.S.C. § 1111: First Degree Murder Within the Special Maritime and Territorial Jurisdiction of the United States, and against Defendant Ritze for violation of 18 U.S.C. § 3: Accessory After the Fact. Dkt. 1. The First Superseding Indictment, filed June 24, 2020, charged both Defendants with violating 18 U.S.C. § 1111: First Degree Murder Within the Special Maritime and Territorial Jurisdiction of the United States; 18 U.S.C. § 1117: Conspiracy to Commit First Degree Murder and Second Degree Murder; and 18 U.S.C. §§ 924(c)(1)(A)(i) and (iii): Possess, Use, Carry, Discharge of a Firearm in Furtherance of and During and in Relation to a Crime of Violence. Dkt. 83.

The Government alleges that on October 15, 2019, Defendant Le shot and killed T.D. while on a boat off the coast of Orange County and threw his body into the Pacific Ocean. *Id.* at 2. Defendants Le and Ritze are alleged to have left with T.D. on a fishing trip from Dana Point, California, on October 14, 2019. Compl. at 4. T.D.'s body was found by the Coast Guard on October 16, 2019. *Id.*

The First Superseding Indictment based jurisdiction on 18 U.S.C. § 7(1). Subsequently, a Second Superseding Indictment was filed, basing jurisdiction on the alleged crime occurring in "the high seas and the territorial sea of the United States." Dkt. 134. Defendants filed a Motion to Dismiss Counts 1-3 ("Mot.") on December 14, 2020 pursuant to Fed. R. Crim. P. 12(b), based on their argument that the State of California has exclusive jurisdiction over crimes committed within three nautical miles of the California coast. Dkt. 102. The Government opposed the motion on January 18, 2021 ("Opp'n"). Dkt. 105. The Government

initially argued that the Court should wait to rule until a Rule 29 motion given the existence of a factual dispute over the location of the crime. Opp'n at 3. The parties have since stipulated that the Government cannot prove beyond a reasonable doubt that the crime occurred more than three nautical miles from shore. Joint Position RE: Motion to Dismiss for Lack of Jurisdiction at 3 (Dkt. 177). As a result, the parties jointly moved this Court to decide the purely legal question of whether "the special maritime and territorial jurisdiction of the United States" includes the 12 nautical miles seaward of the mean low water line along the coast of California as the government contends, or begins three miles offshore as the defendants contend. *Id.* The Government argues that the prior factual dispute has been resolved such that the jurisdictional issue should be disposed of before a Rule 29 motion. App. at 2 n.1. All parties stipulate that they request the Court rule on the jurisdictional issue before trial. Stipulation Regarding Ruling on Jurisdiction Prior to Trial (Dkt. 237).

To guide its decision-making, the Court asked the Government to provide a more precise estimate of the range of distance from the shoreline it would be able to prove. Order (Dkt. 269). In response, the U.S. Coast Guard performed an analysis of cell phone location data for the three participants in the boat trip. *See* Affidavit at 1-2 (Dkt. 273). Of thirteen location points analyzed, eleven fall within three miles of the shoreline. However, five of the thirteen location points are within two hundred yards on either side of the three-mile line, and two of the location points are within one hundred yards of the line. *See id.* at 3; Ex. B (Dkt. 273-3). One hundred yards is less than the margin of error for the phone location analysis. Affidavit at 3. The Court attaches the Coast Guard's visualizations for reference as Exhibits A and B.

**II. ARGUMENT**

For this Court to have jurisdiction over the first-degree murder count, the Government must prove that the murder took place "[w]ithin the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b). The Court must determine whether federal jurisdiction exists at the three-mile line because the location of the crime falls within two hundred yards of that line and cannot be more precisely calculated. *See* Affidavit at 3.

This jurisdictional requirement is satisfied if the Government proves that the murder took place on the "high seas," as defined in 18 U.S.C. § 7(11). Alternatively, the Government argues that the requirement is satisfied if the murder took place "within the territorial seas of the United States." Pub. L. No. 104-132, Title IX 901(a). The Court will consider each argument in turn.

### A. The "High Seas"

Defendant argues that "it is beyond any reasonable dispute that the high seas lie beyond the territorial sea." Mot. at 11. By contrast, the Government argues that "the 'high seas' should be defined as all waters seaward of the mean low water line along the coast of the United States." Opp'n at 7.

In 1948, Congress enacted 18 U.S.C. § 7(1), which confers federal criminal jurisdiction over "[t]he high seas" and "any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State." 18 U.S.C. § 7(1). As early as 1893, the Supreme Court interpreted the "high seas" to refer to "the portion of the sea which washes the open coast." Opp'n at 7 (citing *United States v. Rodgers*, 150 U.S. 249, 253 (1893)). More recently, the Fifth and Eleventh Circuits have applied this interpretation in the context of federal criminal law. *Thompson v. United States*, 608 Fed. App'x. 726, 728 (11th Cir. 2015) (unpublished) ("[F]ederal criminal jurisdiction begins at the coast's mean low water line and extends out into the sea"); *Murray v. Hildreth*, 61 F.2d 483, 483 (5th Cir. 1932) ("The term 'high seas' includes waters on the sea-coast without the boundaries of low-water mark.") (citation omitted). While the California Constitution says that state boundaries extend to three miles beyond California's coast, *see* CAL. CONST. art. III, § 2, the Ninth Circuit has held that "[t]here is no merit in . . . [the] contention that the state of California has exclusive jurisdiction of crimes committed within its limits and that in federal criminal statutes the phrase 'high Seas' must be construed to include *only* the unenclosed waters of the ocean extending outside of the boundary line of a state." *Miller v. United States*, 88 F.2d 102, 103 (9th Cir. 1937) (citations omitted) (emphasis added).

Defendant cites to the Ninth Circuit's decision in *United States v. Corey*, 232 F.3d 1166 (9th Cir. 2000), as support for its proposition that the "high seas" refers to areas "beyond *ordinary* land and seas" and "outside the fifty states." Mot. at 10 (citing *Corey*, 232 F.3d at 1171 (emphasis in original)). However, this interpretation is a clear misreading of *Corey*, which instead stands for the proposition that § 7 extends beyond domestic territory. *See Corey*, 232 F.3d at 1171 ("Taken as a whole, 18 U.S.C. § 7 *extends* the jurisdiction of the federal criminal laws to areas where American citizens and property need protection, yet no other government effectively safeguards those interests.") (emphasis added). *Corey* does not find or suggest that the "high seas" are limited to areas outside of domestic territory. Thus, in keeping with precedent both within and outside of this circuit, the Court finds that the "high seas" refers to all waters seaward of the mean low water line along the United States coast.

### B. The "Territorial Sea"

Defendant argues that § 901 of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") does not affirmatively modify the definition of "special maritime and territorial jurisdiction" laid out in § 7 to include that stretch of water that extends from the shoreline to three miles at sea. Mot. at 6–8. The Government disagrees. Opp'n at 17 ("Defendant's suggestion that Congress would have codified this as a subsection of § 7 versus as a statutory note if it intended to expressly include the territorial sea within federal criminal jurisdiction is meaningless. . . . Courts must give the same weight to statutory notes as laws which have been codified.").

International law recognizes a right of every nation to expand its territorial sea to twelve miles. U.N. Convention on the Law of the Sea, U.N. Docs. A/CONF. 62/122/Corr. 3, 8 (1982), *reprinted in* 21 Int'l Legal Materials 1261, 1272. In 1988, President Reagan issued a proclamation stating that "[t]he territorial sea of the United States henceforth extends to 12 nautical miles *from the baselines* of the United States determined in accordance with international law." Proclamation No. 5928, 54 Fed. Reg. 777 (Dec. 27, 1988) (emphasis added). AEDPA § 901 states that "all territorial sea of the United States, as defined by Presidential Proclamation 5928 of December 27, 1988, for purposes of Federal criminal jurisdiction is part

of the United States, subject to its sovereignty, and is within the special maritime and territorial jurisdiction of the United States." AEDPA § 901. The plain language of the text supports the Government's contention, and the Court hereby finds that the "territorial jurisdiction" of the United States includes the area within three miles of the coastline.

### C. Constitutionality of Concurrent Jurisdiction

Defendant argues that, to the extent that it confers federal criminal jurisdiction, § 7(1) is unconstitutional because "[i]n the absence of another constitutional basis, the exercise of federal police power in state waters is unconstitutional." Mot. at 13–14 (citations omitted). By contrast, the Government notes that "Congress's ability to define and punish felonies on the high seas is specifically enumerated among Congress's powers in the Constitution itself." Opp'n at 18 (citing U.S. CONST. art. I, § 8, cl. 10). The Court agrees with the Government. Congress has "an explicit power to define and punish felonies on the high seas." Opp'n at 23; *see* U.S. CONST. art. I, § 8, cl. 10. Congress also has the power to extend federal judicial power "to all cases of admiralty and maritime jurisdiction." U.S. CONST. art. III, § 2, cl. 1. The Court thus rejects Defendant's argument and finds that concurrent jurisdiction does not raise a constitutional issue.

### III. DISPOSITION

For the foregoing reasons, the Court hereby finds that the State of California and the federal government have concurrent jurisdiction within twelve nautical miles seaward of the mean low water line along the coast of California.

DATED: September 3, 2021

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

# Exhibit A

# CG CGIS RAO San Diego, CA





**October 15, 2019**

Coordinate System: GCS WGS 1984
Datum: WGS 1984
Date Created: 09 JAN 2021

● Geo Points
⊗ Land Points
▨ 3NM Land Points Buffer

EXHIBIT A

LR_00026690

# Exhibit B

Case 8:20-cr-00002-DOC Document 274 Filed 09/03/21 Page 10 of 10 Page ID #:1642
Case 8:20-cr-00002-DOC Document 273-3 Filed 09/07/21 Page 2 of 2 Page ID #:1632
EXHIBIT B     EXHIBIT B



CG CGIS RAO San Diego, CA

EXHIBIT B

LR_00026691