**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES**<br><br>　Plaintiff,<br><br>vs.<br><br>**HOANG LE**<br>**SHEILA RITZE,**<br>　Defendants. | Case No. 8:20-cr-00002(B)-DOC<br><br>**AMENDED RULING ON EX PARTE APPLICATION TO PROTECT GOVERNMENT'S APPELLATE RIGHT [203]** |

Before the Court is the government's Ex Parte Application for Ruling to Protect Government's Appellate Right ("Application" or "App.") (Dkt. 203). Having reviewed the moving papers and heard the parties' arguments, the Court GRANTS the government's Application and finds that the federal court has jurisdiction over this matter.

**I. BACKGROUND**

On December 18, 2019, a Complaint ("Compl.") was filed against Defendant Le in the U.S. District Court for the Central District of California for violation of 18 U.S.C. § 1111: First Degree Murder Within the Special Maritime and Territorial Jurisdiction of the United States, and against Defendant Ritze for violation of 18 U.S.C. § 3: Accessory After the Fact. Dkt. 1. The First Superseding Indictment, filed June 24, 2020, charged both Defendants with violating 18 U.S.C. § 1111: First Degree Murder Within the Special Maritime and Territorial Jurisdiction of the United States; 18 U.S.C. § 1117: Conspiracy to Commit First Degree Murder and Second Degree Murder; and 18 U.S.C. §§ 924(c)(1)(A)(i) and (iii): Possess, Use, Carry, Discharge of a Firearm in Furtherance of and During and in Relation to a Crime of Violence. Dkt. 83.

The government alleges that on October 15, 2019, Defendant Le shot and killed T.D. while on a boat off the coast of Orange County and threw his body into the Pacific Ocean. *Id.* at 2. Defendants Le and Ritze are alleged to have left with T.D. on a fishing trip from Dana Point, California, on October 14, 2019. Compl. at 4. T.D.'s body was found by the Coast Guard on October 16, 2019. *Id.*

The First Superseding Indictment based jurisdiction on 18 U.S.C. § 7(1). Subsequently, a Second Superseding Indictment was filed, basing jurisdiction on the alleged crime occurring in "the high seas and the territorial sea of the United States." Dkt. 134. Defendants filed a Motion to Dismiss Counts 1–3 ("Mot.") (Dkt. 102) on December 14, 2020 pursuant to Fed. R. Crim. P. 12(b), based on their argument that the State of California has exclusive jurisdiction over crimes committed within three nautical miles of the California coast. The government opposed the motion on January 18, 2021 ("Opp'n") (Dkt. 105). The government initially argued that the Court should wait to rule until a Rule 29 motion given the existence of a factual dispute

over the location of the crime. Opp'n at 3. The parties have since stipulated that the government cannot prove beyond a reasonable doubt that the crime occurred more than three nautical miles from shore. Joint Position RE: Motion to Dismiss for Lack of Jurisdiction at 3 (Dkt. 177). As a result, the parties jointly moved this Court to decide the purely legal question of whether "the special maritime and territorial jurisdiction of the United States" includes the entire twelve nautical miles seaward of the mean low water line along the coast of California as the government contends, or begins three miles offshore as Defendants contend. *Id.* The government argues that the prior factual dispute has been resolved such that the jurisdictional issue should be disposed of before a Rule 29 motion. App. at 2 n.1. All parties stipulate that they request that the Court rule on the jurisdictional issue before trial. Stipulation Regarding Ruling on Jurisdiction Prior to Trial (Dkt. 237).

To guide its decision-making, the Court asked the government to provide a more precise estimate of the range of distance from the shoreline it would be able to prove. Order (Dkt. 269). In response, the U.S. Coast Guard performed an analysis of cell phone location data for the three participants in the boat trip. *See* Affidavit at 1–2 (Dkt. 273). Of thirteen location points analyzed, eleven fall within three miles of the shoreline. However, five of the thirteen location points are within two hundred yards on either side of the three-mile line, and two of the location points are within one hundred yards of the line. *See id.* at 3; Ex. B (Dkt. 273-3). One hundred yards is less than the margin of error for the phone location analysis. Affidavit at 3. The Court attaches the Coast Guard's visualizations for reference as Exhibits A and B.

**II. ARGUMENT**

For this Court to have jurisdiction over the murder charges, the government must prove that the murder took place "[w]ithin the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b). The Court must determine whether federal criminal jurisdiction exists at the three-mile line because the government's evidence of the alleged location of the crime falls within two hundred yards of that line and cannot be more precisely calculated. *See* Affidavit at 3.

This jurisdictional requirement is satisfied if the government proves that the murder took place on the "high seas," as defined in 18 U.S.C. § 7(11). In addition, the government argues that the requirement is satisfied if the murder took place "within the territorial seas of the United States." Pub. L. No. 104-132, § 901(a). The Court will consider each argument in turn.

### A. The "High Seas"

In 1948, Congress enacted 18 U.S.C. § 7(1), which confers federal criminal jurisdiction over "[t]he high seas" and "any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State." 18 U.S.C. § 7(1). Defendants argue that "it is beyond any reasonable dispute that the high seas lie beyond the territorial sea." Mot. at 11. By contrast, the government argues that "the 'high seas' should be defined as all waters seaward of the mean low water line along the coast of the United States." Opp'n at 7.

As early as 1893, the Supreme Court interpreted the "high seas" to refer to "the portion of the sea which washes the open coast." *United States v. Rodgers*, 150 U.S. 249, 253 (1893). Following this line of cases, the Fifth and Eleventh Circuits have held that the "high seas" begin at the shore for the purpose of federal criminal jurisdiction. *Murray v. Hildreth*, 61 F.2d 483, 483 (5th Cir. 1932) ("The term 'high seas' includes waters on the sea-coast without the boundaries of low-water mark." (citation omitted)); *Thompson v. United States*, 608 F. App'x. 726, 728 (11th Cir. 2015) (per curiam) (unpublished) (holding the Eleventh Circuit was bound by the Fifth Circuit's decision and stating that "federal criminal jurisdiction begins at the coast's mean low water line and extends out into the sea"). There is some Ninth Circuit support for this position: in *Miller*, the court held that "[t]here is no merit in . . . [the] contention that the state of California has exclusive jurisdiction of crimes committed within its limits and that in federal criminal statutes the phrase 'high Seas' must be construed to include *only* the unenclosed waters of the ocean extending outside of the boundary line of a state." *Miller v. United States*, 88 F.2d 102, 103 (9th Cir. 1937) (citations omitted) (emphasis added). Defendants counter by citing the Ninth Circuit's decision in *United States v. Corey*, 232 F.3d 1166 (9th Cir. 2000), as support for their proposition that the "high seas" refers to areas

"beyond *ordinary* land and seas" and "outside the fifty states." Mot. at 10 (citing *Corey*, 232 F.3d at 1171). But *Corey* stands for the proposition that § 7 extends beyond domestic territory, and the court did not decide the inner boundary of federal jurisdiction. *See Corey*, 232 F.3d at 1171 ("Taken as a whole, 18 U.S.C. § 7 *extends* the jurisdiction of the federal criminal laws to areas where American citizens and property need protection, yet no other government effectively safeguards those interests." (emphasis added)).

At argument, counsel for Defendant Le argued that the Supreme Court has abandoned the *Rodgers* line of reasoning of the high seas 'washing the open coast.' Indeed, the Court has consistently distinguished "high seas" from "territorial sea" in the context of international and maritime law:

> Under generally accepted principles of international law, the navigable sea is divided into three zones . . . . Nearest to the nation's shores are its inland, or internal waters. . . . Beyond the inland waters, and measured from their seaward edge, is a belt known as the marginal, or territorial sea. . . . Outside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation.

*United States v. Louisiana*, 394 U.S. 11, 22–23 (1969); *see also, e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 121 (2013) ("Piracy typically occurs on the high seas, beyond the territorial jurisdiction of the United States or any other country."); *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 179 (1993) ("An alien intercepted on the high seas is in no country at all.").

Moreover, the Ninth Circuit has not felt itself bound by *Miller*; it discussed the two potential interpretations only a decade ago in *Helman* and "conclude[d] that we need not resolve this disagreement and assign a firm meaning to the term 'high seas.'" *Helman v. Alcoa Glob. Fasteners, Inc.*, 637 F.3d 986, 990 (9th Cir. 2011) (discussing Supreme Court cases and noting that "both sides find support for their proffered definition in the relevant, pre-enactment case law"). And the Ninth Circuit frequently distinguishes "high seas" from "territorial waters" in dicta. *See, e.g.*, *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1423 (9th Cir. 1990) ("The Court, as a matter of statutory interpretation, held that the savings clause at issue could

not be read to allow Texas to apply its right-to-work laws to maritime employees who worked on the high seas outside of the state's territorial waters."); *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1348 (9th Cir. 1987) ("personal injury and death resulted from the operation of the St. Patrick on the high seas. But . . . most of the decedents died after drifting back within territorial waters.").

The Ninth Circuit in *Helman* did not need to determine the inner boundary of the "high seas" because the statute at issue, the Death on the High Seas Act, specified that it applied "beyond three nautical miles from the shore." As a result, the court held that Congress did not intend "to incorporate into the statute the independent and fluid political concept of U.S. territorial waters." *Helman*, 637 F.3d at 990. Conversely, 18 U.S.C. § 7(1) contains no such quantitative boundary, so the Court infers that Congress *did* intend the statutory language to relate to the potentially shifting boundary of U.S. territorial waters.

In addition, counsel for Defendant Ritze argued that the lay understanding of the term "high seas" is deep water far out to sea, as opposed to the surf by the beach. The Court agrees that the ordinary meaning of the phrase would not encompass water so close to shore, which supports the trend in the caselaw toward placing the high seas beyond the territorial sea.

As such, the Court finds that the phrase "high seas" in § 7(1) refers to waters not within the territorial jurisdiction of the United States, which currently extends to twelve nautical miles from shore. As such, the "high seas" clause does not provide this Court jurisdiction over the instant case.

### B. The "Territorial Sea"

The next issue is whether § 901 of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") brought the entire territorial sea within federal criminal jurisdiction. Defendants argue that AEDPA does not affirmatively modify the definition of "special maritime and territorial jurisdiction" laid out in 18 U.S.C. § 7 to include that stretch of water that extends from the shoreline to three miles at sea. Mot. at 6–8. The government disagrees. Opp'n at 17 ("Defendant's suggestion that Congress would have codified this as a subsection of § 7 versus as a statutory note if it intended to expressly include the territorial sea within federal

criminal jurisdiction is meaningless. . . . Courts must give the same weight to statutory notes as laws which have been codified.").

International law recognizes the right of every nation to expand its territorial sea to twelve miles. U.N. Convention on the Law of the Sea, U.N. Docs. A/CONF. 62/122/Corr. 3, 8 (1982), *reprinted in* 21 Int'l Legal Materials 1261, 1272. In 1988, President Reagan issued a proclamation stating that "[t]he territorial sea of the United States henceforth extends to 12 nautical miles *from the baselines* of the United States determined in accordance with international law." Proclamation No. 5928, 54 Fed. Reg. 777 (Dec. 27, 1988) (emphasis added). AEDPA § 901 states that "all territorial sea of the United States, as defined by Presidential Proclamation 5928 of December 27, 1988, for purposes of Federal criminal jurisdiction is part of the United States, subject to its sovereignty, and *is within the special maritime and territorial jurisdiction of the United States*." AEDPA, Pub. L. No. 104-132, § 901(a), 110 Stat. 1214, 1317 (1996) (emphasis added).

The plain language of the statute supports the government's contention, and at argument counsel for Defendant Ritze conceded that the territorial sea extends from the shore to twelve miles. Moreover, the Eleventh Circuit has also held that AEDPA extends federal criminal jurisdiction to the entirety of the territorial sea. *Thompson*, 608 F. App'x at 728.

The Court hereby finds that the "special maritime and territorial jurisdiction" of the United States includes the area from the mean low water mark up to twelve nautical miles from the coastline. As such, the Court has jurisdiction over this case.

### C. Constitutionality of Concurrent Jurisdiction

Defendants argue that, to the extent that it confers federal criminal jurisdiction, § 7(1) is unconstitutional because "[i]n the absence of another constitutional basis, the exercise of federal police power in state waters is unconstitutional." Mot. at 13–14 (citations omitted). By contrast, the government notes that "Congress's ability to define and punish felonies on the high seas is specifically enumerated among Congress's powers in the Constitution itself." Opp'n at 18 (citing U.S. CONST. art. I, § 8, cl. 10). The Court agrees with the government. Congress has "an explicit power to define and punish felonies on the high seas." Opp'n at 23;

*see* U.S. CONST. art. I, § 8, cl. 10. Congress also has the power to extend federal judicial power "to all cases of admiralty and maritime jurisdiction." U.S. CONST. art. III, § 2, cl. 1. The Court thus rejects Defendants' argument and finds that concurrent jurisdiction does not raise a constitutional issue.

### III. DISPOSITION

For the foregoing reasons, the Court hereby finds that the State of California and the federal government have concurrent criminal jurisdiction within three nautical miles seaward of the mean low water line along the coast of California, and that the federal government also has criminal jurisdiction between three and twelve miles, within the limits of the territorial sea as defined in Proclamation No. 5928.

DATED: September 15, 2021

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

# Exhibit A

EXHIBIT A

# CG CGIS RAO San Diego, CA

EXHIBIT A





**October 15, 2019**

Coordinate System: GCS WGS 1984
Datum: WGS 1984
Date Created: 09 JAN 2021

- Geo Points (blue)
- Land Points (green)
- 3NM Land Points Buffer (purple shaded)

EXHIBIT A

LR_00026690

# Exhibit B



CG CGIS RAO San Diego, CA

EXHIBIT B

October 15, 2019

Coordinate System: GCS WGS 1984
Datum: WGS 1984
Date Created: 09 JAN 2021

- Geo Points
- Land Points
- 3NM Land Points Buffer

LR_00026691