TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
GREGORY S. SCALLY (Cal. Bar No. 268073)
GREGORY W. STAPLES (Cal. Bar No. 155505)
Assistant United States Attorneys
     8000 United States Courthouse
     411 West Fourth Street
     Santa Ana, California 92701
     Telephone: (714) 338-3592
     Facsimile: (714) 338-3708
     E-mail:    gregory.scally@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>                v.<br><br>HOANG XUAN LE,<br>  aka "Wayne,"<br>  aka "Wangsta,"<br><br>           Defendant. | No. SA CR 20-00002(B)-DOC<br><br>GOVERMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  November 8, 2021<br>Location:    Courtroom of the<br>             Hon. David O.<br>             Carter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Gregory S. Scally and Gregory W. Staples, hereby files its Trial Memorandum.

The government respectfully requests leave to supplement this

//

//

trial memorandum before and during trial, if necessary.

Dated: November 5, 2021		Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


          /s/
GREGORY S. SCALLY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

I. **GOVERNMENT'S CASE-IN-CHIEF**

The government estimates that it will call 16-17 witnesses during its case-in-chief, as identified below.

The government expects to call the following witnesses:

- <u>Christopher Sukraw</u>. Mr. Sukraw was one of the fishermen who discovered the body of James Dao, the deceased.

- <u>Officer Calvin Berger, Oceanside Police Department</u>. Officer Berger was one of the officers who recovered the body of James Dao from the Pacific Ocean.

- <u>Angela Benefiel, San Diego County Medical Examiner's Office</u>. Angela Benefiel is a Medical Examiner's Office Investigator, and responded to the recovery of the body.

- <u>Dr. Brankica Paunovic, San Diego County Medical Examiner's Office</u>. Dr. Paunovic is the Medical Examiner who conducted the autopsy in this case. She will offer her opinions concerning the cause and manner of death.

- <u>Stephen Lu, San Diego County Sheriff's Department Regional Crime Lab</u>. Mr. Lu is a criminalist who examined the bullet recovered from James Dao's back, as well as the orange jacket James Dao was wearing at the time of his death. Mr. Lu will opine about the nature of the weapon that fired the bullet recovered in James Dao's back, his analysis of the orange jacket James Dao was wearing at the time of his death, and his analysis of various photographs recovered from defendant Le's Google account.

- <u>Natalie Nguyen</u>. Natalie Nguyen was the girlfriend of James Dao and mother of their two children. Nguyen will testify about defendant Le inviting James Dao to go on a lobster

fishing trip, and James Dao leaving for that trip.  Nguyen is also expected to testify that James Dao and defendant Le were in the business of selling marijuana together, and James Dao owed defendant Le a debt.  Nguyen is also expected to testify that James Dao had a life insurance policy, of which she was one of the named beneficiaries.  Nguyen is also expected to testify that before his death, James Dao had told people, including defendant Le, that in the event anything happened to James Dao, Nguyen would pay off any debts James Dao owed through the proceeds of the life insurance policy.  Nguyen will testify that after James Dao did not return from the boat trip, defendant Le told her he did not go on the boat trip.  Nguyen will testify that she placed a missing persons report for James Dao.

- <u>Daniel Phee, Search and Rescue Specialist, Coast Guard</u>.  Daniel Phee was the Coast Guard agent who handled Nguyen's missing person's report.  Phee will testify that he called defendant Le and left a message requesting a call back about James Dao, and that Phee received no return call.
- <u>Special Agent Charles Twomey, Coast Guard Investigative Service</u>.  Special Agent Twomey visited defendant Le's house on November 20, 2019, several weeks after the boat trip, and interviewed defendant Le about James Dao and the boat trip.  Through SA Twomey the government will play a recording of defendant Le telling SA Twomey that defendant Le did not go on the boat trip at all.

- Mica Ritze. Mica Ritze is the ex-husband of co-defendant Sheila Ritze, and co-owner of the boat used in the boat trip. M. Ritze is expected to testify to the features of the boat, and that when he went lobster fishing with Sheila Ritze, they would typically leave their hoopnets along the jetty.
- Sandra Ritze. Sandra Ritze is the mother-in-law of co-defendant Sheila Ritze, and mother to Mica Ritze. Sandra Ritze will testify about statements made by defendant Le and co-defendant Sheila Ritze during an October 4, 2019 trip to Las Vegas, concerning his intent to kill James Dao.
- Shawn Whalin. Shawn Whalin was a friend of defendant Le's in late 2019, and was involved in distributing narcotics with Le, and will testify about:
    - defendant's possession of a .38 caliber handgun;
    - statements made by defendant Le prior to the boat trip indicating defendant Le's intent to kill James Dao because of a debt owed and defendant Le's intent to get the money through insurance;
    - statements made by defendant Le after the boat trip confessing to the killing of James Dao;
    - observations of bruises on defendant Le's arms after the boat trip.
- Vinh Doan. Vinh Doan was a friend of defendant Le's in late 2019, and will testify about statements defendant Le made on October 18, 2019, after the killing of James Dao, confessing to having shot James Dao on a boat over a debt,

3

  and his intent to obtain the money owed from James Dao's girlfriend through an insurance policy.

- Tony Hoang.  Tony Hoang was involved with defendant Le in trying to buy and sell marijuana in the fall of 2019. Hoang will testify about statements defendant Le made in mid to late October 2019, confessing to having shot someone on a boat over a debt the person owed defendant Le.  Hoang will also testify that he observed a .38 caliber revolver in defendant Le's possession.
- Vu Nguyen.  Vu Nguyen is the registered owner of the Toyota truck which defendant Le used to pick up James Dao to take him to the boat trip.  V. Nguyen is expected to testify that he commonly lent that truck to defendant Le in late 2019.
- Special Agent Nathaniel Dingle, FBI.  Special Agent Dingle is a member of the FBI's Cellular Analysis Survey Team ("CAST"), and is an expert in the analysis of phone and other location records.  SA Dingle is expected to testify about his analysis of phone records in this case concerning certain events, to include:
    - October 4, 2019 trip to Las Vegas by defendant Le, Shawn Whalin, Sheila Ritze, James Dao, and Sandra Ritze
    - October 14, 2019 trip to Asia Buffet by defendant Le, Natalie Nguyen, and James Dao
    - October 14-15, 2019 boat trip by defendant Le, James Dao, and Sheila Ritze

4

    o October 17, 2019 trip to defendant Le's residence by Natalie Nguyen

    o October 18, 2019 trip to Irvine Spectrum by defendant Le and Tony Hoang

    o Records from a GPS tracker placed on Natalie Nguyen's vehicle by defendant Le

- <u>Special Agent Steven Guest, Coast Guard Investigative Service</u>.  Special Agent Guest reviewed extensive security camera footage in this case, and will assist the jury in focusing on the important parts of the footage, to include footage from Asia Buffet, James Dao's apartment complex, a paint store across the street from James Dao's apartment complex, the Dana Point Harbor, and the Irvine Spectrum. SA Guest is also expected to testify concerning various items recovered from various digital devices and cloud accounts, to orient the jury to those items.

In addition to the testimonial evidence summarized above, the government also expects to offer into evidence exhibits such as the following:

- security camera footage from the locations noted above
- photographs from the recovery of James Dao's body
- photographs from the autopsy of the wounds to the body
- portions of chains of text messages between:
    - o Natalie Nguyen and James Dao,
    - o defendant and Natalie Nguyen,
    - o defendant and Tony Hoang,
    - o defendant and Shawn Whalin,
    - o defendant and Sheila Ritze

5

- demonstrative exhibits concerning the location analysis of cell phone records, Google location data, and GPS tracker data
- photos of the tracking device recovered from Natalie Nguyen's vehicle
- e-mails between a tracking device company, Logistimatics, and Sheila Ritze
- physical exhibits, specifically:
  - the bullet recovered from James Dao's back
  - the orange jacket James Dao was wearing
  - the tracking device recovered from Natalie Nguyen's vehicle
- photos from an October 4, 2019 trip to Las Vegas
- screenshots of communications between defendant and James Dao recovered from defendant's Google account and from James Dao's phone
- photos of the boat and Ford Explorer registered to Sheila Ritze
- DMV records concerning the boat and Ford Explorer
- The life insurance policy of James Dao
- American National Insurance documents regarding defendant's attempt to get life insurance in the name of Shawn Whalin, including a recorded phone call between defendant and American National Insurance
- Photographs and documents recovered from defendant's iPhone

## II. ELEMENTS OF THE OFFENSES

### A. First Degree Murder

The elements of First Degree Murder within the Special Maritime and Territorial Jurisdiction of the United states, in violation of 18 U.S.C. § 1111, are as follows: (1) defendant unlawfully killed James Dao; (2) defendant killed James Dao with malice aforethought; (3) the killing was premeditated; and (4) the killing occurred within the special maritime and territorial jurisdiction of the United States. Ninth Circuit Model Jury Instruction No. 8.107 (2010 ed.).

To kill with malice aforethought means to kill either deliberately and intentionally or recklessly with extreme disregard for human life. Premeditation means with planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough, after forming the intent to kill, for the killer to have been fully conscious of the intent and to have considered the killing. Id.

"A defendant on trial for first degree murder is automatically on trial for second degree murder because it is a 'lesser included offense' of first degree murder." United States v. Chagra, 638 F. Supp. 1389 (W.D. Tex. 1986). "[P]remeditation is the essential element that distinguishes first-degree murder and second-degree murder." United States v. Begay, 673 F.3d 1038, 1042 (9th Cir. 2011). At the end of the case, the government may request an instruction on the lesser included offense of second degree murder. Defense counsel has indicated he will be objecting to such a request, and requesting an instruction on the lesser included offense of voluntary manslaughter.

### B. Conspiracy to Murder

The elements of Conspiracy to Murder are: (1) beginning on an unknown date, and ending on or about October 15, 2019, there was an agreement between two or more persons to murder James Dao; (2) defendant became a member of the conspiracy, knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. Ninth Circuit Model Jury Instruction No. 8.16 (2010 ed.).

### C. Possess, Use, Carry, and Discharge a Firearm in Furtherance of and During and in Relation to a Crime of Violence

The elements of Count Three are: (1) defendant committed the crime of First Degree Murder, as charged in Count One, which is a crime of violence; (2) defendant knowingly discharged the firearm during and in relation to that crime. Ninth Circuit Model Jury Instruction No. 8.71 (2010 ed.).

## III. Legal and Evidentiary Issues

### A. Authentication and Foundation

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Under Rule 901(a), evidence should be admitted, despite any challenge, once the government makes a prima facie showing of authenticity or identification so "that a reasonable juror could find in favor or authenticity or identification . . . [because] the probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th

Cir. 1991) (citations and internal quotation marks omitted); see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

The parties expect to stipulate to most authentication and foundational issues.

**B.    Video Recordings**

The government will introduce into evidence security camera from a number of locations. Recordings are admissible upon a showing that "the recording is accurate, authentic and generally trustworthy." United States v. King, 587 F.2d 956, 961 (9th Cir. 1978).

**C.    Photographs and Maps**

The government intends to introduce into evidence a number of photographs, as well as several maps.

Photographs and maps may be authenticated by a witness who "identif[ies] the scene itself [in the photograph] and its coordinates in time and place." See Lucero v. Stewart, 892 F.2d 52, 55 (9th Cir. 1989) (internal quotation marks omitted). Photographs and maps are generally admissible as evidence. See United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible). Photographs and maps should be admitted so long as they fairly and accurately represent the event, object, or location in question. United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). Also, "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

The government also intends to offer a number of photographs recovered from digital devices or cloud accounts. The parties are expecting to stipulate to the authentication and foundation necessary

for admission of such exhibits, while reserving other objections based on hearsay, Fed. R. Evid. 403, relevancy, and the like.

### D. Recorded Conversations

The government intends to introduce recorded conversations between defendant and others. The admissibility of some of these conversations will depend on evidentiary rulings made during trial, pursuant to the Court's pre-trial rulings on the parties' earlier motions in limine.

#### 1. Voice Identification

Witnesses may testify competently as to the identification of a voice on a recording. A witness's opinion in this regard may be based upon his having heard the voice on another occasion under circumstances connecting it with the alleged speaker. Fed. R. Evid. 901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990).

#### 2. Testimony of What Listener Understood Declarant to Mean

A witness may testify to what he or she understood a declarant to mean with respect to a statement made by the declarant to the witness. United States v. Brooks, 473 F.2d 817, 818 (9th Cir. 1973) (per curiam).

### E. Business Records

The government intends to admit business records as trial. The parties expect to stipulate to the foundation and authentication necessary for such admission, while reserving objections based on relevancy and Fed. R. Evid. 403.

10

**F.  Public Records**

The government also intends to introduce into evidence certain DMV records. These records are admissible under an exception to the hearsay rule for public records. Fed. R. Evid. 803(8). The contents of an official public record that is certified as correct may be proved by a copy, and may be proved by a copy without extrinsic evidence of authentication as long as the copy bears a seal of the United States, any state, or department thereof. Fed. R. Evid. 1005; 902(1). The parties expect to stipulate to authentication and foundation for these types of records.

**G.  Charts and Summaries**

The government intends to present maps of cell-site, Google location, and tracking device location analysis to aid the jury in understanding the contents of certain telephone, Google location, and tracking device records. Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place...

Here, all of the underlying records have been produced to the defendant in discovery.

The chart or summary may be admitted as evidence where the proponent establishes that the underlying documents are voluminous, admissible and available for inspection. See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979). While the underlying documents must be admissible, they need not be admitted. See Meyers, 847 F.2d at 1412. Summary charts need not contain the

11

defendant's versions of the evidence and may be given to the jury while a government witness testifies about them.  See United States v. Radseck, 718 F.2d 233, 239 (7th Cir. 1983); Barsky v. United States, 339 F.2d 180, 181 (9th Cir. 1964).

**H.   Expert Testimony and Related Evidence**

The government has provided notice to defendant, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), that it intends to call Dr. Brankica Paunovic, the Medical Examiner, Stephen Lu, the firearms expert, and Special Agent Nathaniel Dingle, the Cellular Analysis Survey Team ("CAST") expert.

The government has received expert notice from the defense concerning a psychiatric expert.  The government has provided expert notice regarding the government's psychiatric expert, which the government would intend to present as part of a rebuttal case, if necessary.  Defendant has also provided notice of his intent to call an expert on recreational lobster fishing in Southern California.

**I.   Defendant's Statements**

The government will seek to introduce certain statements made by defendant.  These statements are admissible as "admissions by a party opponent."  See Fed. R. Evid. 801(d)(2)(A); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981).

**J.   Truthful Testimony Provision of Plea Agreement**

The government may not vouch for the credibility of its witnesses by presenting the jury with personal assurances of the witness's veracity.  However, a reference to the "truthful testimony" provisions of a witness's plea agreement with the government does not constitute vouching if it is made in response to an attack on the witness's credibility because of this plea bargain.  United States v.

Monroe, 943 F.2d 1007, 1013 (9th Cir. 1991).  To introduce such a "truthful testimony" provision of a plea agreement, the government need not wait until re-direct examination, after the witness's credibility has been attacked on cross-examination.  Instead, where in opening statement the defendant attacks the witness's credibility because of the witness's plea agreement, the government may introduce the "truthful testimony" provisions in direct examination of the witness.  Id. at 1014 (because government introduced "truthful testimony" aspects of a cooperator's plea agreement only after defendant had attacked cooperator's credibility in opening statement, government did not vouch for cooperator).

**K.    Cross-Examination of Defendant**

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) (citing McGautha v. California, 402 U.S. 183, 215 (1971), vacated in part on other grounds, 408 U.S. 941 (1972) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination.")).  A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). Thus, should defendant choose to testify in his own defense, the government will seek to cross-examine defendant subject to the Court's rulings on the government's motions in limine and motion concerning evidence under FRE 404(b).

13

**IV.   CONCLUSION**

The government may provide supplemental briefing to the Court during the course of trial should unexpected issues arise.