TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
GREGORY S. SCALLY (Cal. Bar No. 268073)
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office
    8000 United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3592
    Facsimile: (714) 338-3708
    E-mail:   gregory.scally@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 20-02(B)-DOC |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT HOANG XUAN LE REGARDING COUNTS 4 THROUGH 12 OF SECOND SUPERSEDING INDICTMENT |
| v. | |
| HOANG XUAN LE, | |
| Defendant. | |

    1.   This constitutes the plea agreement between HOANG XUAN LE ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case with respect to Counts 4 through 12 of the Second Superseding Indictment ("the Plea Counts"). This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts Four through

Eleven of the Second Superseding Indictment in <u>United States v. Le</u>, SA CR No. 20-02(B)-DOC, which charge defendant as follows:

        i.    Count Four: Conspiracy to Distribute Methamphetamine, Cocaine, and Heroin, in violation of 21 U.S.C. § 846;

        ii.   Count Five: Distribution of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

        iii. Count Six: Distribution of Cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

        iv.   Count Seven: Distribution of Cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

        v.    Count Eight: Distribution of Over 50 Grams of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii);

        vi.   Count Nine: Distribution of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C);

        vii. Count Ten: Distribution of Over 50 Grams of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii);

        viii.   Count Eleven: Distribution of Over 50 Grams of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).

      b.   Not contest facts agreed to in this agreement.

      c.   Abide by all agreements regarding sentencing contained in this agreement.

      d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.    Defendant further agrees:

a.    To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following: (1) one Mossberg, Model 88, 12 gauge shotgun, bearing serial number MV96584D; and (2) one AR-15 type firearm, bearing no legitimate manufacturer mark or serial number (collectively, the "Forfeitable Assets").

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

1          d.   Not to contest any administrative forfeiture

2   proceedings or civil judicial proceedings commenced against the

3   Forfeitable Assets.  If defendant submitted a claim and/or petition

4   for remission for all or part of the Forfeitable Assets on behalf of

5   himself or any other individual or entity, defendant shall and hereby

6   does withdraw any such claims or petitions, and further agrees to

7   waive any right he may have to seek remission or mitigation of the

8   forfeiture of the Forfeitable Assets.

9          e.   Not to assist any other individual in any effort

10  falsely to contest the forfeiture of the Forfeitable Assets.

11         f.   Not to claim that reasonable cause to seize the

12  Forfeitable Assets was lacking.

13         g.   To prevent the transfer, sale, destruction, or loss of

14  any and all assets described above to the extent defendant has the

15  ability to do so.

16         h.   To fill out and deliver to the USAO a completed

17  financial statement listing defendant's assets on a form provided by

18  the USAO.

19         i.   That forfeiture of Forfeitable Assets shall not be

20  counted toward satisfaction of any special assessment, fine,

21  restitution, costs, or other penalty the Court may impose.

22                        THE USAO'S OBLIGATIONS

23    4.   The USAO agrees to:

24         a.   Not contest facts agreed to in this agreement.

25         b.   Abide by all agreements regarding sentencing contained

26  in this agreement.

27         c.   At the time of sentencing, move to dismiss Count

28  Twelve as against defendant.  Defendant agrees, however, that at the

time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

        d.   With respect to the Plea Counts, not seek a sentence of imprisonment above the high end of the applicable Sentencing Guidelines range.  For purposes of this agreement, the high end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

                        NATURE OF THE OFFENSES

        5.   Defendant understands that for defendant to be guilty of the crime charged in Count Four, that is, Conspiracy to Distribute Methamphetamine, Cocaine, and Heroin, in violation of Title 21, United States Code, Section 846, the following must be true: (1) Beginning on or about an unknown date and ending on or about December 19, 2019, there was an agreement between two or more persons to distribute methamphetamine, cocaine, or heroin; and (2) Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

        6.   Defendant understands that for defendant to be guilty of the crimes charged in Counts Five and Nine, that is, Distribution of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), the following must be true: (1) Defendant knowingly distributed methamphetamine; and (2) Defendant knew it was methamphetamine or some other federally controlled substance.  Defendant understands that he can also be guilty of the crimes charged in Counts Five and Nine because he aided and abetted in the commission of the offenses. To be guilty of Counts Five and Nine under a liability theory of

aiding and abetting, in violation of Title 18, United States Code, Section 2(a), the following must be true: (1) someone else committed the crimes charged in Counts Five and Nine, that is, Distribution of Methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (2) Defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the crimes charged in Counts Five and Nine; (3) Defendant acted with the intent to facilitate the crimes charged in Counts Five and Nine; and (4) Defendant acted before the crimes charged in Counts Five and Nine were completed.

7.   Defendant understands that for defendant to be guilty of the crimes charged in Counts Six and Seven, that is, Distribution of Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), the following must be true: (1) Defendant knowingly distributed cocaine; and (2) Defendant knew it was cocaine or some other federally controlled substance.

8.   Defendant understands that for defendant to be guilty of the crimes charged in Counts Eight and Ten, that is, Distribution of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), the following must be true: (1) Defendant knowingly distributed methamphetamine; and (2) Defendant knew it was methamphetamine or some other federally controlled substance.

9.   Defendant understands that for defendant to be guilty of the crime charged in Count Eleven, that is, Possession With Intent to Distribute Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), the following must be true: (1) Defendant knowingly possessed methamphetamine; and (2)

6

Defendant possessed it with intent to distribute it to another person.

10. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that defendant possessed or distributed at least 50 grams of methamphetamine. Defendant admits that defendant, in fact, both possessed and distributed at least 50 grams of methamphetamine, as described in Counts Four, Eight, Ten, and Eleven of the Second Superseding Indictment.

<u>PENALTIES</u>

11. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Section 846, is: lifetime imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), is: lifetime imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), is: 20 years imprisonment; a lifetime period of supervised release; a fine of $1,000,000 or twice

the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

14.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Section 841(a), (b)(1)(A)(viii) is: 10 years' imprisonment, followed by a 5-year period of supervised release, and a mandatory special assessment of $100.

15.   Defendant understands that any term imposed on defendant's trial conviction of a violation of Title 18, United States Code, Section 924(c), as charged in Count Three of the Second Superseding Indictment, must run consecutive to any other sentence of imprisonment, including any sentence imposed on the Plea Counts.

16.   Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

17.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

18.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

19.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

1

### FACTUAL BASIS

2    20.   Defendant admits that defendant is, in fact, guilty of the

3    offenses to which defendant is agreeing to plead guilty.  Defendant

4    and the USAO agree to the statement of facts provided below and agree

5    that this statement of facts is sufficient to support pleas of guilty

6    to the charges described in this agreement and to establish the

7    Sentencing Guidelines factors set forth in paragraph 22 below but is

8    not meant to be a complete recitation of all facts relevant to the

9    underlying criminal conduct or all facts known to either party that

10   relate to that conduct.

11   From October 2019 through December 2019, there was an agreement

12   between Defendant and Shawn Whalin to sell heroin; defendant joined

13   that agreement knowing of its purpose and intending to help

14   accomplish that purpose.  From October 2019 through December 2019,

15   there was an agreement between Defendant, co-defendant Sheila Marie

16   Ritze ("Co-Defendant RITZE"), and the individual named in the Second

17   Superseding Indictment as Co-Conspirator #1 (hereinafter "Co-

18   Conspirator #1"), to distribute methamphetamine; defendant joined

19   that agreement knowing of its purpose and intending to help

20   accomplish that purpose.  In furtherance of those agreements,

21   Defendant committed the following acts.

22   In October 2019, in San Juan Capistrano, California, in Orange

23   County, within the Central District of California, Defendant provided

24   approximately two grams of methamphetamine to Co-conspirator #1.  On

25   October 30, 2019, in Orange County, within the Central District of

26   California, Defendant provided Co-Defendant RITZE approximately 3.5

27   grams of methamphetamine for further distribution to Co-Conspirator

28   #1.  On November 10, 2019, in Fountain Valley, California, within the

Central District of California, defendant sold approximately 1.46 grams of a mixture or substance containing cocaine to a person he believed was a drug customer, but who was, in fact, a confidential informant working with law enforcement ("the CI").

On November 12, 2019, Defendant told Shawn Whalin via text message that Defendant had two quantities of drugs equal to 3.5 grams each ("8-balls").  On November 17, 2019, Defendant asked Shawn Whalin if Whalin had picked up heroin ("black") yet.  On November 19, 2019, Defendant instructed Whalin to go to a house to pick up heroin.

On November 20, 2019, in Fountain Valley, California, within the Central District of California, defendant sold approximately 27.7 grams of a mixture or substance containing cocaine to the CI.

On December 5, 2019, in Fountain Valley, California, within the Central District of California, defendant sold approximately 54.7 grams of pure methamphetamine to the CI in exchange for money.

On December 7, 2019, in coded language in a text message, Defendant asked Co-Defendant RITZE to see if Co-Conspirator #1 could sell some methamphetamine.  On December 8, 2019, in coded language in a text message, Co-Defendant RITZE told Defendant that Co-Conspirator #1 was available to start selling methamphetamine for Defendant.  On December 8, 2019, within the Central District of California, Defendant provided approximately five bags containing approximately 17.5 grams of a mixture or substance containing methamphetamine to Co-Conspirator #1, and instructed Co-Conspirator #1 to sell the bags of methamphetamine and provide Co-Defendant RITZE with the money earned.  Co-Defendant RITZE agreed to keep track of the money Co-Conspirator #1 provided to her.

On December 10, 2019, in Fountain Valley, California, within the Central District of California, defendant sold approximately 56.5 grams of pure methamphetamine to the CI in exchange for money.

On December 19, 2019, in Fountain Valley, California, within the Central District of California, defendant knowingly possessed approximately 57.1 grams of pure methamphetamine, by keeping it in his home.  Defendant intended to distribute the methamphetamine to another.  Also on December 19, 2019, in the same location, defendant knowingly possessed firearms, namely, a Mossberg, Model 88, 12 gauge shotgun, bearing serial number MV96584D, and an AR15-type firearm, bearing no manufacturer mark or serial number.

SENTENCING FACTORS

21.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

22.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors with respect to the Plea Counts:

Base Offense Level:          32      U.S.S.G. § 2D1.1(c)(4)

Other than as agreed to in paragraph 4(d), Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

23.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

24.  Defendant understands that by pleading guilty, defendant gives up the following rights on the Instant Counts:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

25.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

26.  Defendant agrees that, provided the Court imposes a total term of imprisonment on the Instant Counts of no more than 120 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence on the Plea Counts; (b) the term of imprisonment imposed by the Court on the Plea Counts; (c) the fine imposed by the Court on the Plea Counts, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence on the Plea Counts, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court on the Plea Counts, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court on the Plea Counts: the conditions set forth in Second

14

Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

27.  The USAO agrees that, provided the Court imposes a term of
imprisonment of no less than 120 months of imprisonment on the Plea
Counts, the USAO gives up its right to appeal any portion of the
sentence on the Plea Counts.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

28.  Defendant agrees that if, after entering guilty pleas
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty pleas on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

## EFFECTIVE DATE OF AGREEMENT

29.  This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

1

## BREACH OF AGREEMENT

2     30.  Defendant agrees that if defendant, at any time after the

3  signature of this agreement and execution of all required

4  certifications by defendant, defendant's counsel, and an Assistant

5  United States Attorney, knowingly violates or fails to perform any of

6  defendant's obligations under this agreement ("a breach"), the USAO

7  may declare this agreement breached.  All of defendant's obligations

8  are material, a single breach of this agreement is sufficient for the

9  USAO to declare a breach, and defendant shall not be deemed to have

10  cured a breach without the express agreement of the USAO in writing.

11  If the USAO declares this agreement breached, and the Court finds

12  such a breach to have occurred, then: (a) if defendant has previously

13  entered guilty pleas pursuant to this agreement, defendant will not

14  be able to withdraw the guilty pleas, and (b) the USAO will be

15  relieved of all its obligations under this agreement.

16     31.  Following the Court's finding of a knowing breach of this

17  agreement by defendant, should the USAO choose to pursue any charge

18  that was either dismissed or not filed as a result of this agreement,

19  then:

20          a.   Defendant agrees that any applicable statute of

21  limitations is tolled between the date of defendant's signing of this

22  agreement and the filing commencing any such action.

23          b.   Defendant waives and gives up all defenses based on

24  the statute of limitations, any claim of pre-indictment delay, or any

25  speedy trial claim with respect to any such action, except to the

26  extent that such defenses existed as of the date of defendant's

27  signing this agreement.

28

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

32.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

33.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 22 are consistent with the facts of this case.  While this paragraph permits

both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

34.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

35.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

36.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____          2/4/2022
GREGORY S. SCALLY                          Date
Assistant United States Attorney

_____          2/3/22
HOANG XUAN LE                              Date
Defendant

_____          2/3/22
CRAIG WILKE                                Date
Attorney for Defendant HOANG XUAN
LE

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____                    _____
HOANG XUAN LE                                       Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am HOANG XUAN LE's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set

forth in this agreement is sufficient to support my client's entry of

guilty pleas pursuant to this agreement.

_____          2/3/22
CRAIG WILKE                              Date
Attorney for Defendant HOANG XUAN
LE